IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **ALLIED ENVIRONMENTAL SOLUTIONS, INC.,**<br>    formerly known as,<br>    **Lurgi Lentjes North America, Inc.**<br>    9730 Patuxent Woods Drive, Suite 100<br>    Columbia, Maryland  21046-1626,<br><br>        Petitioner,<br><br>    v.<br><br>**FRANK W. HAKE, INC.,**<br>    1500 Chester Pike<br>    Eddystone, Pennsylvania 19022,<br><br>        Respondent. | **Civil Action No.** |

## PETITION TO VACATE ARBITRATION AWARD

Petitioner Allied Environmental Solutions, Inc., f/k/a/ Lurgi Lentjes North America, Inc. ("Petitioner" or "Lurgi"), by and through its undersigned counsel, petitions this Court to vacate an Arbitration Award (the "Award") in a JAMS arbitration Reference No. 14500024 rendered in favor of Respondent, Frank W. Hake, Inc. ("Hake" or "Respondent").  In support of this Petition, Petitioner states:

**Lurgi Was Forced To Arbitrate Without Its Lead Counsel And Its Expert**

1.   Shortly before the start of the accelerated arbitration hearings in this matter, Lurgi suddenly lost the services — through no fault of its own — of both its lead counsel and its only expert witness and trial consultant.

2.   Notwithstanding these catastrophic losses and Lurgi's request for a first postponement of the arbitration hearings, the sole Arbitrator, Hon. Curtis E. von Kann (Ret.), refused to adjourn or continue the arbitration hearings for a sufficient time to enable replacement

counsel and a replacement expert and consultant to become familiar with the huge record in this case, to prepare for the hearings, and to conduct them.

3. In his Final Award dated March 20, 2006, the Arbitrator conceded that, "[t]he record in this case is huge, consisting of more than 4,000 pages of testimony and tens of thousands of pages of project records." See Final Award at 2.

4. The size of the record coupled with the sudden loss of Petitioner's counsel and expert mandated a continuance to allow the new trial counsel and a new expert to be conversant with the record and to be prepared fully to represent Lurgi in the hearings.

5. As a result of the Arbitrator's refusal to continue the hearings, Lurgi's replacement counsel was forced to take this matter to trial with just eighteen days to prepare and without the assistance of the expert witness and consultant who had been working on the case from the outset, but had also become unavailable due to his sudden health problems.

6. In contrast, Hake's counsel had at least eighteen months to prepare, as did its expert, who attended every arbitration hearing, sitting with and assisting counsel in the presentation of Hake's claims and defenses.

7. Hake objected to the requested continuance solely on the basis of unsupported claims of financial hardship. The Arbitrator accepted these representations of financial hardship from Hake without any verification or substantiation. Hake's allegations of financial hardship proved to be untrue.

8. On the other hand, the prejudice to Lurgi from the Arbitrator's failure to grant a postponement is real and substantial. What started as a claim of less than $600,000 in 2004 has mushroomed into a runaway award in favor of Hake for over $12 million (including interest of almost $1.9 million).

9. Both the Federal Arbitration Act and the Maryland Uniform Arbitration Act (applicable by virtue of the parties' choice of law provision in the contract at issue) provide that an arbitration award should be vacated when the arbitrator fails to grant a continuance for good cause show. Lurgi's loss of both its counsel and its expert in the days prior to the hearings is more than good cause for a postponement.

10. Moreover, even though governing Maryland law prohibited an award of fees and the parties' contract contained a clear presumption against an award of fees, the Arbitrator attempted to award such fees against Lurgi. Only Hake's recent withdrawal with prejudice of its application for an award of such fees prevented further legal error.

11. For the reasons set forth below and in the accompanying Memorandum, the Award should be vacated and this matter should be remanded to another Arbitrator for new hearings on the merits.

## Jurisdiction And Venue

12. The Court has diversity jurisdiction over the parties pursuant to 28 U.S.C. § 1332 in that the parties are citizens of different states and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

13. Petitioner Lurgi is a Delaware corporation with its principal place of business in Columbia, Maryland.

14. Respondent Hake is a Pennsylvania corporation with its principal place of business at Eddystone, Pennsylvania.

15. Venue is proper only in this district pursuant to 9 U.S.C. § 10(a). The Award that is the subject of this proceeding was made in this district because the Arbitration was held in this district and the Award issued in this district. Thus, this district is the only district in which a court may make an order vacating the award pursuant to 9 U.S.C. § 10(a).

