## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**ALLIED ENVIRONMENTAL SOLUTIONS, INC.,**
    **formerly known as,**
    **Lurgi Lentjes North America, Inc.**
    **9730 Patuxent Woods Drive, Suite 100**
    **Columbia, Maryland  21046-1626,**

        **Petitioner,**

        **v.**

**FRANK W. HAKE, INC.,**
    **1500 Chester Pike**
    **Eddystone, Pennsylvania 19022,**

        **Respondent.**

**Civil Action No.**

## MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
## <u>PETITION TO VACATE ARBITRATION AWARD</u>

## TABLE OF CONTENTS

I.  FACTUAL BACKGROUND. ...........................................................................5

    A.   The Parties and Disputes..................................................................5

    B.   The Arbitrator Placed This Complex Arbitration on a "Fast Track" to
         Accommodate Hake and the Arbitrator. ............................................6

    C.   Lurgi Was Dealt A Double Blow To Its Litigation Team Days Before The
         Hearing.............................................................................................8

         1.   Lurgi Lost The Services Of Its Lead Counsel Craig Hilliard One
              Week Before The Scheduled Hearings. ...................................10

         2.   Lurgi Lost The Services Of Its Only Expert Witness And Trial
              Consultant On The Eve Of The Arbitration..............................11

    D.   The Arbitrator Unjustifiably Refused To Grant A Reasonable
         Postponement....................................................................................12

    E.   The Arbitrator Forced Lurgi To Obtain A Replacement Expert, But the
         Damage Had Already Been Done.......................................................13

II.  ARGUMENT. ...........................................................................................15

    A.   The Arbitrary Denial Of Petitioner's Reasonable Request For A
         Postponement Requires Vacatur Of The Resulting Award Under Both
         Maryland And Federal Law. ..............................................................15

    B.   The Arbitrator Unreasonably Elevated His Own Schedule and
         Convenience Over Lurgi's Rights to Due Process and a Fair Proceeding. ...........19

    C.   By Forcing Lurgi to Proceed With Counsel Unfamiliar to the Case, and
         Without the Advice and Benefit of Mr. Hembree, The Arbitrator Unfairly
         Prejudiced Lurgi's Ability to Present Its Claims and Defenses in a
         Substantively Fair Proceeding. ..........................................................20

    D.   The Arbitrator's Intent to Award Attorneys' Fees and Costs Demonstrates
         Clear Legal Error.  Only Hake's Recent Withdrawal (with Prejudice) of Its
         Fee Petition Prevented Further Error and Additional Grounds for
         Vacatur…...........................................................................................22

III.  CONCLUSION........................................................................................24

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE  NO.**

## FEDERAL CASES

*Allendale Nursing Homes, Inc. v. Local 1115 Joint Board*,
377 F. Supp. 1208 (S.D.N.Y. 1974) ........................................................................ 17

*Bisnoff v. King*, 154 F. Supp. 2d 630 (S.D.N.Y. 2001) ............................................. 4, 16

*Coastal General Construction Service Corp. v. Virgin Islands Housing
Authority*, 98 Fed. Appx. 156 ................................................................................... 18

*Hoteles Condado Beach v. Union De Tronquistas Local 901*,
763 F.2d 34(1st Cir. 1985) ....................................................................................... 15

*Naing International Enterprises, LTD v. Ellsworth Associates., Inc.*,
961 F. Supp. 1 (D.D.C. 1997) ........................................................... 1, 5, 17, 20

*Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) ......................... 4, 16, 20

*Transit Casualty Co. v. Trenwick Reinsurance Co.*, 659 F. Supp 1346
(S.D.N.Y. 1987), *aff'd mem.*, 841 F.2d 1117 (2d Cir. 1988) ................................... 15

*Tube and Steel Corp. of America. v. Chicago Carbon Steel Products*,
319 F. Supp. 1302 (S.D.N.Y. 1970) .................................................................... 17, 20

## STATE CASES

*Bausch & Lomb Inc. v. Utica Mutual Insurance Co.*, 735 A.2d 1081 (Md. 1999) ...................... 23

*Bevona v. Superior Maintenance Co.*, 611 N.Y.S.2d 193 (N.Y. App. Div. 1994) ................. 17, 19

*City of New Haven v. Local 884, Council 4, AFSCME, AFL-CIO*,
677 A.2d 1350 (Conn. 1996) ................................................................................... 16

*Garcia v. Foulger Pratt Development, Inc.*, 845 A.2d 16 (Md. Ct. Spec. App. 2003) ................. 23

*Harper Builders, Inc. v. Edens*, 318 S.E.2d 363 (S.C. 1984) ................................................. 17, 19

*Insurance Co. of North America. v. St. Paul Fire & Marine
Insurance Co.*, 626 N.Y.S.2d 232 (N.Y. App. Div. 1995) ....................................... 17

*International Components Corp. v. Klaiber*, 399 N.Y.S.2d 132 (N.Y. App. Div. 1977) ............. 17

*Jaycox v Ekeson*, 857 P.2d 35 (N.M. 1993) ................................................................ 18

*Leblon Consultants, Ltd. v. Jackson China, Inc.*,
   459 N.Y.S.2d 93 (N.Y. App. Div. 1983) .......................................................... 17, 19

*Omega Contracting, Inc. v. Maropakis Contracting, Inc.*,
   554 N.Y.S.2d 664 (N.Y. App. Div. 1990) ....................................................... 18, 19

*Parler & Wobber v. Miles & Stockbridge, P.C.*, 756 A.2d 526 (Md. 2000) ............................... 24

## FEDERAL STATUTES

9 U.S.C. § 10 ................................................................................................................ 18

9 U.S.C. § 10(a) .............................................................................................................. 3

9 U.S.C. § 10(a)(3) ........................................................................................... 19, 22, 25

## STATE STATUTES

Md. Cts. & Jud. Proc. Code Ann. § 3-221(b) ............................................................. 23

Md. Cts. & Jud. Proc. Code Ann. § 3-224(b)(4) ............................................ 3, 18, 22, 25

Md. Code Ann., Real Prop § 9-301 ............................................................................ 23

## MISCELANEOUS

6. C.J.S. Arbitration § 209 ........................................................................................ 19

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

---

**ALLIED ENVIRONMENTAL SOLUTIONS, INC.,**
    **formerly known as,**
    **Lurgi Lentjes North America, Inc.**
    **9730 Patuxent Woods Drive, Suite 100**
    **Columbia, Maryland 21046-1626,**

        **Petitioner,**

        **v.**

**FRANK W. HAKE, INC.,**
    **1500 Chester Pike**
    **Eddystone, Pennsylvania 19022,**

        **Respondent.**

**Civil Action No.**

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
PETITION TO VACATE ARBITRATION AWARD**

> **[N]either this Court nor the arbitration panel can allow the
> pursuit of an expedient adjudication to outweigh its obligation
> to ensure a just and fair one.**

*Naing Int'l. Enters., LTD v. Ellsworth Assocs., Inc.*, 961 F. Supp. 1, 5 (D.D.C. 1997).

