**JAMS ARBITRATION**

| | |
|---|---|
| **FRANK W. HAKE, INC.,** )<br>    **Claimant/Counter-Respondent,** )<br> )<br>**v.** )  Reference No. 1410003829<br> )<br>**LURGI LENTJES NORTH AMERICA, INC.,** )<br>    **Respondent/Counter-Claimant.** )<br> ) | |

**ORDER NO. 6**

Respondent has requested a postponement of the arbitration hearing scheduled to begin on September 6, 2005. Claimant vigorously opposes any postponement that would involve starting the hearing later than September 19, 2005. Given that any award issued in this proceeding is subject to vacatur if I engage in "misconduct in refusing to postpone the hearing, upon sufficient cause shown," 9 U.S.C. § 10(a)(3), resolution of this dispute requires a careful exercise of my discretion in light of all the pertinent circumstances and equities involved.

This is a hotly contested arbitration relating to the construction of certain Selective Catalytic Reduction units and related facilities at the Duck Island, New Jersey electrical generating station owned by PSEG Fossil, L.L.C. ("PSEG"). Respondent Lurgi Lentjes North America, Inc. ("Lurgi") and PSEG entered into a September 20, 2002 contract under which Lurgi agreed to provide PSEG with design, supply, and installation services in connection with the construction. On May 14, 2003, Lurgi entered into a subcontract with Frank W. Hake, Inc. ("Hake") whereby Hake agreed to perform "all work necessary or appropriate to complete installation of the civil, structural, and mechanical work under the general direction of [Lurgi] and in accordance with [the applicable specifications]." Subcontract Article 3.0

The subcontract contained a dispute resolution provision (Article 25) under which any disputes would be initially submitted to direct discussions between specified representatives of the parties and then to mediation before a mediator associated with JAMS/Endispute (now "JAMS").  If not so resolved, "The Dispute shall be immediately referred to and decided by binding arbitration before an arbitrator associated with [JAMS]."  Subcontract § 25.3.  Lurgi and Hake are to share the charges of the arbitrator and JAMS equally, unless the arbitrator rules otherwise.  Subcontract § 25.10.

On September 14, 2004, Jonathan M. Preziosi, a partner in the Princeton, New Jersey office of Pepper Hamilton, LLP, filed with JAMS a Mediation and Arbitration Demand on behalf of Hake.  That demand sought mediation and, if unsuccessful, arbitration of Hake's claim that Lurgi owed it $4,445,769 for unpaid payments due under the contract, plus $3,519,240 for extra labor and materials furnished by Hake at Lurgi's direction.  On December 1, 2004, Glenn M. Azzinari, a partner in the New York City law firm of Wormser, Kiely, Galef & Jacobs LLP, filed with JAMS Lurgi's Answer and Counterclaim, which denied liability to Hake and sought approximately $5,000,000 from Hake (for liquidated damages, sums allegedly paid to other companies to complete Hake's work, and delay damages), plus attorneys' fees and all costs of the arbitration.  Mediation conducted by another JAMS panelist did not produce a settlement.

On March 18, 2005, I was appointed as the arbitrator of this dispute.  On April 4, 2005, I conducted a preliminary conference.  Participating for Hake were Mr. Preziosi, Hake employee Justin Sheets, and John J. Carwile, a partner in the Tulsa, Oklahoma law firm that represents Hake's parent company, Matrix.   Participating for Lurgi were Mr. Azzinari and Craig Hilliard, a partner in the Lawrence, New Jersey law firm of Stark & Stark.

At the preliminary conference, the parties agreed to limited document production and depositions and further agreed that the hearing would take about 12 days.  However, there was sharp disagreement concerning when the hearing should be held.  Hake's counsel stated that, as a result of heavy losses suffered on this and other projects, Hake

2

and Matrix were in dire financial condition, facing possible bankruptcy, and thus seeking a hearing in May or June of 2005. Lurgi's counsel asserted that discovery and proper preparation for the hearing would require considerably more time than that and sought a hearing date in January 2006.

After considering counsel's respective arguments, I issued Order No. 2 on April 4, 2005. That order provided a schedule for the discovery the parties had agreed to and set the hearing for 12 days beginning September 6, 2005. After this order was issued, neither side submitted any objections to it, nor any motion to reconsider the hearing dates.

