IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLIED ENVIRONMENTAL SOLUTIONS, INC.,
   formerly known as,
   Lurgi Lentjes North America, Inc.
   9730 Patuxent Woods Drive, Suite 100
   Columbia, Maryland 21046-1626,

      Petitioner,

   v.

FRANK W. HAKE, INC.,
   1500 Chester Pike
   Eddystone, Pennsylvania 19022,

      Respondent.

Civil Action No.

## DECLARATION OF WILLIS HEMBREE

I, Willis Hembree, declare as follows:

1.    I am over the eighteen years of age and am competent to give the testimony set forth in the Declaration.

2.    I have over twenty years' experience in construction claims consulting, with a particular emphasis in power plant construction. I have provided comprehensive consulting services with respect to dozens of power plant construction projects throughout the United States and around the world. I have also provided construction claim investigation, analysis, and/or expert witness services for petrochemical and process and wastewater treatment plants. I have made presentations on construction management and construction arbitration issues to the National Utility Contractors Association, the American Bar Association, and the Columbia University School of Engineering and Applied Science. My curriculum vitae is attached hereto as Exhibit A.

1

3. Since 1994, I have been a Principal at HDH Construction Consultants, Inc., an engineering and construction consulting firm that has consulted on construction claims for a wide variety of projects throughout the world.

4. I have substantial experience providing expert assistance to attorneys in construction disputes. In the past twenty years, I have participated as an expert witness in more than fifteen disputes involving litigation or arbitration proceedings.

5. I am submitting this Declaration at the request of counsel for Lurgi Lentjes North America, Inc. ("LLNA") in the captioned action to discuss the sequence of events leading up to the arbitration award in JAMS Arbitration Reference No. 1410003829 ("Arbitration").

### The Inception Of The Arbitration

6. I was retained by LLNA in March 2005 as an expert consultant for purposes of the Arbitration of contractual disputes between LLNA and Frank W. Hake, Inc. ("Hake") arising from a $28.5 million subcontract for the construction of a selective catalytic reactor system ("SCR") for a large power station owned by PSE&G.

7. During my work for LLNA, I principally worked with LLNA's lead counsel, Craig Hilliard.

8. When retained, LLNA indicated that the case would likely be set for hearing in early 2006. This was a technically complex construction project and the parties' disputes involved numerous issues. It was expected both parties would spend months preparing their cases for the Arbitration. Based on my twenty years of experience and my knowledge of the scope of the project and likely claims, I realized that a hearing in early 2006 would involve an aggressive schedule requiring substantial time and attention during 2005.

9. I was subsequently advised, following the initial meeting with the Arbitrator, Curtis von Kann, in April 2005, that the Arbitration was scheduled to commence on September 6, 2005. I was told that this expedited timetable was an accommodation to Hake, who had requested that the Arbitration be held before October 2005 due to financial concerns regarding its business. This more aggressive schedule required even a larger percentage of my time and attention in 2005.

10. In order to familiarize myself sufficiently with the project and the disputed issues to meet this accelerated timetable, I devoted approximately 70% of my professional time from April through mid-September 2005 to this project. I billed approximately 660 hours to the project during this time period. I was the Principal in Charge of the project and was personally involved in all aspects of the Arbitration.

11. Throughout the period from April through August 2005, I reviewed approximately 140 bankers boxes of documents and materials (approximately 700,000 pages of records) produced by Hake related to the project and the disputes between the parties. I submitted a lengthy expert report on July 15, 2005.

12. Due to time and manpower constraints within LLNA's team, my role in the litigation quickly evolved from consultant and testifying expert witness into an integral part of LLNA's litigation team. I was given the primary responsibility for reviewing and digesting the voluminous document productions for LLNA's counsel. I was further assigned the responsibility of preparing deposition packages for each deponent, including outlines for questions and selection of the documents that LLNA's attorneys used as exhibits during depositions throughout the discovery phase of the litigation. I worked closely with LLNA's counsel to prepare LLNA's exhibit list and was generally involved with most or all areas of the hearing preparation. As the

person with the most substantive knowledge of the issues working on LLNA's litigation team, I expected to sit at counsel table every day of the hearing, serve as a consultant through all phases of the hearing, testify as a rebuttal expert witness, and generally assist counsel with cross-examination of all fact and expert witnesses during the Arbitration.

## My Mother's Health Crisis

13.     On July 27, 2005, my elderly mother suffered serious medical problems that required me to visit her at Riverside Methodist Hospital in Columbus, Ohio. In the course of being treated for an ovarian tumor, my mother underwent a complete hysterectomy in early August. Complications arising from that surgery required her to undergo a significant lung operation one week later. My mother is a widow, and as her closest relative capable of making medical decisions on her behalf, these medical issues required my attendance at the hospital during the procedures and during periods of her convalescence. My mother's ill health forced the parties to reschedule my deposition from late August to early September.

