## SUBCONTRACT AGREEMENT

THIS AGREEMENT is made this 14th day of May, 2003, by and between Lurgi Lentjes North America, Inc., a corporation under the laws of the State of Maryland with an address at 6724 Alexander Bell Drive, Columbia, Maryland 21046 ("Contractor"), and Frank W. Hake, Inc. a corporation organized under the laws of the Commonwealth of Pennsylvania with an address of 1500 Chester Pike, Eddystone, Pennsylvania 19022-1396 ("Subcontractor") to perform the following Work on the following Project:

**1.0   Definitions**

| | |
|---|---|
| Change Order: | A writing evidencing a mutually agreed-upon change to this Subcontract, as more fully described in Section 7.1. |
| Construction Manager: | Contractor's construction manager as described in Section 17.3, which upon Notice by Contractor shall be Lurgi Lentjes North America, Inc. |
| Contractor: | Lurgi Lentjes North America, Inc. its successors and permitted assigns. |
| Contract Price: | The sum to be paid by Contractor to Subcontractor for the Work, as may be modified in accordance with the terms of this Subcontract. |
| Codes: | Applicable codes, specifications and standards applicable to the Work as described in Section 16.1 of this Subcontract. |
| Final Completion: | Full performance by Subcontractor of all obligations under the Subcontract. |
| Laws: | Applicable laws, ordinances, rules and regulations as described in Section 1.1 of this subcontract. |
| Milestones: | The milestones as listed in Attachment C that Subcontractor must achieve as part of its Work Schedule. |
| Notice: | Written notice from one party to the other. |
| Owner: | PSEG Fossil, L.L.C., its successors and permitted assigns. |
| Prime Contract: | Contractor's agreement with Owner for the Project. |
| Project: | Mercer Generating Station, Units 1 and 2, SCR installation. |
| Project Schedule: | Contractor's overall schedule for the entire Project. |
| Scope Documents: | The documents setting forth Subcontractor's scope of work, including this Subcontract and any drawings, specifications, technical documents, and technical references attached & incorporated by reference. |
| SCR: | Selective Catalytic Reactor System. |

23.5 General Liability Insurance. Comprehensive general liability shall be an occurrence type policy and protect Subcontractor and the additional insured's against all claims arising from bodily injury, sickness, disease, or death of any person or damage to property of Contractor, Owner or others arising out of any act or omission of Subcontractor, its agents, employees of its subcontractors. The liability limits shall not be less than: bodily injury - $1,000,000 each person, $2,000,000 aggregate; property damage - $1,000,000 each occurrence and $2,000,000 aggregate.

23.6 Umbrella Liability Coverage. Umbrella liability policy shall protect Subcontractor and the additional insured listed in Section 23.2 against all claims in excess of the limits provided under the employers' liability, comprehensive automobile liability, and comprehensive general liability policies. The liability limits of the umbrella policy shall not be less than $15,000,000. The umbrella liability policy shall be an occurrence type policy.

23.7 Waiver of Subrogation. All of the insurance policies required under this Subcontract shall state that Subcontractor's insurance is primary, and that Subcontractor waives all rights of subrogation against Contractor and any other additional insured's listed in Section 23.2.

## 24.0 BONDS

24.1 Subcontractor shall provide performance and payment bonds for one hundred percent (100%) of the Contract Price. Subcontractor shall provide the requested bonds in a form and by a surety satisfactory to Contractor. Subcontractor's failure to promptly provide the requested bonds shall be a material breach of this Subcontract. Final bonding costs will be based on the final subcontract value upon completion. All additional bonding costs in excess of the original Subcontract Price will be to the account of Contractor.

## 25.0 ARBITRATION

25.1 Initial Dispute Resolution. The parties shall endeavor to settle, first through direct discussions, all claims, disputes and matters in question arising out of, or relating to, this Subcontract or the breach thereof (a "Dispute"). In the event of any such Dispute, the aggrieved party shall issue a Notice of Dispute to the other party, and the parties shall attempt to resolve such Dispute as follows:

25.1.1 By consultation between Contractor's Construction Manager and Subcontractor's site representative to be completed within two (2) business days after receipt of the Notice of Dispute.

25.1.2 If no resolution, then by consultation between Contractor's Project Manager and Subcontractor's Project Manager to be completed within two (2) business days thereafter.

25.1.3 If no resolution, then by consultation between Contractor's Vice President of Operations (or other officer) and Subcontractor's President to be completed within five (5) business days thereafter.

25.1.4 Any Dispute that is not resolved by the above procedures shall be initially decided by Contractor to minimize the impact on the Project. If Notice of Subcontractor's objection to the decision is not received by Contractor within ten (10) days of Contractor's decision, or if Subcontractor has not



reserved such claim in any periodic release or waiver executed by it, Subcontractor waives any and all rights to adjudicate the decision in any forum. If Subcontractor timely serves Notice of its objection to any such decision and exercises its rights under the provisions described below, pending any mediation, arbitration or other process, as applicable, Subcontractor agrees to proceed in accordance with all such decisions of Contractor.

25.1.5 In the event that the Dispute involves the cost of extra work or a Change Order and a claimed amount of two hundred thousand US dollars ($200,000) or greater, a mutually acceptable fair cost estimator shall be employed to evaluate the claim, the cost of which shall be shared by the parties.