**Statement Of Facts**

16. On May 14, 2003, Lurgi (Contractor) and Hake (Subcontractor) entered into a $28.5 million subcontract agreement ("Subcontract") for a major construction project to construct two selective catalytic reactor systems for a large electrical power plant station owned and operated by PSEG Fossil LLC in Mercer County, New Jersey. Among other things, Section 25 of the Subcontract provides that the parties were to refer all disputes concerning the contract to arbitration.

17. A series of disputes arose between Petitioner and Respondent during the course of construction. On September 14, 2004, Hake filed a combined Mediation and Arbitration Demand. After an unsuccessful mediation, Judge Curtis E. von Kann (Ret.) ("Arbitrator") was appointed as the arbitrator on March 18, 2005 pursuant to the procedures of JAMS, the arbitration organization designated in the Subcontract.

18. On April 4, 2005, the Arbitrator held a preliminary scheduling conference. Lurgi argued that the technical complexity of the construction issues, the number of witnesses with knowledge of the disputed issues, and the sheer volume of documents involved required a hearing to be set no earlier than January 2006. Hake alleged that it was in dire financial condition and demanded an expedited arbitration schedule. (As the facts now reveal, Hake's counsel and expert had already been preparing their case for well over a year by that time.) [and] Despite the complexity of the case (and over Lurgi's objection to the proposed schedule), the Arbitrator set the hearing to commence on September 6, 2005, with approximately twelve hearing days reserved.

19. Lurgi's litigation team consisted of essentially three individuals: lead counsel Craig Hilliard of the New Jersey law firm Stark & Stark ("Hilliard"); expert witness/litigation consultant Willis Hembree of the consulting firm HDH Construction Consultants ("Hembree");

and Hilliard's associate attorney, Martin Schrama of the Stark & Stark firm ("Schrama"). These individuals spent the majority of their time between April 4, 2005, and August 30, 2005, preparing Lurgi's case for arbitration.

20. On August 31, 2005, Hilliard became unable to perform as lead counsel for personal and medical reasons. In brief, Mr. Hilliard took an emergency leave of absence from his firm with no advance notice whatsoever, and effectively withdrew from the practice of law and all of his litigation duties for a period of time. On August 31, 2005 and September 1, 2005, teleconferences were held to apprise the Arbitrator and Hake of Hilliard's withdrawal and to discuss its impact on the arbitration.

21. Lurgi requested a postponement so that replacement counsel could be found and given time to learn the huge record in the case, the extensive array of facts, the complicated engineering, construction, and related issues, and given an opportunity to prepare the presentation of Lurgi's case at trial, including the examination and cross-examination of the hearing witnesses.

22. Despite the clear prejudice to Lurgi, the Arbitrator ruled that due to the pressures of his own schedule and Hake's alleged, and still unsubstantiated, claims of economic distress, he could only continue the hearing a maximum of thirteen days. The hearing was then rescheduled to commence on September 19, 2005.

23. Thus, Lurgi's new lead trial counsel, Kevin Hart, was provided only eighteen days to prepare for this complex, multi-million dollar arbitration — in contrast to the eighteen months that Hake's counsel had to prepare, as reflected in the billing records submitted by Hake in January 2006 as part of its fee application in the Arbitration. On March 15, 2006, Hake – rather than defending its fee request and without offering any explanation - suddenly withdrew

5

its fee application with prejudice. Hake's abandonment of its prior fee demand precluded the Arbitrator from carrying through with his threatened award of fees in Hake's favor, which would have further compounded the legal errors he committed in the Arbitration.

24. Compounding the loss of its counsel, on September 14, 2005, Lurgi's expert witness and litigation consultant Willis Hembree, the individual on Lurgi's litigation team with the greatest substantive knowledge of the documents, the facts, and the issues in the case, had a major cardiac episode that required his immediate hospitalization. His cardiologist ordered him to abstain from work and any physical or emotional stress for at least two weeks pending further observation and tests. Lurgi's case relied on Hembree to participate as an integral member of the litigation team, not only as a testifying expert but also as a reservoir of institutional knowledge about the case and generally to assist Lurgi's counsel throughout the hearings.