      Picture that a party to a "huge," complex, multi-million dollar arbitration that produces

"more than 4,000 pages of testimony and tens of thousands of pages" of exhibits tragically loses

both its lead counsel and its key expert witness in a plane crash in the fortnight before the

hearing is to commence.[1]  Is there any doubt whether, under such circumstances, an arbitrator

must grant the afflicted party a reasonable continuance upon its request?

---

[1]      The quoted language is from the Arbitrator's description of this proceeding:  "The record in this case is huge, consisting of more than 4,000 pages of testimony and tens of thousands of pages of project records."  Ex. 6, Final Award at 2.

For all intents and purposes, that is precisely the situation here. Petitioner is the afflicted party. Both Petitioner's lead counsel and its sole expert and trial consultant became effectively dead to Petitioner mere days before the Arbitration in this case began. All of this occurred through no fault of Petitioner whatsoever. Yet, the Arbitrator forced Petitioner to proceed to trial with replacement counsel and without its expert and trial consultant — favoring an expedient adjudication over a just and fair one. Thus, the resulting Award must be vacated on the grounds of the Arbitrator's misconduct under the Federal Arbitration Act and relevant Maryland statute.[2]

Petitioner's lead trial counsel, who had spent months preparing Lurgi's case, suddenly and unexpectedly became unavailable and withdrew from the practice of law five days before the hearings were set to commence. His replacement counsel — brand new to the client, to the case, and even to the associate attorney working on the matter — was given a mere eighteen days to

---

[2]     Petitioner is Allied Environmental Solutions, Inc., formerly known as Lurgi Lentjes North America, Inc. In this brief Petitioner will be referred to as "Lurgi," or "Petitioner."

        The exhibits referenced in this memorandum are attached to the Petition to Vacate, as follows:

|         |         |
|---------|---------|
| Exhibit 1 | Arbitration Order No. 2, dated April 4, 2005; |
| Exhibit 2 | Arbitration Order No. 6, dated September 2, 2005; |
| Exhibit 3 | Letter of Protest re: failure to grant postponement, dated September 16, 2005; |
| Exhibit 4 | Arbitration Order No. 7, dated October 14, 2005; |
| Exhibit 5 | Interim Award, dated December 22, 2005; |
| Exhibit 6 | Final Award, dated March 20, 2006; |
| Exhibit 7 | Declaration of Willis Hembree, with Exhibit A; |
| Exhibit 8 | Declaration of Stephen R. Dellers, P.E., with Exhibit A; |
| Exhibit 9 | Declaration of Kevin M. Hart, with Exhibits A and B; |
| Exhibit 10 | Declaration of Martin P. Schrama, with Exhibits A to F; |
| Exhibit 11 | Declaration of Lewis J. Pepperman; |
| Exhibit 12 | Subcontract dated May 14, 2003 at ¶ 25; and |
| Exhibit 13 | Hearing Tr. Vol. 5 dated September 28, 2005 at pp. 1360-69, Hearing Tr. Vol. 5 dated September 29, 2005 at pp. 1547-48. |

"get up to speed" for a complex, multi-day, multi-million dollar arbitration. By contrast, Hake's counsel had at least eighteen months to prepare for the trial.

Then, only two weeks later, Lurgi's expert and litigation consultant—the litigation team member with the greatest substantive knowledge of the issues in the case—was hospitalized with a heart problem and ordered by his doctors to cease all work related activities. Thus, Lurgi lost both its lead counsel and its key expert in the fortnight before the hearing began—exactly the same result as the hypothetical example above. Despite full knowledge of these circumstances and awareness of the obvious prejudice to Lurgi's case, the Arbitrator *refused* to grant Lurgi's reasonable request for a continuance.

Of all the errors that an arbitrator could commit during an arbitration hearing, the denial of a reasonable request for a continuance is subject to strict judicial scrutiny and constitutes grounds for vacatur of the entire award. The plain language of the Federal Arbitration Act, 9 U.S.C. § 10(a),[3] provides that an arbitrator's failure to grant a postponement under circumstances reasonably calling for such postponement requires that the award be vacated. So, too, governing Maryland law provides that the "court *shall* vacate an award if … [t]he arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement….") Md. Code Ann., Cts. & Jud. Proc. § 3-224(b)(4) (emphasis added).[4]

It is an "essential proposition" that "a refusal to grant an adjournment of a hearing, due to a medical emergency, constitutes misconduct under the Federal Arbitration Act if it excludes the

---

[3]    "[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration *… where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown*…." *See* 9 U.S.C. § 10(a) (emphasis added).

[4]    This JAMS Arbitration was conducted in Washington, D.C. pursuant to Maryland law per agreement of the parties. *See* Ex. 1, Arbitrator's Order No. 2 at ¶ 2.

presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute and making the hearing fundamentally unfair." *Bisnoff v. King*, 154 F. Supp. 2d 630, 638 (S.D.N.Y. 2001). *See also Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) (award vacated where arbitrators refused postponement even though they found absent witness's proposed testimony to be cumulative).

Here, Lurgi's loss of both its lead lawyer and its only expert and trial consultant on the eve of the arbitration hearings was more than sufficient cause to postpone the hearings. Indeed, such circumstances compelled a continuance. This was not a mere loss of personnel. These events effectively caused a loss of evidence to Lurgi. First, Lurgi was denied an expert who could absorb the proceedings, hear the testimony and the evidence, and then give his own evidence and opinions based on his personal perception in the hearings. Indeed, the Arbitrator specifically recognized that experts are to be present and "supposed to absorb all the pertinent facts." *See* Ex. 9, Hart Decl. at ¶ 24. Hake had that benefit; Lurgi did not. Second, Lurgi's new counsel — deprived of an equal time to prepare and deprived of the assistance of the person with the greatest knowledge of the record — simply was not in a position equal to Hake's counsel to present Lurgi's evidence and to cross-examine Hake's witnesses. This, too, produced the exclusion of evidence material and pertinent to the case, all to Lurgi's prejudice and Hake's benefit.

By refusing to allow a postponement, the Arbitrator violated this "essential proposition" of law, and his refusal to postpone the hearing substantially prejudiced Lurgi's ability to present its claims and defenses. Such refusal by an arbitrator constitutes "misconduct" under 9 U.S.C. § 10(a) because it deprived Lurgi of due process and a just hearing. Indeed, he did exactly what this Court has prohibited — he allowed "the pursuit of an expedient adjudication to outweigh

[his] obligation to ensure a just and fair one." *See Naing Int'l. Enters., LTD v. Ellsworth Assoc., Inc.*, 961 F. Supp. 1, 5 (D.D.C. 1997).