In the months that followed, the parties engaged in discovery conducted principally for Hake by Mr. Preziosi and Angelo Stio, an associate in his firm, and for Lurgi by Mr. Hilliard and Martin Schrama, an associate in his firm. A few discovery disputes arose, which I resolved as reflected in Orders No. 3, 4, and 5. The parties also agreed to extend a few of the pre-hearing dates specified in Order No. 2.

On the afternoon of August 29, 2005, I received an e-mail indicating that counsel wished to speak with me as promptly as possible concerning a further discovery dispute. At 9:00 am on August 30, 2005, I had a conference call with Messrs. Hilliard and Preziosi. Mr. Hilliard stated that he had taken the deposition of Hake's expert witness on August 29. In connection with that deposition, he had received from Mr. Preziosi on August 28 a supplemental report of Hake's expert. Mr. Hilliard asserted that this report introduced "a whole new expert theory" into the case, that Lurgi's expert (who was scheduled to be deposed on August 30) needed time to consider this theory, and that it was thus necessary for Lurgi to seek a postponement of the deposition of Lurgi's expert as well as the arbitration hearing. Mr. Preziosi then reviewed the full sequence of expert reports exchanged between the parties and clearly demonstrated that the supplemental report did not, in fact, advance a new theory but merely replied to some contentions set forth by Lurgi's expert in a report responding to the original report of Hake's expert.

Having heard counsel's arguments, I stated that Lurgi had not made out good cause for a postponement over objection. However, I observed that both sides were apparently rushing to complete, in the one week remaining before the hearing, a number of final pre-hearing activities, including expert depositions and the submission of exhibits and pre-hearing memoranda. I stated that I would be happy, if the parties so agreed, to delay the commencement of the hearing until September 7, 8, 9, 10, or 12, and tack onto the back end of the hearing schedule whatever number of days were cancelled at the front end. Both counsel appeared pleased with this resolution and indicated that they would get back to me soon concerning any agreements they were able to reach.

Around 4:00 pm on August 30, I received a voice mail message from Mr. Hilliard indicating that Lurgi and Hake had agreed to delay the start of the hearing until at least September 8 and that Mr. Preziosi was contacting his client to see if Hake would agree to delay the start until September 12.

On August 31, 2005, I received a voice mail message from Mr. Schrama indicating that a medical emergency had arisen with respect to Mr. Hilliard and requesting that I call him so that he could explain the situation. I instructed my case manager to notify Mr. Schrama that I could not have an *ex parte* conversation with one side but would be happy to discuss the matter with both sides in a conference call. That call was then scheduled for 4:00 pm on August 31.

In the August 31 conference call, with Messrs. Schrama and Preziosi participating, the former explained that Mr. Hilliard had taken a medical leave of absence from his firm that day and that, accordingly, Lurgi was requesting a postponement of the arbitration hearing past September 12. Mr. Schrama indicated that he did not know the particulars of Mr. Hilliard's condition but knew that he was not in the hospital. Mr. Preziosi stated that he was sorry that Mr. Hilliard was having any sort of medical problem but that Hake strongly objected to any continuance past September 12 in view of the precarious financial condition of his client and the fact that Stark & Stark was a large firm with many other partners who could presumably take over for Mr. Hilliard. Mr.

4

Preziosi noted that Order No. 2 provided for the issuance of an award in this matter by October 31, 2005, and he represented that receiving the award by that date had become a critical factor in a complex refinancing plan which his client had worked out with its lenders. Any delay which pushed the award date past October 31 jeopardized the refinancing plan and thus the survivability of his client.

I advised both counsel that I could extend the start date of the hearing as far as September 19, 2005 and still issue the award by October 31, 2005. However, because my calendar was completely booked with other arbitrations, from October 18 through Christmas, if we did not start the hearing by September 19 it would have to be postponed until January, 2006, which I was very reluctant to do. I urged counsel to discuss the matter further and see if they could come to an agreement to postpone the commencement of the hearing to September 12 or 19 or some date in between. They agreed to speak further and report back to me in a conference call at 4:00 pm on September 1, 2005.