14.     On or about September 1, 2005, I was advised that the Craig Hilliard, the lead trial counsel with whom I had worked very closely during the past several months on this case, was forced to withdraw from the case. Up to that point, I had neither met nor spoken with Mr. Hilliard's replacement and LLNA's new lead trial counsel, Kevin Hart.

15.     On or about September 6, I met Mr. Hart for approximately four and a half hours. This was a general introductory session and overview of the case from my perspective. After that initial meeting, I spoke with Mr. Hart two or three more times for 15-30 minutes each. Mr. Hart was trying his best to familiarize himself with the case and prepare for the hearing, now set to commence on September 19, 2005.

### My Own Health Crisis

16. On September 14, 2005, I had a cardiac episode that required my immediate hospitalization. I was diagnosed with a possible vasospasm and prescribed nitroglycerin. At that point, I did not know the severity of my condition. I was referred to a cardiologist for further tests. On September 16, 2005, my cardiologist performed a stress test. After this test, my cardiologist directed me to avoid any physical or emotional stress (including work) for two weeks. I was scheduled for a cardiac catheterization procedure to further investigate the seriousness of my heart condition. LLNA was advised of my health status and the uncertainty of my capability to serve as expected at the Arbitration hearing.

17. I was advised that the Arbitrator required proof of my medical status. My partner at HDH Construction Consultants, Inc., Steve Dellers, provided LLNA's counsel with frequent status reports on my health situation.

18. Notwithstanding these health reports from my partner, during this period, I became aware that I had been placed under surveillance and was being followed from my home during my brief trips, such as taking my kids to school. Indeed, during one such episode, the vehicle that was trailing me forced my vehicle off the road. My wife reported this matter to an Anne Arundel County Police Department representative, who attempted to trace the vehicle. We assumed it was a private investigator. Given the state of my workload (or lack thereof that time), the most likely entity that could have had me followed and harassed like this would have been Hake or its counsel.

### My Brother's Health Crisis And Death

19. In addition to my own health issues, and my mother's ill health, my younger brother — who was only 36 years old — suffered a massive heart attack on September 25, 2005.

I was given medical clearance to travel to Ohio to visit my brother in hospital. The heart attack deprived his brain of oxygen and my brother was placed on life support. The doctors pronounced that he was in a permanently unconscious state on September 28, 2005, and he ultimately died as a result of his massive heart attack on October 1, 2005. My brother's health crises required my presence in Ohio until October 3. I had to return to Maryland for my own heart catheterization procedure on October 5.

20. Needless to say, the unexpected and tragic loss of my younger brother to a heart attack while I was experiencing my own heart problems only exacerbated by own problems and my own concerns for my health situation.

21. As a result of the various family crises in September and October 2005, further complicated by my own health concerns and the need for my doctors to understand my own health situation and heart condition, I was unavailable to serve as LLNA's expert witness and litigation consultant during the Arbitration hearing.

**My Inability To Participate In The Arbitration And Its Prejudice To LLNA**

22. At all times, I advised Steve Dellers of my health status and the status of my family members who were suffering similar problems. Dellers, in turn, advised LLNA's counsel. I was advised that these issues were communicated to the Arbitrator prior to the commencement of the Arbitration hearing. The Arbitration went forward without my involvement. Despite receiving this information, the Arbitration was neither adjourned nor continued to a date when I could participate.

23. As the person with the most substantive knowledge of the issues working on LLNA's litigation team, I believe that my inability to participate in the Arbitration severely impacted and prejudiced LLNA. Neither Kevin Hart nor Steve Dellers had the institutional

knowledge of the case that Craig Hilliard and I had developed in the five months that we had prepared the case. I understand that Mr. Dellers was unable to attend the daily arbitration hearings to assist counsel as it was planned and contemplated that I would do.

24.   As a consequence of my health condition, counsel for LLNA was deprived of my months of work — on an especially accelerated basis — to prepare for the arbitration hearings. And, counsel was deprived of my presence and assistance during the hearings themselves, including my unique knowledge of the thousands of pages of documents existing in this case and their relevance to the claims and defenses of the parties.

Pursuant to 28 U.S.C. § 1746, I declare under the penalties of perjury that the foregoing declaration is true and correct.