25.2 Agreement to Mediate. The parties shall endeavor to settle all Disputes, which cannot be settled through direct discussions by mediation before a mediator associated with the organization J.A.M.S./Endispute (the "Mediator"). The parties shall submit the Dispute to the Mediator within ten (10) days of a party's written request for same, but in any event within the time limits for arbitration stipulated in this Subcontract. The time limits for any subsequent arbitration will be extended for the duration of the mediation process plus ten (10) days or as otherwise provided in this Subcontract. The mediation shall be conducted over a period of not more than two (2) days, exclusive of the period required to submit documents and briefs, if any. The parties shall not be obligated to mediate a Dispute with respect to a claim that has been waived by the making or acceptance of final payment or to claims exempted below.

25.3 Agreement to Arbitrate If Mediation Unsuccessful. If mediation of a Dispute does not result in a mutually agreeable resolution, the Dispute shall be immediately referred to and decided by binding arbitration before an arbitrator associated with the organization J.A.M.S./Endispute (the "Arbitrator"). If the parties' mutually agree, the Mediator shall assume the role of Arbitrator. Arbitration shall be conducted in accordance with the rules promulgated by J.A.M.S./Endispute, except to the extent the parties shall mutually agree upon any modification.

25.6 Notice of Demand. Notice of the demand for mediation or arbitration shall be filed in writing with the other party to this Agreement and with J.A.M.S./Endispute, Washington, D. C. The demand for mediation or arbitration, as applicable, shall be made as set forth in above, but in no event shall it be made when institution of legal or equitable proceedings based on such claim, dispute or other matter in question would be barred by the applicable statute of limitations, whichever shall first occur. The location of the mediation and arbitration proceedings shall be Baltimore, Maryland.

25.7 Award. The award rendered by the Arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

25.8 Work Continuation and Payment. Unless otherwise agreed in writing, Subcontractor shall carry on the Work and maintain the Work Schedule pending Dispute resolution. If Subcontractor is continuing to perform, Contractor shall continue to make payments in accordance with the terms of this Subcontract.

25.9 No Limit of Rights or Remedies. Nothing in this Section shall limit any rights or remedies not expressly waived by Subcontractor that Subcontractor may have under lien laws or payment bonds.

25.10 Fees. The parties each shall bear their own costs, charges and expenses, including attorney's fees, expert fees, cost of personnel assistance, filing fees, deposition and photocopying expenses ("Dispute Costs") incurred in the preparation for and conduct of any Dispute resolution, unless the Arbitrator rules otherwise. Contractor and Subcontractor shall share the charges imposed by the Arbitrator or J.A.M.S./Endispute equally, unless the Arbitrator rules otherwise. Notwithstanding the foregoing, each party shall bear its own Dispute Costs relating to any mediation and shall share the mediation charges imposed by the Mediator or J.A.M.S./Endispute equally.

## 26.0 LIMITATIONS OF LIABILITY

26.1 Exclusion of Consequential Damages. Except for liquidated damages which may be permitted hereunder, and notwithstanding any other provision of this Subcontract, neither party shall have any liability whatsoever to the other, the Owner or their respective insurers for damages arising from loss of production, loss of use, loss of profit, business interruption, commercial disadvantage, or any indirect, special, incidental, punitive or consequential loss, injuries or damages, whether based on contract, warranty, tort (including negligence of any nature, whether sole or concurrent), strict liability or otherwise.

## 27.0 NOTICES

27.1 Notices to Contractor. Subcontractor shall address all Notices, correspondence and communications to Contractor, addressed as follows:

> Lurgi Lentjes North America, Inc.
> 6724 Alexander Bell Drive, 2nd Floor
> Columbia, Maryland 21046 USA
>
> Attn.: Mr. David Losaw

With a copy simultaneously to be delivered to Contractor's on-site representative.

27.2 Notices to Subcontractor. Contractor shall address all Notices, correspondence and communications to Subcontractor as follows:

27.3 Change of Address. Each party may change its address by Notice to the other party.

## 28.0 GENERAL

28.1 Accumulation of Remedies. The rights and remedies of Contractor as specified in the Subcontract are in addition to all other rights and remedies Contractor may have at law or in equity unless otherwise specified.

28.2 Independent Contractor. Subcontractor's status shall be that of independent contractor, and the Subcontractor, its employees, agents, or subcontractors shall not, for any reason or purpose, be deemed to be a subcontractor, agent, partner, or employee of the Contractor. This Agreement creates no rights or benefits between the Contractor and any person or entity other than the Subcontractor.

28.3 Law and Effect. This Subcontract shall be construed and enforced in accordance with the laws of the state of Maryland, exclusive of its choice of laws rules and the

parties agree that in any dispute jurisdiction and venue shall be exclusively in Maryland, and Subcontractor expressly consents to the jurisdiction of any county, state or federal court sitting in Indiana.

28.4 **Severability and Waiver.** The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party to insist upon the performance of any of the terms or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, condition or right in the future.

28.5 **Reference to Days.** All references to "days" in this Subcontract shall mean calendar days, unless otherwise stated. Where used in this Subcontract, "business days" shall mean days which commercial banks are open for business in New York, New York.

28.6 **Entire Agreement.** This Subcontract is solely for the benefit of the signatories hereto and with the documents attached and incorporated by reference, represents the entire and integrated agreement between the parties and supersedes all prior negotiations, representations, or agreements, either written or oral.

28.7 **Effectiveness.** This Subcontract shall become effective only upon execution by both parties and Contractor's obtaining the approval in writing of Owner and Contractor's surety on the Project.

IN WITNESS WHEREOF, the parties and signatories to this Agreement certify that this Agreement was signed on (date) and that it represents the Agreement, final, and unambiguous between the parties.

LURGI LENTJES NORTH AMERICA, INC.

By: _Robert W Tisone_
Name: ROBERT L. TISONE
Title: President & COO
Date: 5/19/03

By: _[signature]_
Name: Joseph J. Nestel
Title: EVP
Date: 5/14/03