25. On September 16, 2005, Petitioner sent the Arbitrator a letter of protest, explaining in detail the unfortunate blows dealt to Lurgi in the days leading up to the arbitration hearing. Lurgi pointed out that its new litigation team was being given inadequate time to prepare for the hearing. Lurgi's letter of protest objected to the Arbitrator's decision to proceed with the hearings, confirmed that Lurgi had requested an adjournment and a reasonable continuance of the hearings until its litigation team had an opportunity to recover and present its case in a substantively fair proceeding, and noted that the Arbitrator's denial of the request was manifestly prejudicial to Lurgi's interests.

26. Despite the clear and overwhelming prejudice to Lurgi and the absence of any corroborated evidence of prejudice to Hake, the Arbitrator rejected Petitioner's reasonable request for a continuance and began the hearings on September 19, 2005 without any expert for Lurgi present and with new counsel representing Lurgi. In making this decision, the Arbitrator

6

considered only concerns about his own schedule and undocumented averments regarding Hake's financial situation over the genuine and obvious considerations of prejudice to Lurgi, which he dismissed. The hearings would eventually comprise approximately sixteen sessions, with Lurgi being represented by new trial counsel who had almost no meaningful opportunity to learn the case and with a substitute expert with only limited background in the issues to be decided.

27.  On December 27, 2005, the Arbitrator issued an "Interim Award" awarding Hake a total of $10,258,555. (The amount of the Award should be compared to the original subcontract base amount of $28,450,655. As of the time of the arbitration, Lurgi had paid Hake $28,317,925 — a difference of only $132,730. Moreover, Hake's original claim in 2004 was only in the amount of about $597,000.)

28.  In the Final Award dated March 20, 2006 (the "Final Award"), the Arbitrator awarded Hake $10,258,555 on its claims, plus interest in the amount of $1,875,096.

29.  Thus, the total award to Hake and against Lurgi was in the amount of $ 12,133,651.

30.  The following documents are attached and filed with this petition and are incorporated by reference:

    Exhibit 1 — Arbitration Order No. 2, dated April 4, 2005;

    Exhibit 2 — Arbitration Order No. 6, dated September 2, 2005;

    Exhibit 3 — Letter of Protest re: failure to grant postponement, dated September 16, 2005;

    Exhibit 4 — Arbitration Order No. 7, dated October 14, 2005;

    Exhibit 5 — Interim Award, dated December 22, 2005;

    Exhibit 6 — Final Award, dated March 20, 2006;

      Exhibit 7 — Declaration of Willis Hembree, with Exhibit A;

      Exhibit 8 — Declaration of Stephen R. Dellers, P.E., with Exhibit A;

      Exhibit 9 — Declaration of Kevin M. Hart, with Exhibits A and B;

      Exhibit 10 — Declaration of Martin P. Schrama, with Exhibits A to F;

      Exhibit 11 — Declaration of Lewis J. Pepperman;

      Exhibit 12 — Subcontract dated May 14, 2003 at ¶ 25; and

      Exhibit 13 — Hearing Tr. Vol. 5 dated September 28, 2005 at pp. 1360-69, Hearing Tr. Vol. 6 dated September 29, 2005 at pp. 1547-48.

      Exhibit 14 – Arbitration Order No. 8, dated March 8, 2006

      Exhibit 15 – March 15, 2006, Letter from Jonathan Preziosi to Arbitrator von Kann re: withdrawal of application for attorneys' fees and costs.

## The Award Should Be Vacated And A New Arbitration Should Be Ordered Before A Different Arbitrator

31.    Both the Federal Arbitration Act and the Maryland Uniform Arbitration Act provide that an arbitration award must be vacated when the arbitrator fails to grant a continuance for good cause shown.

32.    The Federal Arbitration Act provides that the court should vacate an award where the arbitrator refused "to postpone the hearing, upon sufficient cause shown…." 9 U.S.C. § 10(a)(2).

33.    The Maryland Uniform Arbitration Act (which the Arbitrator directed as the governing law in Order No. 2) provides that the "court **shall** vacate an award if … [t]he arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement…." Md. Cts. & Jud. Proc. Code Ann., § 3-224(b)(4) (emphasis added).