Basic notions of fairness and justice, fundamental requirements of due process, and the requirements of both the Federal Arbitration Act ("FAA") and the Maryland Uniform Arbitration Act ("MUAA") require that the Award be vacated and that this matter be remanded to another arbitrator for new hearings on the merits at which time Lurgi can be represented by counsel and an expert witness and consultant who have had adequate time to prepare and present Lurgi's case.

## I.    FACTUAL BACKGROUND.

### A.    THE PARTIES AND DISPUTES.

On May 14, 2003, Lurgi (Contractor) and Hake (Subcontractor) entered into a $28.5 million subcontract agreement ("Subcontract") for a major construction project to construct two selective catalytic reactor systems for a large electrical power plant in Mercer County, New Jersey.  Almost from the beginning of the project, Lurgi and Hake had serious disagreements regarding project management, overruns, delays within Hake's scope of work and technical issues.  On March 1, 2004, Hake filed a construction lien claim in Mercer County, New Jersey for $597,214.00 for work, services, and materials it believed were owed under the terms of the Subcontract.  *See* Ex. 10, Schrama Decl. at ¶ 3.  Over the next several months, Hake continued to amend and expand its lien claims against Lurgi.  *Id.*  Just three months later — by June 2004 — Hake's claim against Lurgi had mushroomed to $3,831,557.47.  *Id.*

In May 2004, Hake filed for a judicial temporary restraining order in the New Jersey Superior Court, claiming that Lurgi owed Hake $4.4 million for unpaid invoices and yet an additional $3 million in charges that Hake had never invoiced and that Lurgi had never approved. *See id.* at ¶¶ 4, 5.  This gambit — a bald effort to extort Lurgi — was quickly squelched because

the Superior Court rejected Hake's claim of extraordinary circumstances and concluded that Hake was raising a standard claim for extra compensation. Hake then reconfigured its motion papers and filed a court action alleging the same underlying claims, despite having agreed in the Subcontract to refer all disputes to mediation and arbitration. *See* Ex. 12, Subcontract at ¶ 25. As such, Lurgi was forced to file a motion to stay the lawsuit and invoke the Subcontract's arbitration clause.

After Hake's judicial gambit was rejected by the New Jersey Court in the mid-summer and for reasons known only to Hake, it was not until September 14, 2004, that Hake filed a Mediation and Arbitration Demand. In that filing, Hake claimed economic damages exceeding $7.5 million —six months after it had initially filed a lien claim for less than $600,000.[5] *See* Ex. 10, Schrama Decl. at ¶ 5. Lurgi promptly counterclaimed for its damages at this time — Lurgi had claims against Hake of several million dollars for liquidated damages and restitution for sums paid to other companies to complete work that Hake never finished.

**B.    THE ARBITRATOR PLACED THIS COMPLEX ARBITRATION ON A "FAST TRACK" TO ACCOMMODATE HAKE AND THE ARBITRATOR.**

Following an unsuccessful mediation conducted in December 2004 and January 2005, the parties mutually agreed to the appointment of JAMS arbitrator Judge Curtis E. von Kann (Ret.) on March 18, 2005. On April 4, 2005, the Arbitrator held a preliminary scheduling conference. At this hearing, Lurgi pointed out that the technical complexity of the construction issues and the

---

[5]    It is undisputed that Lurgi ultimately paid Hake $28,317,925 for services and materials under this $28.5 million agreement—over 99% of the contract value. The gradual evolution of Hake's six-figure claim into an eight-figure arbitration award involves a complex recreation of the merits of the underlying dispute—an exercise beyond the scope of this petition. However, this brief substantive background contrasting the original amount in dispute and the ultimate result underscores the absurdity of the "runaway award" handed down by the Arbitrator in this case.

sheer volume of documents involved required a hearing to be set no earlier than January 2006.

As Hembree explains in his declaration, based "on my twenty years of experience and my

knowledge of the scope of the project and likely claims, I realized that a hearing in early 2006

would involve an aggressive schedule requiring substantial time and attention during 2005."

Ex. 7, Hembree Decl. at ¶ 8.

Hake — who at that point had both its counsel and its expert working on its claim for

nearly a year — alleged that it was in dire financial condition and that it required an expedited

arbitration schedule, although it failed to offer any evidence whatsoever to corroborate these

allegations.[6]  As of this time, it was undisputed that Lurgi had paid Hake over $28 million on a

contract nominally valued at $28.5 million.  Nevertheless, the Arbitrator did not ask for any

evidence confirming Hake's alleged financial distress.[7]  *See* Ex. 10, Schrama Decl. at ¶ ¶ 6-7.

Hake supported its request for an expedited hearing schedule by baldly asserting to the

Arbitrator that any arbitration award after October 31, 2005, would fatally threaten its existence.

And it claimed that any delay past that date would jeopardize refinancing plans essential to the

survival of Hake and its parent company, Matrix.  Those assertions — which the Arbitrator never

questioned or required to be corroborated — turned out to be untrue.  In fact, Matrix was making

money in 2005, and it successfully completed its restructuring before the Arbitrator issued his

---

[6]    It was of questionable propriety for Hake to make its alleged dire financial condition an
issue.  Indeed, Hake's entire argument on its finances presupposed that it would receive a
substantial award in its favor.  Its repeated and urgent assertions of poverty — as accepted by the
Arbitrator without substantiation — could only serve to predispose the Arbitrator to grant that
request for substantial relief.  Instead, such arguments should have been addressed to the
arbitration administrator so as not to taint the proceedings before the Arbitrator.

[7]    Hake's claim of urgency was dubious, given the six-month interval between filing a
construction lien and filing its demand for the arbitration.  Moreover, Hake's parent company
soon thereafter reported a healthy increase in profits/earnings over the previous year.  *See*
Exhibit 10 at ¶ 28.

award.[8]  Thus, one of the two reasons for placing the arbitration on an accelerated schedule was simply not true.

In addition to Hake's alleged financial distress, the only other factor considered by the Arbitrator in placing the case on a fast track was his own schedule and convenience.  The Arbitrator disclosed at the initial scheduling conference that he had previously scheduled arbitrations between October and December, 2005.  Despite Lurgi's reasonable request for hearings to commence in early 2006 (and over Lurgi's objection),  the Arbitrator set the hearing to start on September 6, 2005, with twelve days of hearings to be concluded by the end of the month.  *See* Ex. 1, Arbitration Order No. 2 at ¶ 21.  This date was explicitly set to accommodate the Arbitrator's schedule as well to address Hake's alleged but uncorroborated financial concerns — all without regard to Lurgi's need to prepare its defenses and counterclaims.