In the conference call held on September 1, Hake was represented by Messrs. Preziosi, Stio, and Carwile, and Lurgi by Messrs. Schrama and Lewis J. Pepperman, the managing partner of Stark & Stark. Mr. Preziosi advised that his client was willing to start the hearing on September 19 but could not agree to any postponement beyond that, particularly since it would result in delaying the hearing until at least January, 2006. He noted that Mr. Azzinari's website bio indicated he had experience in litigation and arbitration and that there were also many other lawyers at Stark & Stark. Mr. Carwile explained that Matrix was a publicly owned company whose survival was now very much in doubt and that getting an arbitration award in this matter was critical to its efforts to restructure its financing and save the company. Mr. Pepperman explained that Mr. Hilliard had walked into his office on the morning of August 31 to advise that he had simply "shut down" (apparently meaning that he could no longer function). Mr. Hilliard was now resting on medical leave. Although there was some possibility that, given some rest, he might be able to resume work on the case, that was not certain. Mr. Pepperman stated that, while there were, of course, other lawyers at the firm, arranging for one or

5

more of them to take over from Mr. Hilliard and get up to speed could not be accomplished by September 19. Mr. Pepperman did not say how much additional time was needed.

Naturally, I regret that Mr. Hilliard has apparently suffered some degree of exhaustion and that his firm, and perhaps Wormser, Kiely as well, may have to enlist other attorneys to take over his role as lead counsel for Lurgi in this matter. However, after carefully considering all the circumstance and equities, I have determined to replace the hearing dates listed in Order No. 2 (i.e., September 6-10, 12-16, and 19-20, 2005) with the following new dates (September 19-20, 26-30, and October 4-7, 2005). In making this discretionary decision, I have given particular weight to the following factors:

1. When parties enter into an arbitration agreement, they commit to participate in a process that is much more expeditious than litigation. Discovery is truncated and hearings are held sooner than they would be in court. The arbitration clause in this matter conveys a particular sense of urgency (if the dispute is not resolved through mediation, it "shall be immediately referred to and decided by binding arbitration") (Subcontract § 25.3, emphasis added). An inherent risk of thus agreeing to "fast track" dispute resolution is the possible need to quickly replace with other counsel any lawyer who becomes unavailable to work on the arbitration.

2. Lurgi has not provided any specific information (e.g., a doctor's evaluation or even an affidavit from Mr. Hilliard) concerning Mr. Hilliard's condition. Lurgi has not shown how long Mr. Hilliard will need to rest or when he may be able to resume full or partial work in this matter. There is no evidence before me that he will be unable to consult with other Lurgi counsel before and during the hearing, and perhaps even participate in the hearing in some fashion.

3. Lurgi is represented in this matter by two law firms that have a combined total of approximately 127 lawyers, 64 of whom are apparently partners. (Stark & Stark's

website lists 93 lawyers, of whom 46 are shareholders, and Wormser, Kiely's website lists 34 lawyers, of whom 18 are partners.)  There is no evidence before me that one or more of these lawyers cannot take over for Mr. Hilliard and get up to speed in the two and one-half weeks that remain before the hearing begins.  Moreover, the original hearing schedule (to which neither side objected) provided only three days off between the starting and ending dates of the hearing; under the new schedule, there will be eight days off between the starting and ending dates, including a block of five days after the first two days of hearing (in which Hake will be presenting its case).  These eight days will give any new counsel further time to become familiar with the evidence and consult with Messrs. Hilliard, Schrama, and Azzinari.

4.  Mr. Schrama, a senior associate who has been on the case from the beginning and was expected to examine some witnesses at the hearing, is still available to do so.  Mr. Azzinari, a law firm partner who has some arbitration and litigation experience, filed Lurgi's Answer and Counterclaim in this matter, and participated in the mediation, is, so far as the record shows, also available to participate in the hearing.

5.  Hake, and its parent Matrix, have repeatedly represented that they will suffer severe prejudice, perhaps liquidation, if the arbitration does not proceed promptly and result in an award by October 31, 2005.  Lurgi has not shown, nor even contended, that this prejudice is not real.

6.  Because of the commitments which I (the arbitrator selected by Hake and Lurgi) have to parties in other cases, I will be unable to issue the arbitration award by October 31, 2005, or even complete the hearing before January, 2006, unless the hearing commences by September 19, 2005.