Executed on: February 10, 2006

_____
Willis Hembree

# EXHIBIT A

Case 1:06-cv-00527-RMU    Document 1-9    Filed 03/21/2006    Page 8 of 11



# Willis D. Hembree
417 Fernwood Drive, Severna Park, MD 21146
[410] 384-7796

---

**EMPLOYMENT**
[Continued]

| | |
|---|---|
| 1987 – 1989 | Project Engineer |
| 1986 – 1987 | ***H. R. Gray & Associates, Inc.*** <br> ***Columbus, OH*** <br><br> Construction Claims Consulting <br><br> Claims Specialist |
| 1983 – 1986 | ***Reliance Insurance Company*** <br> ***Philadelphia, PA*** <br><br> Contract Surety Bond Underwriter |
| 1982 – 1983 | ***Central Maine Power Company*** <br> ***Lewiston, ME*** <br><br> Division Operations Assistant |

## RELEVANT POWER PLANT EXPERIENCE:
Mr. Hembree has relevant power plant experience on the following projects:

- Penn State Power Plant Project – USA
- St. Nicholas Cogeneration Project – USA
- Rocky Mountain Pumped Storage Project – USA
- Onondaga Waste-to-Energy Project – USA
- Fayettville – BCH Energy Project – USA
- Brayton Point Station Unit #3 Precipitator Rebuild – USA
- Southwest Brooklyn Incinerator – Pollution Control Retrofit – USA
- Cincinnati Gas & Elec. – Cooling Tower Project - USA



# Willis D. Hembree
417 Fernwood Drive, Severna Park, MD 21146
[410] 384-7796

---

**RELEVANT POWER PLANT EXPERIENCE [Continued]**

- Alabama Power –Unit #3 Precipitator Rebuild – USA
- Everett Cogeneration Project – USA
- Colbert Fossil Plant Unit #1 – Steam Turbine Uprate Outage – USA
- WAFRA Field Power Generating Project – Kuwait
- Termovalle Combined Cycle Plant – Columbia
- Tenaska Cleburne Power Project – USA
- Stone Container Corp. Recovery Boiler Precipitator – USA
- Godavari Power Project – India
- Stelco Precipitator Retrofit – USA
- Georgia Pacific/Bowen Unit #2 Precipitator Rebuild – USA
- PG&E – Paul Sweet Substation – USA
- Nantong Cogeneration Plant – China
- CFE – Huinala Project – Mexico
- Boise Cascade Recovery Boiler – USA
- Penuelas Power Project – Puerto Rico
- Canal Project – SCR Retrofit – USA
- Dade County Project – Baghouse Project –USA
- Wisconsin Electric Power – Presque Isle – Baghouse Project – USA
- Millennium Power Project – USA
- Saltend Power Project – USA
- Montour Steam Electric Station ESP Rebuild – USA
- ANP Hays Project – USA
- Mount Storm Station Units 1 & 2 – Pollution Control Equipment - USA
- Hay Road Power Project - USA
- Ceredo Generating Station – USA
- International Paper – Air Pollution Control Project – USA
- NYPA – "In City" Turbine Project – USA
- AES Granite Ridge Project – USA
- Ilijan Power Project – Philippines
- Merom Generating Station SCR Project - USA



# Willis D. Hembree
417 Fernwood Drive, Severna Park, MD  21146
[410] 384-7796

---

| | |
|---|---|
| **RELEVANT POWER PLANT EXPERIENCE [Continued]** | • Fore River Power Project – USA<br>• Mystic Power Project – USA<br>• Sept-Iles – New Precipitator - Canada<br>• Panama City Precipitator Relocation – USA<br>• TECO – Big Bend Station Unit 2 Precipitator Rebuild – USA<br>• Wolf Hollow Power Project – USA<br>• Covert Power Plant – USA<br>• Monroe Unit #3 Outage – Steam Turbine Uprate -USA<br>• Monroe Unit #2 Outage – Steam Turbine Uprate -USA |
| **SPEAKING ENGAGEMENTS:** | |
| Presenter | Columbia University School of Engineering & Applied Science<br>*"Construction Management"* |
| Co-Presenter | American Bar Association<br>*Forum on the Construction Industry*<br>*"Changing Trends in Project Delivery*<br>*– The Move to Design/Build"*<br>*– "Strategies for Handling the Design/Build Claim"* - April 1995 |
| Presenter | National Utility Contractors Association<br>*"Mediation, Arbitration and Litigation: The Advantages and Disadvantages of Each"* - March 1996 |
| Co-Presenter | Primavera Users Conference<br>*"Effective Methods for Claim Preparation & Analysis"* – 1997 |
| Presenter | *Client In-House Training Seminars – 1994-2005* |