34.    Lurgi's loss of both its counsel and its expert in the days immediately prior to the hearings is more than good cause for a postponement — it should have compelled a *sua sponte*

postponement from the Arbitrator. At a minimum, Lurgi's request for a postponement should have been granted.

35. The Arbitrator's refusal to grant a postponement compels vacatur of the Award and a remand for a new hearing on the merits before a different arbitrator.

36. As more fully set forth in the accompanying Memorandum of Points and Authorities in support of this Motion, the Arbitrator erroneously refused to continue the arbitration after Lurgi demonstrated good cause for a continuance due to the sudden unavailability of lead trial counsel and Lurgi's sole expert witness. Under the well-established principles discussed in the Memorandum, such failure by the Arbitrator constituted misconduct under the relevant statutes, including the Federal Arbitration Act.

37. By failing to abide by the procedural and substantive requirements imposed upon him under the Federal Arbitration Act and Maryland law, the conduct of the Arbitrator requires the vacatur of his Award and a new arbitration hearing on the merits before a different arbitrator.

38. Accordingly, basic notions of fairness and justice, fundamental requirements of due process, and the requirements of both the Federal Arbitration Act and the Maryland Uniform Arbitration Act require that the Award be vacated and that this matter be remanded to another Arbitrator for new hearings on the merits at which time Lurgi can be represented by counsel and an expert witness and consultant who have had adequate time to prepare.

**The Arbitrator's Intent to Award Attorney's Fees and Costs Underscores Further Error**

39. As noted above, the Subcontract was governed by Maryland law, which provides that a prevailing party cannot recover its attorney's fees in an arbitration in the absence of a contract specifically providing for the award of counsel fees.

40. Even though governing Maryland law prohibited an award of counsel fees and the governing contract contained a clear presumption against an award of fees, the Arbitrator's

Interim Award manifested a clear intention to award attorneys' fees and costs against Lurgi. In so doing, the Arbitrator committed clear legal error.

41. Lurgi vigorously opposed any award of arbitration fees and costs. On March 8, 2006, the Arbitrator ordered that Hake further reply to Lurgi's opposition to the award of legal fees and costs.

42. Knowing that an award of attorneys' fees and costs was contrary to law (and presented additional grounds for vacatur of the entire award), on March 15, 2006, Hake's counsel wrote a letter to the arbitrator withdrawing with prejudice its application for attorneys' fees and costs.

## Prayer For Relief

WHEREFORE the Petitioner, Allied Environmental Solutions, Inc., respectfully prays as follows:

    a)    That the Arbitration Award be vacated in its entirety;

    b)    That all claims by all parties be remanded to a different JAMS arbitrator for a new arbitration proceeding on the merits;

    c)    That any award of attorneys' fees and/or costs be vacated in its entirety as contrary to Maryland law and the express intention of the parties;

    d)    That the Court enjoin Hake, preliminarily and permanently, from seeking to confirm or otherwise enforce the Award in any proceeding(s) other than the above-captioned action, pending the Court's ruling on the instant Petition to Vacate the Arbitration Award; and

    e)    That the Court award Petitioner such other and further relief as is just and proper.

**Respectfully submitted,**


    **/s/ James H. Hulme**
**James H. Hulme (D.D.C. Bar No. 323014)**
**Matthew M. Wright (D.D.C. Bar No. 474731)**
**ARENT FOX PLLC**
**1050 Connecticut Ave., NW, Suite 500**
**Washington, DC 20036-5339**
**Tel:  202-857-6144**

*Attorneys for Petitioner Allied Environmental Solutions, Inc., f/k/a/ Lurgi Lentjes North America, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of March, 2006, that the foregoing Petition to Vacate Arbitration Award, and the Memorandum of Point and Authorities in Support thereof, was served by first class mail, postage pre-paid, upon the following:

Jonathan M. Preziosi
Angelo A. Sito
Pepper Hamilton LLP
300 Alexander Park, CN 5276
Princeton, NJ 08543-5276

Kevin M. Hart
Stark & Stark
993 Lenox Dr.
Building Two
Lawrenceville, NJ 08648

_____
John J. Dowd