### C.    LURGI WAS DEALT A DOUBLE BLOW TO ITS LITIGATION TEAM DAYS BEFORE THE HEARING.

Lurgi's litigation team spent the next five months preparing for the Arbitration in September 2005. Lurgi's litigation team comprised three individuals:  lead counsel Craig Hilliard ("Hilliard"); expert witness/litigation consultant Willis Hembree ("Hembree"); and Hilliard's associate attorney, Martin Schrama ("Schrama").  These individuals spent the majority of their time between April 4, 2005, and August 30, 2005, preparing Lurgi's case for arbitration.  *See* Ex.

---

[8]     Hake's unsubstantiated — and repeated — claims of financial distress proved to be false, as demonstrated by a review of its recent SEC filings and press releases.  *See* Ex. 10, Schrama Decl. at ¶ ¶ 23-33.  According to a press release from Matrix dated December 21, 2005, the refinancing of its senior credit facility was completed well before the award was issued in this matter — a direct contradiction of the representations made to the Arbitrator.  *Id.* at ¶¶ 26-27.  In a Form 10-Q filed on October 6, 2005, for the quarter ended August 31, 2005, Matrix reported that its revenues grew by almost 30% to $108,996,000 as compared to the same period a year earlier.  *Id.* at ¶ 28.  Thus, the representations that Hake needed an expedited schedule to produce an award by October 31, 2005 to protect a foundering company were simply not true.

7, Hembree Decl., Ex. 10, Schrama Decl., and Ex. 11, Pepperman Decl.[9]

The documentary record in this case was staggering — the equivalent of over 500 boxes of documents.  Hake itself tardily produced over 100 boxes of documents (it had originally informed the Arbitrator that it had about 20 boxes of documents, and then it delayed its production and produced over 100 boxes of paper, plus electronic documents that printed out to many more boxes.)  Thus, the parties may have produced upwards of one million pages of documents and other materials.  *See* Ex. 10, Schrama Decl. at ¶ 18.  (The parties' copying costs alone exceeded $100,000.)

Moreover, apart from the sheer size of the record itself, the case involved a "technically complex construction project and the parties disputes involved numerous issues."  Ex. 7, Hembree Decl. at ¶ 8.  This situation was made more complicated because "Hake presented a series of unique, but at times interrelated claims — each of which required specific technical and scientific knowledge on various aspects of the project."  Ex. 9, Hart Decl. at ¶ 15.

As set forth more fully below, Lurgi divided the litigation preparation responsibilities by making expert Hembree primarily responsible for the documents — reviewing them, analyzing them, distilling them, knowing them, and selecting them for depositions and for trial.  His knowledge of the documents and the facts in the case, coupled with his technical skills and expertise, made Hembree a unique and essential member of the litigation team.

---

[9]    Glenn Azzinari, Esq. of Wormser, Kiely, Galef & Jacobs LLP in New York City served as outside general counsel to Lurgi and was involved only in a supervisory capacity.  Mr. Azzinari is primarily a transactional attorney, and he was not involved in the day-to-day preparations of the litigation team.

        **1.**      **Lurgi Lost The Services Of Its Lead Counsel Craig**
                    **Hilliard One Week Before The Scheduled Hearings.**

On August 31, 2005, Hilliard was forced to withdraw as Lurgi's lead counsel due to personal and medical reasons. *See* Ex. 11, Pepperman Decl. at ¶ 2. On August 31, 2005, and again on September 1, 2005, teleconferences were held to apprise the Arbitrator and Hake of Hilliard's withdrawal. *See id.* at ¶ 5. Lurgi requested a reasonable continuance so that replacement counsel could be found and brought up to speed on the complex issues involved in the arbitration. *Id.*

Despite the clear prejudice to Lurgi, the Arbitrator refused to continue the hearing for more than a few days. *Id.*; *see also* Ex. 2, Arbitration Order No. 6. The Arbitrator provided two reasons for this meager continuance. First, he personally had other arbitration commitments from October 18 through Christmas and told counsel that his "calendar was completely booked." *See id.* at 5.[10] Second, he continued to credit Hake's unsupported (and later proved to be false) assertion that an issuance of an arbitration award before October 31, 2005, was necessary for its survival. *Id.* at 4-5. Thus, the Arbitrator elevated concerns about Hake's finances and his own convenience, and he largely dismissed the plain need for Lurgi's counsel and expert to prepare and present its case in a substantially fair proceeding.

Over Lurgi's strenuous objection and to its clear prejudice, the arbitration hearing was rescheduled to commence on September 19, 2005. Thus, Lurgi's new lead trial counsel, Kevin

---

[10]     This highlights why an arbitrator's refusal to grant a postponement is (and should be) subject to heightened scrutiny over other decisions made by an arbitrator — the arbitrator has a financial incentive to set the schedule around his own convenience to avoid having the arbitration assigned to another arbitrator. Here, as of the beginning of the hearings, the Arbitrator had very little involvement in or knowledge of the facts and issues involved in the arbitration. Thus, it would have been feasible for another arbitrator to be found who could have heard the case in December. However, that would have meant that the Arbitrator would have lost the substantial fee income produced in this Arbitration.

Hart, was provided only eighteen days to prepare for this complex, multi-million dollar arbitration — while his adversaries had eighteen months to prepare their case.  *See* Ex. 9, Hart Decl. at ¶ 19, 22.

### 2.    Lurgi Lost The Services Of Its Only Expert Witness And Trial Consultant On The Eve Of The Arbitration.

Five days before the hearings were scheduled to commence, Lurgi's sole testifying expert and critical strategic consultant, Willis Hembree, had a cardiac episode that required his immediate hospitalization.  *See* Ex. 7, Hembree Decl. at ¶ 16.  Hembree was diagnosed with a possible vasospasm, prescribed nitroglycerin, and was referred to a cardiologist for further tests. *Id*.  On September 16, 2005, his cardiologist performed a stress test.  As a result of this test, Hembree's cardiologist directed him to avoid any physical or emotional stress (including work) for at least two weeks pending further tests and observation.[11]  *Id.*

Due to expertise and experience, Hembree was much more than an expert witness — he was an integral part of Lurgi's litigation team.  *See id*. at ¶ 12; *see also* Ex. 9, Hart. Decl. at ¶ 18-19.  Hembree had the primary responsibility for reviewing and digesting the Hake's voluminous (and late) document production for Lurgi's counsel.  He prepared deposition packages for each deponent (including outlines for questions and selected documents for Lurgi's attorneys to use as

---

[11]    Despite his doctors' orders to avoid stress, Hembree was forced to deal with another crisis unrelated to the Arbitration — his younger brother suffered a massive heart attack on September 25 and was placed on life support.  *Id.* at ¶ 19-20.  His brother was pronounced "permanently unconscious" on September 28th.  The brother's condition required Hembree's presence in Ohio.  *Id.*  Hembree's brother died on October 1, 2005 from this heart attack. Two days later, Hembree had to return home for his own heart catheterization procedure.  *Id.*  Because of this tragic loss, Hembree's concerns for his own health situation were only exacerbated.  Of course, while all of this is happening, the Arbitrator forced Lurgi to continue in the hearings without the assistance of its expert at the hearings, even though Hake had its expert present.

deposition exhibits), worked closely with Lurgi's counsel to prepare Lurgi's exhibit list, and was generally involved with most or all areas of the hearing preparation. *Id*.