In view of all these considerations, I am confident that the most equitable and appropriate course is to postpone the commencement of the hearing to September 19 and hold it on the dates set forth above.  It should be noted that in doing so, I am <u>granting</u>, not refusing, Lurgi's request for a postponement.  I am simply not postponing the hearing to

the date (thus far unspecified by Lurgi) beyond September 19 to which Lurgi would like to have the hearing postponed.

One final issue remains for resolution. Because it is usually not possible to fill with other cases hearing dates cancelled by parties shortly before a scheduled hearing, most ADR providers include in their contracts with clients a requirement that the parties pay the arbitration fee associated with any hearing date cancelled in less than a specified number of days prior to the hearing. The JAMS contract sent to counsel on March 21, 2005 sets that cancellation deadline, for hearings of two days or more, at 60 days prior to the hearing. The contract states,

> Hearing fees are non-refundable if time scheduled (or a portion thereof) is cancelled or continued within the cancellation period unless the Arbitrator's time can be rescheduled with another matter. Our cancellation policy exists because time reserved and later cancelled generally cannot be replaced. In all cases involving non-refundable time, the party requesting the continuance or cancellation is responsible for the fees of the parties.

The postponement described above results in the cancellation, well after the cancellation deadline, of ten hearings days (September 6-10 and 12-16, 2005). The question is which party should be charged for those cancelled hearing days.

Initially, I had thought it would be appropriate for the parties to split equally the charge for the first five days (since Hake had indicated on August 30 its agreement to a postponement until September 8 and perhaps September 12) and for Lurgi to bear the full charge for the second five days (which came about as a result of its August 31 postponement request). However, upon reflection, I have concluded that it is more appropriate for both parties to share equally the cancellation fee for all ten cancelled hearing days, subject, of course, to the right of the parties to seek in the final award a reallocation of all arbitrator fees and costs pursuant to JAMS Comprehensive Arbitration Rule 24(f). While the request for a postponement certainly originated with Lurgi, Mr. Preziosi, in the conference call of September 1, 2005, indicated that Hake was agreeable to a postponement until September 19, 2005. This agreement by Hake, which may have

8

reflected that Hake would also like some additional time to prepare for the hearing or that Hake realized that such a continuance would reduce the risk of vacatur and still allow for issuance of an award by October 31, 2005, effectively means that the postponement was agreed to by Hake so long as the hearing commenced by September 19. Under these circumstances, an initial equal division of the cancellation fee is warranted. Either party may request a reallocation of all arbitration fees, depending on the outcome of the arbitration.

Accordingly, for reasons set forth above, it is hereby **ORDERED as follows:**

1. The hearing dates set forth in Order No. 2 are cancelled. The arbitration hearing will instead be held on September 19–20, September 26-30, and October 4-7, 2005. (In the conference call of September 1, 2005, I indicated that the hearing would also be held on September 23, 2005. In reviewing the schedule, I have concluded that it is unduly wasteful to require that numerous out-of-town lawyers return to Washington for a single, isolated day of hearing and that time lost by dropping that one day can be made up by sitting a little later on the remaining eleven hearing days.)

2. Each hearing day will run from 9:15 am to 6:30 pm, with a 45-minute lunch recess and three 10-minute breaks at suitable points in the hearing. That schedule will yield 8 hours of hearing time per day or 88 hours over the eleven days of the hearing. That time will be divided equally between the parties. Each side will have 44 hours to use however it may desire for all of its examinations, cross-examinations, opening statements, and closing arguments.

3. Counsel shall make arrangements for the deposition of Lurgi's expert to be taken on a mutually convenient date. If they are unable to agree on such arrangements, they shall promptly request a conference call with me.

4. On September 15, 2005, each side shall file the materials identified in paragraphs 17 and 18 of Order No. 2.

5.  Any party seeking an award of interest, attorneys' fees, or costs shall submit, not later than the last day of the hearing, a calculation of such items and appropriate documentation to support the reasonableness of any fees and costs sought.

6.  Claimant will arrange for a court reporter to record the hearing and provide by October 11, 2005 transcripts of the testimony of all expert witnesses and such other witnesses as the arbitrator may designate.

7.  If the arbitrator concludes that post-hearing briefs are required, they shall be filed and served by October 11, 2005.

8.  The arbitrator will issue the award herein by October 31, 2005.

_____

**September 2, 2005**                                              **Arbitrator Curtis E. von Kann**