As the person with the most substantive knowledge of the documents, the facts and the issues working on Lurgi's litigation team, Hembree was expected to sit at counsel table every day of the hearing, serve as a consultant through all phases of the hearing, testify as a rebuttal expert witness, and generally assist counsel with cross-examination of all fact and expert witnesses during the Arbitration. *Id*. The loss of Hembree's services during the Arbitration was a devastating blow to Lurgi and severely prejudiced its ability to examine both fact and expert witnesses, identify key documents during the hearing, and generally present its claims and defenses in an effective manner during the proceedings. *See* Ex. 9, Hart Decl. at ¶ 26-35.

### D. THE ARBITRATOR UNJUSTIFIABLY REFUSED TO GRANT A REASONABLE POSTPONEMENT.

As Lurgi was finalizing a letter of protest against the Arbitrator's refusal to postpone the hearings, it learned of Hembree's medical complications. Lurgi included that information in a letter sent to the Arbitrator. That letter of protest explained in detail the unfortunate double blow dealt Lurgi in the days leading up to the arbitration hearing. *See* Ex. 3, September 16, 2005 letter from Kevin Hart to Arbitrator von Kann. The loss of its lead counsel, compounded by the loss of its key witness and the person most knowledgeable about the case, mere days before the hearing, put Lurgi in an untenable position of near hopeless disadvantage. Lurgi requested an adjournment and a reasonable continuance of the hearing until its litigation team had an opportunity to recover and present its case in a substantively fair proceeding. *Id.* These objections were renewed on the first day of the hearing. *See* Ex. 9, Hart Decl., Exhibit B — Hearing Tr. Vol. 1 at p. 26-7.

The Arbitrator *again* refused Lurgi's reasonable request for a continuance, citing the pressures of his own schedule and the economic needs of Hake for a prompt hearing and issuance of an arbitration award before October 31, 2005.  *See, e.g.*, Ex. 13, Hearing Tr. Vol. 5 at p. 1360-69.  Despite the clear and overwhelming prejudice to Lurgi, the Arbitrator rejected Petitioner's reasonable request for a continuance and began the hearing on September 19, 2005.

Thus, Lurgi was forced to litigate with a lead counsel who had eighteen days to prepare this complex case, without the benefit and advice of the sole expert and technical consultant for Lurgi — Hembree.  This stands in stark contrast to Hake, whose counsel was involved in this dispute for eighteen months and who had the benefit (also for eighteen months) of their own expert/consultant, Walter Wachter, who attended each day of the hearing, sat at counsel table, and actively participated in the presentation of Hake's case by assisting counsel. *See* Ex. 9, Hart Decl. at ¶ 33; Ex. 10, Schrama Decl. at ¶ 37-38. In effect, the token postponement granted by the Arbitrator was meaningless in the context of this complex dispute, especially where Hake's litigation team had been preparing their case for well over a year.

### E.    THE ARBITRATOR FORCED LURGI TO OBTAIN A REPLACEMENT EXPERT, BUT THE DAMAGE HAD ALREADY BEEN DONE.

As of September 29, 2005, Lurgi was ten days into the arbitration with its replacement lawyer but without its trial expert and technical consultant, Hembree.  At that point, it became increasingly clear that Hembree would not be able to serve even as a testifying expert witness unless the Arbitration was adjourned and continued.  Not only was Hembree having his own cardiac issues and dealing with his mother's separate health problems, but his situation took a sudden, dramatic, and catastrophic turn for the worse.  Hembree's younger, thirty-five year old brother had a massive heart attack on September 25, 2005.  As his closest living relative, Hembree was required to attend to his brother, who had been pronounced permanently

unconscious. Several days after he was determined to be in a permanently unconscious state, the brother died. *See* Ex. 7, Hembree Decl. at ¶ 19 and the Ex. 8, Dellers Decl. at ¶ 8. Hembree had little time to mourn, however, because two days later he had to return to Maryland for his own heart catheterization procedure. *Id*.

Even in the face of these overwhelming events, the Arbitrator refused to continue the case until Hembree could return and testify. Instead, he demanded that one of Hembree's colleagues, Stephen Dellers, take over for Hembree. During a conference call with Mr. Dellers, the Arbitrator put him on the spot and asked him how much time he needed to "get up to speed" on the rebuttal issues outlined in Hembree's expert report in order to serve as a testifying expert witness on Lurgi's behalf. *Id*. Dellers had had only minor involvement in assisting Hembree prepare portions of his expert report in July 2005. However, he had not reviewed the overwhelming majority of the underlying documents and materials in the case, and he had not attended a single arbitration hearing. *Id*. at ¶¶ 6 & 9. Thus, the Arbitrator compelled Lurgi to accept an expert witness of the Arbitrator's choosing.

As a purported "accommodation" to Lurgi, the Arbitrator ordered that the portion of the case in which Lurgi's testifying expert (Dellers) would offer his testimony and Hake's expert be cross-examined would be postponed until mid-November. *See* Ex. 4, Order No. 7. However, even with that accommodation, the Arbitration hearings continued to move forward as scheduled, and Lurgi was deprived of the services of Mr. Hembree (the litigation team member most knowledgeable about the documents and issues in the case) during the entire proceedings. Dellers — with only a month to prepare compared to his counterpart's eighteen months — ultimately provided expert testimony in November. Even then, however, his role was strictly

limited to that of testifying expert — he was not a general litigation consultant or repository of

institutional knowledge, as was Mr. Hembree.  *See* Ex. 8, Dellers Decl. at ¶ 9-11.

To compound this fundamental unfairness, Dellers' testimony was given after a hiatus in

the Arbitration of several weeks.  During the hiatus, the Arbitrator was already reviewing the

evidence presented during the factual phase of the hearing (in which all of the parties' fact

witnesses, as well as Hake's expert who also addressed certain factual elements of the case, had

already testified and been cross-examined).  The Arbitrator did so with an eye toward writing the

award while the proceeding was still underway.  *See* Ex. 13, Hearing Tr. Vol. 6 at  p. 1547-48.

In the end, Hake was successful on the vast majority of its claims and Lurgi lost all of its

counterclaims.  *See* Ex. 5, Interim Award.  To add insult to injury, the Arbitrator's Interim

Award awarded attorneys' fees and costs against Lurgi, despite his finding of no bad faith, the

agreement of the parties to bear their own costs, and the controlling Maryland law against such a

fee award.  *See* Ex. 5, Interim Award at 32-25.

## II.    ARGUMENT.

### A.    THE ARBITRARY DENIAL OF PETITIONER'S REASONABLE REQUEST FOR A POSTPONEMENT REQUIRES VACATUR OF THE RESULTING AWARD UNDER BOTH MARYLAND AND FEDERAL LAW.

The Arbitrator "must give each of the parties to the dispute an adequate opportunity to

present its evidence **and** argument."  *Hoteles Condado Beach v. Union De Tronquistas Local

901*, 763 F.2d 34, 39 (1st Cir. 1985) (emphasis added).  In other words, the arbitration hearing

process must be fundamentally fair — where there is a "denial of fundamental fairness of the

arbitration proceeding" a resulting award must be vacated.  *Transit Cas. Co. v. Trenwick

Reinsurance Co*., 659 F. Supp 1346, 1354 (S.D.N.Y. 1987), *aff'd mem.,* 841 F.2d 1117 (2d Cir.

1988).  Thus, it has been held that an arbitrator's "refusal to continue the hearings to allow [one

witness] to testify amounts to fundamental unfairness and misconduct sufficient to vacate the award pursuant to section 10(a)(3) of the FAA." *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16, 21 (2nd Cir. 1997).

Here, of course, Lurgi lost much more than one witness. It lost its lead counsel, who had spent months immersed in this case and preparing for the hearing, when he was forced to withdraw mere days before the Arbitration was scheduled to begin. Days later, Lurgi lost its key expert witness and the individual with the greatest substantive knowledge of the case and command of the facts, the documentary evidence, and the issues, when the expert suffered an acute heart condition and other personal tragedies that forced his withdrawal, as well.

Either one of these events alone was sufficient to compel a continuance — the denial of which would serve as ample grounds for vacatur of an arbitral award against the prejudiced party. Indeed, as noted above, it is an "essential proposition" that "a refusal to grant an adjournment of a hearing, due to a medical emergency, constitutes misconduct under the Federal Arbitration Act if its excludes the presentation of evidence material and pertinent to the controversy thus prejudicing the parties in the dispute and making the hearing fundamentally unfair." *Bisnoff v. King*, 154 F. Supp. 2d 630, 638 (S.D.N.Y. 2001).

Cases vacating an arbitrator's award — in circumstances much less compelling and dire than those presented here — are legion:

- In *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997) the award was vacated where arbitrators refused a postponement even though they found absent witness's proposed testimony to be cumulative.

- In *City of New Haven v. Local 884, Council 4, AFSCME, AFL-CIO*, 677 A.2d 1350, 1353 n. 4 (Conn. 1996) the court found that the arbitrators were guilty of misconduct when they refused to postpone the hearing due to city's attorney's sudden illness and lack of available replacement. The award was vacated.

- In *International Components Corp. v. Klaiber*, 399 N.Y.S.2d 132, 133 (N.Y. App. Div. 1977) the court found that the arbitrator committed "misconduct" by refusing to grant a postponement when advised that counsel's wife was undergoing treatment for cancer, and in fact, underwent surgery on the day of the hearing. The court vacated the award and remanded the case to a new panel.

- In *Allendale Nursing Homes, Inc. v. Local 1115 Joint Board*, 377 F. Supp. 1208, 1213-14 (S.D.N.Y. 1974) the refusal of the arbitrator to grant a postponement when a party representative and witness was sent to the hospital after being noticeably ill in the presence of arbitrator was held to be misconduct, requiring vacatur of the award.

- In *Harper Builders, Inc. v. Edens*, 318 S.E.2d 363, 365 (S.C. 1984) the court vacated an award because the arbitrators refused to postpone the hearings when a partner in one of the partnerships became ill and could not attend the hearings.

- In *Insurance Company of North America. v. St. Paul Fire & Marine Insurance Company*, 626 N.Y.S.2d 232 (N.Y. App. Div. 1995) the court held that the unavailability of a fire marshal investigator due to a pending criminal investigation established good cause for a request for a postponement, and the failure of the arbitrator to grant an adjournment constituted misconduct requiring vacatur of the award.

- In *Leblon Consultants, Ltd. v. Jackson China, Inc.*, 459 N.Y.S. 2d 93, 94 (N.Y. App. Div. 1983) the court ordered an award to be vacated because the arbitrator refused to postpone the hearing to allow an employee to be present where counsel considered the employee's "presence as indispensable in the contemplated cross-examination" of the other side.

- In *Naing International. Enterprises, LTD v. Ellsworth Associates, Inc.*, 961 F. Supp. 1, 5 (D.D.C. 1997) the court vacated an arbitration award, holding that the arbitrators should have postponed the hearing to allow the respondent time to develop evidence from a pending SBA investigation.

- In *Bevona v. Superior Maintenance Co.*, 611 N.Y.S.2d 193 (N.Y. App. Div. 1994) the court held that the arbitrator engaged in "misconduct" in denying the employer's request for adjournment of the hearing, entitling employer to vacatur of arbitration default award, where employer had requested adjournment due to death in witness' family three days before hearing date. The court stated: "There is no question that respondent stated compelling grounds for adjournment of the arbitration proceedings…."

- In *Tube and Steel Corp. of America. v. Chicago Carbon Steel Products*, 319 F. Supp. 1302, 1304 (S.D.N.Y. 1970) the court vacated the award

because the arbitrators had scheduled the hearing for their personal convenience over the reasonable availability and convenience of the parties.

- In *Omega Contracting, Inc. v. Maropakis Contracting, Inc.*, 554 N.Y.S.2d 664 (N.Y. App. Div. 1990) the court held that arbitrator abused his discretion in his refusal to grant an adjournment where party's principal failed to appear because of a family medical emergency.

- In *Jaycox v Ekeson*, 857 P.2d 35 (N.M. 1993) the court vacated an award because the arbitrator refused to continue the third arbitration hearing even though the plaintiff could not attend with his counsel.

- In *Coastal General Construction Service Corp. v. Virgin Islands Housing Authority*, 98 Fed. Appx. 156, 2004 WL 1096241 (3d Cir. May 18, 2004) the Arbitrator's refusal of the government's request to postpone the hearing constituted misconduct warranting vacation of award because the government was entitled to more time to respond to claimant's last minute filing.

Not one of these cases involved the loss to a party of **both** its counsel **and** its expert witness. Here, Lurgi suffered a double blow by losing both its lead counsel and its key expert/consultant — doubly exacerbating the prejudice to Lurgi's case. In denying a reasonable postponement to Lurgi, the Arbitrator violated the express provisions of the Federal Arbitration Act and the Maryland Uniform Arbitration Act that compelled him to grant a continuance if good cause was shown for such a postponement. *See* 9 U.S.C. § 10 and Md. Code Ann., Cts. & Jud. Proc. § 3-224(b)(4).

If ever there was set of circumstances supporting a request to adjourn an arbitration hearing, it is this case. Peculiar and unfortunate circumstances caused obvious prejudice to Lurgi, whose replacement counsel was forced to try a complex, multi-million dollar arbitration with eighteen days to prepare and without the ability to consult with the one person who knew more than anyone else about the case. Moreover, both circumstances were completely outside

Lurgi's control. The facts presented here are more compelling than virtually any other case in which a district court has vacated an arbitral award for a violation of 9 U.S.C. § 10(a)(3).[12]

### B. THE ARBITRATOR UNREASONABLY ELEVATED HIS OWN SCHEDULE AND CONVENIENCE OVER LURGI'S RIGHTS TO DUE PROCESS AND A FAIR PROCEEDING.

The Arbitration was originally placed on an expedited timetable in part to accommodate the convenience of the Arbitrator, who was involved in another arbitration and other matters between October 18, 2005 and late December 2005. *See* Ex. 2, Arbitration Order No. 6 at ¶ 5. Unmoved by the obvious prejudice Lurgi suffered after losing both its lead counsel and its key expert, the Arbitrator refused to continue the proceedings because of his prior commitments and his personal resolve to expedite this hearing to accommodate Hake's professed (and fictitious) economic distress. Of course, such considerations should be collateral in any event when compared to Lurgi's demonstrated hardship in presenting its case fairly.

The paramount concern for any arbitrator is that both parties enjoy a fundamentally fair proceeding. *See* 6. C.J.S. Arbitration § 209 ("Irregularities that deprive a party of a fair and impartial hearing, or amount to an arbitrary disregard of the law … will constitute such

---

[12]     *Compare, e.g., Bevona v. Superior Maintenance Co.*, 611 N.Y.S.2d 193, 195-96 (N.Y. App. Div. 1994) (court vacated award and held that arbitrator engaged in "misconduct" by denying employer's request for adjournment of hearing, after employer had requested adjournment due to death in witness' family three days before hearing date; court noted "there is no question that respondent stated compelling grounds for adjournment of the arbitration proceedings…."); *Omega Contracting, Inc. v. Maropakis Contracting, Inc.*, 554 N.Y.S.2d 664, 665-66 (N.Y. App. Div. 1990) (vacated award after arbitrator abused his discretion by refusing to grant an adjournment when party's principal failed to appear because of a family medical emergency); *In re Arbitration Between Leblon Consultants, Ltd. and Jackson China, Inc.*, 459 N.Y.S.2d 93, 94 (N.Y. App. Div. 1983) (award vacated after arbitrator refused to adjourn hearing until the only employee of the respondent who had knowledge of the underlying dispute returned from overseas travel); *In re Arbitration Between Harper Builders, Inc. and Edens*, 318 S.E.2d 363, 365 (S.C. 1984) (refusal of arbitrators to postpone arbitration hearings because of hospitalization and illness of essential party to proceedings was improper).

misconduct as will vitiate the award and cause it to be set aside."); *see also Naing Int'l.*, 961 F. Supp. at 5 ("[N]either this Court nor the arbitration panel can allow the pursuit of an expedient adjudication to outweigh its obligation to ensure a just and fair one.")

Making the "personal convenience of the arbitrators … a paramount concern over the reasonable availability and convenience of the parties" creates "patent procedural unfairness…." *Tube and Steel Corp. of Am. v. Chicago Carbon Steel Prods.*, 319 F. Supp. 1302 (S.D.N.Y. 1970). Thus, the court found that "insisting on proceeding for the sole convenience of themselves, the arbitrators were guilty of behavior which unfairly and unnecessarily prejudiced the rights of the respondent." *Id*. at 1304. Accordingly, the award was vacated.

Similarly, here the Arbitrator should have granted a postponement until he and the parties were available for a full and fair hearing of this case on its merits. If he was personally unavailable in early 2006, he could have (and should have) seconded the Arbitration to another JAMS's arbitrator for a full and fair hearing. Instead, he pressed ahead with the Arbitration to Lurgi's distinct prejudice, to suit his convenience and to accommodate Hake's (false) claim of imminent bankruptcy.

C.    BY FORCING LURGI TO PROCEED WITH COUNSEL UNFAMILIAR TO THE CASE, AND WITHOUT THE ADVICE AND BENEFIT OF MR. HEMBREE, THE ARBITRATOR UNFAIRLY PREJUDICED LURGI'S ABILITY TO PRESENT ITS CLAIMS AND DEFENSES IN A SUBSTANTIVELY FAIR PROCEEDING.

If an arbitrator's conduct prejudices a party by denying that party an opportunity for a fair hearing, such misconduct is ground for vacatur of the award and remand for rehearing. *See, e.g., Tempo Shain Corp.*, 120 F.3d at 20. The issues identified above (losing lead counsel immediately before the hearing, compounded by the loss of Mr. Hembree's expertise throughout the entire proceeding) substantially prejudiced Lurgi and undermined the fundamental fairness of the Arbitration. Lurgi's ability to cross-examine fact and expert witnesses was significantly

hampered. Its ability to identify key documents and exhibits during the proceedings was impaired. As replacement counsel Hart explained: "Without the benefit of Mr. Hembree's participation, I was at a substantial disadvantage. I was denied the services of Mr. Hembree (Mr. Wachter's counterpart), who was the most knowledgeable person with respect to various crucial aspects of the project." Ex. 9, Hart Decl. at ¶ 29.

This is in stark contrast to Hake's litigation team, the Pepper Hamilton attorneys and their lead expert, Walter Wachter, who had worked to prepare Hake's case for eighteen months and who had the benefit of Mr. Wachter's expertise and advice throughout every day of the hearing (other than one Saturday session). *See* Ex. 10, Schrama Decl. at ¶ 38.

The prejudice to Lurgi from losing Mr. Hilliard and Mr. Hembree was real and tangible. As attorney Martin Schrama described it:

> When we lost the services of Mr. Hembree, we were particularly disadvantaged in preparing for the factual phase of the hearings, as neither Mr. Hart nor I had the familiarity of Mr. Hembree (or even that of Mr. Hilliard) with the documents, facts, and issues. Indeed, without Mr. Hembree, we had no expert consultant at all to advise us as Hake presented its case and its witnesses. This adversely impacted our ability to prepare for the cross-examination of witnesses, including the selection of documents to use in cross-examination, the identification of issues to raise in cross-examination, and the full understanding of the significance of the testimony presented by the witnesses in the context of this case. Moreover, Mr. Hembree's situation adversely affected our presentation of our own witnesses as he was not available to consult with us on issues and facts to stress and documents to present and highlight.

*Id.* at ¶ 37. And as Lurgi's new leading counsel stated to the Arbitrator during the hearings: "I don't believe it's feasible, and I think it's prejudicial to my client to have an expert step into a matter like this in the type of timeframe Your Honor has set forth," and "I think that the prejudice to Lurgi by having to go forward at less than full strength with an expert, regardless of timeframe … substantially prejudices our case." Ex. 9, Hart Decl., ¶ 20.

The resulting prejudice to Lurgi was obvious and overwhelming—yet the arbitrator chose to ignore it and push ahead. This unreasonable and unjustifiable abuse of discretion constitutes misconduct warranting vacatur and remand. *See* Md. Cts. & Jud. Proc. Code Ann. § 3-224(b)(4) ("The court *shall* vacate an award if … [t]he arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement … ."); *see also* 9 U.S.C. § 10(a)(3) (vacatur appropriate "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced").

### D. THE ARBITRATOR'S INTENT TO AWARD ATTORNEYS' FEES AND COSTS DEMONSTRATES CLEAR LEGAL ERROR. ONLY HAKE'S RECENT WITHDRAWAL (WITH PREJUDICE) OF ITS FEE PETITION PREVENTED FURTHER ERROR AND ADDITIONAL GROUNDS FOR VACATUR.

In his Interim Award dated December 22, 2005, the Arbitrator held that Hake was entitled to an award of attorneys' fees and costs, and ordered Hake to provide an itemized statement of such fees and costs (with supporting documentation) by January 17, 2006. *See* Ex. 5, Interim Award at 32-35; *see also* Ex. 14, Arbitration Order No. 8. The Arbitrator's manifest intent to award fees and costs clearly exceeded his authority. Indeed, following Lurgi's objections to the award of any such fees as contrary to law and the agreement of the parties, Hake unilaterally withdrew with prejudice its application for any award of fees or costs. *See* Ex. 15, March 15, 2006, letter from Jonathan M. Preziosi to Arbitrator von Kann. There can be no doubt that the reason for Hake's withdrawal of its application for an award of attorneys' fees was to avoid further error and additional grounds for vacatur of the entire award.

"Maryland follows the 'American Rule' for attorneys' fees. As such, '[i]n the absence of statute, rule, or contract expressly allowing recovery of attorneys' fees, a prevailing party in a

lawsuit may not ordinarily recover attorneys' fees.'" *Garcia v. Foulger Pratt Devel., Inc.*, 845

A.2d 16, 31-2 (Md. Ct. Spec. App. 2003), *citing Bausch & Lomb Inc. v. Utica Mut. Ins. Co.*, 735

A.2d 1081 (Md. 1999) (internal citation omitted).  Moreover, the Maryland Uniform Arbitration

Act provides an express restriction on the Arbitrator's authority to award fees:  "Unless the

arbitration agreement provides otherwise, **the award may not include counsel fees**."  Md. Code

Ann., Cts. & Jud. Proc. § 3-221(b) (2002) (emphasis added).

The Arbitrator began the fee analysis in his Interim Award by citing Md. Code Ann.,

Real Prop. § § 9-301 *et seq.* (2003).  That was plain error and beyond his authority under MUAA

§ 3-221(b), which expressly prohibits arbitration counsel fee awards based on anything other

than the arbitration agreement itself.[13]  This error infected his entire fee analysis and award.

In making his award of counsel fees to Hake, the Arbitrator specifically found that Lurgi

had not acted in "bad faith."  Specifically, he noted that Lurgi's positions (though not compelling

to the Arbitrator) "were not frivolous," and he further noted that Lurgi "prevailed on most of

Hake's 'Impact' claims."  *See* Ex. 5, Interim Award at ¶ 33.

The Subcontract at issue contains a strong presumption that each side will bear its own

fees and expenses, including all of the arbitration expenses and will share equally in the

Arbitrator's expenses.  Moreover, given the circumstances of this Arbitration — where Lurgi lost

both its trial counsel and its trial consultant and expert on the eve of the hearings and where the

Arbitrator denied Lurgi's request for a postponement — the arbitrator's clear, manifested

---

[13]    Moreover, even if the arbitrator could have considered a statutory basis to award counsel
fees, the Real Property code has no applicability to this case.  There is no nexus to any real
property in the State of Maryland.  The work performed under the contract was for a power plant
in the State of New Jersey.  The Subcontract at issue has nothing whatever to do with real
property in Maryland.  Thus, the Arbitrator's reliance upon the Real Property Code was just
wrong.

intention to award counsel fees against Lurgi can only be described as punitive, if not malicious — especially where he found that Lurgi had not proceeded in bad faith or frivolously.

It is recognized in Maryland that to sanction a party by awarding counsel fees is rarely warranted, and such awards have been described as "judicially guided missiles pointed at those who proceed without any colorable rights to do so." *Parler & Wobber v. Miles & Stockbridge, P.C.*, 756 A.2d 526, 545 (Md. 2000) (citation omitted).  Here, the Arbitrator fired a barrage of missiles at Lurgi during these proceedings:

- denied Lurgi's motion for a postponement;

- forced Lurgi to arbitrate with a lawyer who had only eighteen days to prepare compared to his opponent's eighteen months;

- denied Lurgi the ability to have a technical consultant assisting counsel during the hearings while allowing Hake to have its technical consultant present and assisting counsel;

- forced Lurgi to hire and use a replacement expert who also was allowed only a fraction of the time to prepare as allowed to his opponent;

- awarded Hake an amount in damages that was over seventeen times that amount it first claimed in the dispute with Lurgi; and

- tried to award Hake an additional sum for counsel fees and costs, even though he found that Lurgi had proceeded in good faith and without making frivolous claims.

Any one of these missiles is sufficient grounds to vacate the Final Award.  At a minimum, they are compelling grounds for vacatur, and they demonstrate that the Arbitrator grossly exceeded his authority when he tried to heap counsel fees on top of his runaway award that emanated from the forced march to Arbitration.

## CONCLUSION

The Arbitrator allowed the "pursuit of an expedient adjudication to outweigh [his] obligation to ensure a just and fair one."  Lurgi's request for a continuance after losing its lead

24

trial counsel and its key expert witness/consultant was more than reasonable under the circumstances.  The Arbitrator's failure to grant Lurgi's request for a continuance amounted to fundamental unfairness and misconduct sufficient to vacate the award pursuant to 9 U.S.C. § 10(a)(3) and Md. Code Ann., Cts. & Jud. Proc. § 3-224(b)(4).

Accordingly, for all the foregoing reasons, Petitioner respectfully requests that the Award be vacated and that this matter be remanded to another Arbitrator for a new hearing on the merits at which time Petitioner can be represented by a litigation team who have had adequate time to prepare and present Lurgi's case in a fair and just proceeding.

**Respectfully submitted,**

**_____/s/ James H. Hulme_____**
**James H. Hulme (D.D.C. Bar No. 323014)**
**Matthew M. Wright (D.D.C. Bar No. 474731)**
**ARENT FOX PLLC**
**1050 Connecticut Ave., NW, Suite 500**
**Washington, DC 20036-5339**
**Tel:  202-857-6144**

**_Attorneys for Petitioner Allied Environmental_**
**_Solutions, Inc., f/k/a/ Lurgi Lentjes North America,_**
**_Inc._**