1229

1        JAMS

2     Arbitration Proceeding

3   - - - - - - - - - - - --

4   FRANK W. HAKE, INC.,      )

5      and                    ) Reference No.

6   LURGI LENTJES NORTH        ) 145000024

7   AMERICA, INC.              )

8   - - - - - - - - - - - --

9

10            ARBITRATION VOLUME 5

11

12            Washington, D.C.

13            Wednesday, September 28, 2005

14

15        The arbitration convened on Wednesday,

16  September 28, 2005, commencing at 9:38 a.m., at the

17  offices of JAMS, 555 13th Street, Northwest, Suite

18  400 West, Washington, D.C. 20004, before Cynthia R.

19  Simmons, Registered Merit Reporter, Certified

20  Realtime Reporter, and Notary Public.

21

22  BEFORE:

23  HON. CURTIS EMERY von KANN

24       Mediator/Arbitrator - JAMS

25

1358

1 durations, possibly changing the activity
2 descriptions, responsibilities, designating
3 certain scope to be Hake's, when we thought it
4 was Lurgi's, so my position was to try to put
5 an end to that, so we would know exactly what
6 our scope was in-house, and if the client
7 wanted to make changes, then we would discuss
8 them mutually and agree on them and then make
9 changes.
10   Q.   Did Mark Pavloski tell you that he
11 promised, on behalf of Lurgi, he would not make
12 any further unilateral changes to the
13 construction schedule?
14   A.   Yes, sir.
15       ARBITER von KANN: Mr. Preziosi, I'm
16 going to stop you now. I'm sorry, but I've got
17 some stuff I need to go over with you all
18 before 1:00. I think it's going to take us a
19 little while longer, and I think we're just
20 going to have to carry Mr. Patton over to 1:30.
21 I think this is important on this scheduling
22 stuff, and I don't want to rush it, so now, if
23 you need to take Mr. Howard, to get him in and
24 out and then we return to Mr. Patton, that's
25 okay too.

1359

1       MR. HART: I have no objection.
2       MR. PREZIOSI: Yes, Your Honor. Thank
3 you for that accommodation. Mr. Patton, you
4 can go take lunch now. Thank you.
5       ARBITER von KANN: All right. I need
6 to speak to you all for a few minutes about
7 scheduling. I would like this on the record.
8 Probably should all take some notes because
9 there's some stuff that I want, I need for you
10 to think about over the lunch hour, perhaps. I
11 will tell you, by the way, I'm still not sure I
12 understand fully the rationale for the positive
13 float business, and you may want to have
14 Mr. Patton amplify that after he comes back.
15 I'm still struggling a little bit to see -- or
16 you may want to deal with it with somebody
17 else.
18       MR. PREZIOSI: Maybe if I can just
19 make the comment, Your Honor, the subcontract
20 provision says the schedule with the float plus
21 the provision of those extra shifts, to try to
22 make it happen.
23       ARBITER von KANN: I understand that.
24       MR. PREZIOSI: That's what it was.
25       ARBITER von KANN: But I'm still

1360

1 trying to understand. One tries to construe a
2 contract so as to achieve its central
3 objectives. I'm trying to understand what was
4 the central objective of Lurgi in asking for
5 that arrangement, and I am still having a
6 little difficulty seeing how it, how, what
7 exactly it achieves, and so this may come
8 through --
9       MR. HART: I was just going to say, we
10 have Mr. Pavloski and probably Mr. Ojard.
11       ARBITER von KANN: Probably by the end
12 of the hearing, I'll have gotten it, but I
13 still don't fully get it. I do want to talk to
14 you for a minute about scheduling because I've
15 been thinking a good deal about this, and I
16 think we are reaching a point where everybody
17 needs to, in order to do some planning, kind of
18 needs to know what we're, how we're going to
19 bring this hearing to a close and how it's
20 going to work.
21       And there are a number of different
22 considerations that impact scheduling, at least
23 five significant ones from my point of view.
24 One is the issue of Hake's business interest,
25 its financial restructuring, apparently being

1361

1 partly premised on having an award issued by
2 October 31. Second, my schedule, which is
3 heavily booked in November and December, so I
4 have very little leeway really much after
5 October 31.
6       A third factor is I want to be sure to
7 give each side adequate time to present their
8 evidence. I said at the beginning that I would
9 give each side 44 hours, which translates to
10 2,640 minutes. As of yesterday, the close of
11 yesterday's hearing, Hake was at 1,270 minutes
12 and Lurgi was at 320, I think, and that's
13 because I have not had a chance to double-check
14 my calculations, but I'd ask each of you, at
15 some point, to look at it.
16       MR. HART: You had said --
17       ARBITER von KANN: They're on the
18 sheet, and I want to make sure I didn't make a
19 mistake in math, but that's where I think you
20 are about.
21       MR. HART: You had told us yesterday
22 1,270 for Hake and 310 for Lurgi but -- that's
23 what you told us at the end of the day.
24       ARBITER von KANN: Well, if I said
25 that, I was mistaken. I've got 320. You

34 (Pages 1358 to 1361)

1362

1 check.
2     MR. HART: That's fine.
3     ARBITER von KANN: I think that's
4 where you are. Another consideration,
5 obviously, here is that Mr. Hart, who is new to
6 the game, somewhat new to the game, I think is
7 obviously doing a good job and shows he's a
8 quick study in terms of filling in for
9 Mr. Hilliard. Nevertheless, I would like,
10 wherever possible, to build in a few days off
11 during the course of the hearing, so he will
12 have a chance to consult with his co-counsel
13 and witnesses, and as, of course, can Hake
14 counsel.
15     And then finally, there's a fifth
16 factor, which is sort of this latest wrinkle,
17 the availability of Lurgi's expert, and
18 frankly, we don't know at the moment what will
19 happen with Mr. Hembree, and I don't think
20 we're going to know until October 5
21 definitively. But as I thought about that some
22 more, I really don't think that's the key
23 question in this regard. Rather, I think the
24 key question is, is there any good reason why
25 others in Mr. Hembree's firm cannot take over

1363

1 for him if he is unavailable to participate
2 after October 5?
3     Mr. Hart indicated yesterday he
4 thought that might be possible. I would assume
5 it may be possible. Indeed, if we notify those
6 folks now that, guess what, you should be
7 preparing a pinch hitter or a relief pitcher or
8 whatever, they really have a full week from now
9 through October 5 to review materials, review
10 transcripts, depositions, and perhaps even to
11 consult with Mr. Hembree, who so far as I know,
12 although he's not supposed to be doing anything
13 terribly stressful, I'm not -- I have no
14 evidence that he can't speak to his colleagues
15 and help them understand what his thinking was
16 about different issues.
17     So there's sort of a week here of
18 possible preparation time for a substitute that
19 I, frankly, don't want us to lose by just
20 sitting around and waiting a week to see what
21 we find out about Mr. Hembree. So unless I
22 receive by Friday of this week an affidavit
23 from the managing partner or the head of
24 Mr. Hembree's firm explaining in detail why no
25 one else there can take over for him if needed,

1364

1 then I'm going to assume that they can, and
2 that either Mr. Hembree or one of his
3 colleagues will be available to participate in
4 the arbitration hearing as of October 6th. It
5 may turn out to be Mr. Hembree. It may turn
6 out to be one of his colleagues.
7     With that in mind, I plan to put out
8 an order that would set forth the following
9 schedule for completing the hearing, and I want
10 to tell you all what it is and give you the
11 lunch hour to consider it. And if somebody
12 comes back after lunch and says, I've got a
13 very serious problem with that schedule, I'll
14 hear it, and we'll see what we can do. But
15 this is what I am rather strongly inclined to
16 do, and I think it takes account of all of the
17 factors that I mentioned in a reasonable way.
18     And the first, just as a little
19 footnote, I would, I have received transcripts
20 of the first two days of hearings, but nothing
21 since then, and I'm not precisely sure what
22 schedule you all are on, but I gather that
23 you're getting transcripts as the hearing goes
24 along, and it would be helpful to me not to
25 wait until the end and have 5,000 pages dumped

1365

1 on me, but to be receiving it, you know,
2 periodically every few days, if that's
3 possible.
4     MR. PREZIOSI: I mean, I've seen the
5 deliveries of the first two days of
6 transcripts. However, it's quite possible that
7 transcripts from subsequent days were
8 electronically delivered to Mr. Stio. I just
9 haven't coordinated with him on that, but I
10 will.
11     ARBITER von KANN: Why don't you
12 check? And I'd like to sort of keep the
13 production of transcripts, the delivery kind of
14 going, you know, couple of days behind the
15 hearing, so when we get to the end, we're
16 pretty well caught up.
17     Now, here's the schedule that I think
18 can work. Obviously, today, we are completing
19 these four additional witnesses, plus
20 Mr. Howard. I think we can do that. Tomorrow,
21 I understand we will have Mr. Wachter's direct
22 exam, and I'm assuming that's a full day. It
23 looks like on Friday the 30th, we can begin
24 with the Lurgi witnesses. Then you're going to
25 have three days off, October 1, 2, and 3, where

**1366**

1  counsel can confer with witnesses and one
2  another and whatever they need to do.
3       We'll resume the hearing on October 4
4  with another second day for Lurgi witnesses and
5  perhaps October 5, if needed. I don't know.
6  Mr. Hart thought he might finish Tuesday, the
7  4th, might need the 5th. We'll see. Then I
8  propose to give you all the day off on October
9  6th, so that Mr. Hart can confer with his
10 expert, whichever it is at that point,
11 Mr. Hembree or his colleague, and then we would
12 come back on October 7th for the cross of
13 Mr. Wachter, probably attended by the Lurgi
14 expert, I'm guessing.
15      Then, again, you would have three days
16 off October 8, 9, and 10. Mr. Hart can confer
17 further with his expert, as can Mr. Preziosi.
18 October 11 would be the deposition, Hake could
19 take the deposition of the Lurgi expert.
20 October 12 would be, again, a day off. Both
21 sides could review the transcript of that
22 deposition, could prepare for the testimony of
23 the Lurgi expert.
24      And then we would come back here
25 October 13 and 14 and complete the hearing by

**1367**

1  having the direct and cross of Lurgi's expert.
2  I would then expect both sides to submit any
3  posthearing briefs that they wanted to on
4  October 20, by noon, because I'm going out of
5  town that afternoon, and I want to take them
6  with me to review them on the plane and during
7  the time that I have.
8       Also, on that date, I need to get,
9  since I believe both sides intend to seek
10 attorneys' fees and costs, I would need to have
11 a submission from each of you on your bill of
12 costs and attorneys fees with supporting
13 documentation, time records and whatever,
14 affidavits as to reasonable hourly rates, if
15 you're going to go that route. Now, I would
16 strongly suggest that you try to see if you can
17 stipulate that each other's bills are
18 reasonable.
19      My hunch is that both sides have
20 pretty comparable levels of attorneys fees and
21 costs in the case, that both sides are billing
22 at pretty comparable rates, and that
23 oftentimes, you can stipulate, Hake's counsel
24 would say this is about what our tab is at,
25 Mr. Hart would say the same, and both sides

**1368**

1  would say, okay, I agree if you prevail, that's
2  a reasonable figure, and if you prevail, that's
3  a reasonable -- and then you obviate having to
4  put in time records and billing sheets and
5  affidavits and all that stuff. It's often done
6  this way.
7       If you can't agree, fine, then you've
8  got to put in all the documentation and prove
9  it, and it's going to have to be done quite
10 quickly after the hearing. So October 20 at
11 noon would be posthearing briefs and either a
12 stipulation as to attorneys' fees, or if you
13 need to, the supporting documents, and then on
14 October 4, by 5:00 p.m., close of business, any
15 reply briefs that anybody wanted to submit, and
16 a week later, October 31, I will produce an
17 award. Now, that is about, to be perfectly
18 honest, is going to make it tight for me for
19 the award, but I think I can do it.
20      If we push the schedule any farther
21 than that, I will not have an award out by
22 October 31. That is just not going to be
23 possible. And I start a very complicated
24 international arbitration on November 1st,
25 which involves a lot of stuff, so I am trying

**1369**

1  to find a way to get out an award by October 31
2  and give people a reasonable amount of time to
3  complete their evidence, give you all some time
4  to confer with your witnesses, particularly
5  Mr. Hembree or his colleague, whoever it is.
6       I think this schedule does that. I
7  think it's fair to both sides, so I'm fairly
8  strongly inclined to go this route, but I
9  wanted to give you all a heads-up and a chance
10 to look it over, over the lunch hour, and if
11 somebody feels there's something in here that's
12 grievously wrong, I'll hear you this afternoon
13 and tweak it, if I need to. Otherwise, I'll
14 probably get out an order at the end of the
15 day, and that'll be the schedule for getting us
16 to the end, across the end zone.
17      So look it over, talk among
18 yourselves. If you see problems with it, let
19 me know. I don't have a lot of flexibility,
20 frankly, around these dates, but I have a tiny
21 bit here and there perhaps. I am actually
22 having to move a couple of other things around
23 to accommodate it. I am not available October
24 11 and 12 because I've got hearings in other
25 cases then, but it actually kind of works out,

1422

1 Mr. Dellers, and I have requested him, you
2 know, basically, my guess is plan A would be
3 hopefully Mr. Hembree is back in action. Plan
4 B is I've asked Mr. Dellers, which I think was
5 a directive Your Honor gave me, to advise me,
6 number one, is there someone in the firm that
7 can step in for Mr. Hembree and, if so, to
8 identify who it is. And then, number two, to
9 provide us with a date by which that person
10 says they will be prepared to go forward.
11     And I spoke to him, I told him I would
12 probably speak to him tonight after we're done,
13 and I would anticipate, Your Honor, that we
14 will have, prior to, by Friday, as you
15 directed, we'll have an affidavit. I do not
16 know what it will say or who is saying it, but
17 I assume that in that affidavit will be set
18 forth whoever is, it will identify specifically
19 who the proposed substitute would be and when
20 that person says that he is prepared to go
21 forward.
22     And I'll provide that to the Court. I
23 can't say by 9:00, but my understanding is,
24 Your Honor, that Mr. Azzinari will be working
25 with somebody from HDH so that we have an

1423

1 affidavit that we can present to the Court
2 sometime on Friday.
3     ARBITER von KANN: Do you know, what
4 is it -- HDH are the initials?
5     MR. HART: Hang on.
6     MR. PREZIOSI: Yes.
7     MR. HART: Yes, HDH, they're in
8 Annapolis, Maryland.
9     ARBITER von KANN: And that is a, is
10 that a firm of consulting engineers or what
11 sort of --
12     MR. HART: Well, they say HDH
13 Construction Consultants, Inc. That's the
14 term. I'm looking at their fax.
15     ARBITER von KANN: Construction
16 Consultants, Inc., okay. And do you know
17 anything about how big an operation they are,
18 how many professionals there are, do they have
19 other offices besides Annapolis?
20     MR. HART: It doesn't list any other
21 offices, and it's my understanding they only
22 have the one. And, Judge, the only other thing
23 I can tell you is my understanding, is there
24 are three principals, Hembree, Dellers, and
25 some other person whose last name begins in H.

1424

1 So my understanding is there are three
2 principals in the firm. I do not know how many
3 employees they have, but my understanding are
4 there are three principals, and that's H, D,
5 and H.
6     ARBITER von KANN: All right. Mr.
7 Preziosi, do you have any thoughts about any of
8 this?
9     MR. PREZIOSI: Your Honor, your
10 directive was that certification would be
11 provided by Friday. I would say we would just
12 abide what we see on Friday at this time.
13     MR. HART: Your Honor, I guess, just
14 further point, I guess I would say my sense is
15 this is -- I appreciate the concerns Your Honor
16 has expressed.
17     ARBITER von KANN: By the way, I left
18 out one concern which I wanted to, which I
19 meant to say, and that is that I realize that
20 the schedule that I indicated knocks the hell
21 out of your vacation, and, I'm sorry, but I
22 think under the circumstances, I just can't
23 give that the priority weight. I would hope
24 that if we can get all this wrapped up, Florida
25 is lovely in November, you can tell your wife.

1425

1     But I did overlook that, and I haven't
2 forgotten it, and all things being equal, I try
3 very hard not to mess up someone's life, and I
4 would normally say, you have a vacation, take
5 it. But frankly, it's a luxury I think we
6 can't afford in this case, but I did at least
7 want to say I hadn't forgotten that, and I'm
8 sorry.
9     MR. HART: The only comment I was
10 going to make is, again, Your Honor has set
11 forward the various considerations you're
12 weighing. I guess I would indicate that I
13 would respectfully disagree with respect to the
14 time frame again. Unfortunately, I don't have
15 specific information with respect to the
16 expert, but I guess I would just say this, that
17 I don't believe it's feasible, and I think it
18 is prejudicial to my client to have an expert
19 step into a complex matter like this in the
20 type of time frame Your Honor has set forth.
21     I say that, Your Honor, and I will
22 acknowledge a couple of things. One, I do not
23 know the extent to which anyone at HDH has been
24 involved with Mr. Hembree. I cannot answer
25 that because I have not been involved in this

50 (Pages 1422 to 1425)

1438

1 somebody to pick it up or whether the script is
2 largely written and somebody should be able --
3 now, obviously, I don't know what commitments D
4 and H has, if they're scheduled to testify in
5 another matter or some darn thing.
6   MR. HART: Your Honor, the only thing
7 I would say with respect to the report, again,
8 you know, and it is a fairly, it is a lengthy
9 report, but the other point is it's not just
10 the report. It's the documents, that Your
11 Honor has seen the substantial volume of
12 documents.
13   ARBITER von KANN: Right.
14   MR. HART: And my understanding is
15 that, you know, with respect to that, again, I
16 don't know Mr. D or Mr. H, but to just pick up
17 the report and say, okay, he may not agree with
18 all the determinations, or may say, I've got to
19 go review the documentation he reviewed to see
20 if I agree with him, so I'm just saying it's
21 not as simple as saying, it's 47 pages, you can
22 memorize it, and then you're ready to go.
23   So I only just point that out to the
24 Court, but what I will do is I will actually
25 tell Mr. Dellers, he has already, I already

1439

1 told him today, I said I need you to start, I
2 said to him this, simultaneously, while we're
3 finding out what Mr. Hembree's situation is,
4 I'm directing you or HDH to start implementing
5 plan B which is, first of all, let me know, can
6 somebody do it? And, two, who is the person?
7 And, two, when can they do it?
8   So he is already doing that, and I
9 would anticipate, Your Honor, that the
10 affidavit we're going to give you on Friday is
11 going, there's going to be an affidavit from
12 someone else saying, assuming that Mr. Hembree
13 is not available, I am the guy, and here's when
14 I would be able to do this.
15   ARBITER von KANN: He should be, I
16 mean, I think he should, I guess, he certainly
17 should be shown the book, I assume, the report.
18 And maybe, I think we'll have to think about
19 this a little bit, but I think it's possible
20 that as part of the accommodation of perhaps
21 bringing in a new person, I might require Mr.
22 Preziosi to advise you in advance of the
23 documents he intends to use in
24 cross-examination, which is not always done.
25   But in order to avoid the guy having

1440

1 to plow through 8,000 documents, you know, I
2 might say, look, tell him the books or the
3 binders, the exhibits, so he can review them in
4 advance. I think it's fair. I mean, I
5 obviously want this to be conducted fairly to
6 both sides, and I don't frankly, given all of
7 the investment that everybody's put into this,
8 I am trying very hard to make sure that the
9 outcome of this is not likely to be vacated.
10   And so I want to make sure that the
11 record shows that we have bent over backwards
12 to try as much as we can to accommodate the
13 twin blows that your side has suffered, first,
14 Mr. Hilliard and, now, Mr. Hembree. And so
15 something like saying these are the documents
16 that you should be familiar with, you don't
17 have to read all 8,000, you can read them if
18 you want, might help a little bit in that
19 regard.
20   MR. HART: Your Honor, one thing on
21 that, and I appreciate -- Your Honor's right.
22 You obviously have to balance the
23 considerations. The only thing I would just
24 say is that I think that the prejudice to Lurgi
25 by having to go forward at less than full

1441

1 strength with an expert and, again, regardless
2 of the time frame, if Lurgi is forced to go
3 forward at something less than full strength, I
4 think substantially prejudices our ability to
5 present the case.
6   And I guess, having said that, I am
7 sensitive to the other concerns, but on the one
8 hand, the Hake problems of financial concerns
9 are not related to the presentations of this
10 case. And with all due respect, and I'm not
11 saying, everybody has financial problems, I
12 have financial problems too, you know, so that
13 has nothing to do with their presentation of
14 the case.
15   ARBITER von KANN: No, I agree.
16   MR. HART: And I guess also, lastly,
17 and I say this very respectfully, Your Honor,
18 the scheduling concerns you have are certainly
19 those concerns, but I guess I would say, if we
20 were in a perfect world, that there was no
21 problems with either Your Honor's schedule or
22 the financial constraints on Hake, I think,
23 normally, we would be talking about how much
24 time in order to get this person up to speed,
25 so that it would truly, there would be no

1529

```
 1            JAMS
 2      Arbitration Proceeding
 3   - - - - - - - - - - --
 4   FRANK W. HAKE, INC.,      )
 5       and                   ) Reference No.
 6   LURGI LENTJES NORTH       )  145000024
 7   AMERICA, INC.             )
 8   - - - - - - - - - - --
 9
10            ARBITRATION VOLUME 6
11
12            Washington, D.C.
13            Thursday, September 29, 2005
14
15        The arbitration convened on Thursday, September
16   29, 2005, commencing at 10:35 a.m., at the offices of
17   JAMS, 555 13th Street, Northwest, Suite 400 West,
18   Washington, D.C. 20004, before Cynthia R. Simmons,
19   Registered Merit Reporter, Certified Realtime
20   Reporter, and Notary Public.
21
22   BEFORE:
23   HON. CURTIS EMERY von KANN
24        Mediator/Arbitrator - JAMS
25
```

*Condensed Copy*

Page 1546

1 moment that Mr. Dellers might not be able to
2 make it a little bit sooner, but I also, you
3 know, I'm not in a position to say that he's
4 wrong about that. And there is a lot of data
5 to review, and he does have some other
6 commitments.
7   And so, now, there is a possibility
8 that I guess we could, that both sides would
9 have to consider, and that is that if they have
10 some flexibility about the dates, although I am
11 pretty heavily booked in November, I have an
12 international arbitration that will be held
13 here with two other arbitrators and about six
14 law firms, and it has 25 days of hearings
15 scheduled in November and December.
16   I was just looking, hearing
17 Mr. Dellers say November 14. The hearing is on
18 the, that case has hearings from Monday, the
19 14th through Thursday, the 17th. However, I'm
20 open Friday, November 18th and Monday, November
21 21; Tuesday, November 22; Wednesday, November
22 23; and Friday, November 25. Now, that's the
23 Thanksgiving week, but, you know, if we were
24 down to two days or three days for the experts,
25 I'm also willing to consider doing it over the

Page 1547

1 weekend of November 19 and 20.
2   So that, conceivably, we could convene
3 November 18, you know, maybe we would go
4 November 18 and 19, Friday and Saturday, give
5 everybody Sunday off, come back and finish it
6 up Monday and Tuesday, two days for each
7 expert. So I think, I think that there would
8 be a way in which we could take Mr. Dellers at
9 his word without, you know, further, without
10 detailed affidavits and cross-examination and
11 reviewing his, you know, which I'd rather not
12 do if we don't have to, and say, okay, fine,
13 you said you could be available November 14,
14 put this on your calendar for these dates.
15   And we could get everything else out
16 of the way, we could probably even get a good
17 deal of the briefing out of the way, I think,
18 and then come back at that point and with the
19 two experts, and if that were done, I would,
20 I'd then have to talk to you about how long
21 after that the award could issue because the
22 hearing resumes the week after Thanksgiving and
23 goes for five days and then four more days and
24 then six days.
25   So right up to November 17 is very

Page 1548

1 solid. I could try to do some work on this
2 in -- let's say we finished up the evidence
3 without these experts, this week or beginning
4 of next week. I could begin looking at cases,
5 I could begin looking at some of the testimony
6 already, I could begin to kind of preliminarily
7 organize some things, so that hopefully, after
8 the experts testified, if we did this in
9 November, that I could get out a decision, you
10 know, pretty soon thereafter, but it will be a
11 little difficult. I'll have to work around
12 some other dates and do it on the weekend.
13   So I guess where I come out is I think
14 that it looks to me like it probably -- not,
15 I'm not making a firm decision on this. There
16 might be some other options, but it looks to me
17 like there's probably, basically two roads to
18 go down. One road is to try to complete the
19 rest of the witnesses now, put in the experts'
20 reports and get an award by October 31, based
21 on that. And that, I think, is doable, might
22 even permit Mr. Hart to take his family on
23 vacation.
24   The other option would be to put in
25 everything else and perhaps use the interim for

Page 1549

1 some briefing and whatever and then come back,
2 as I say, on those dates, which is just a few
3 days after Mr. Dellers said he could be
4 available, and finish it up with three or four
5 days of expert testimony. I think those are
6 probably the two main choices. Now, there may
7 be some chance of something else, and I'm open
8 to it. I did throw out at one point, just to
9 see what Mr. Dellers would say, if he thought
10 somebody else might be bidding on this work,
11 that maybe Lurgi would go out and find somebody
12 else, but to be perfectly honest, the chance of
13 bringing in a brand-new person and getting it
14 sooner than this is probably not great.
15   So I thought that might spur him to
16 give his best offer as it were, but -- so what
17 I think we should do is let each side break and
18 maybe even, I may even let -- after you've
19 talked separately, it may be that you would
20 like to speak to Mr. Hart a bit directly before
21 we come back and put it on the record. There
22 may be some horsetrading you want to do about
23 this in some fashion. I don't know.
24 Obviously, if the parties come to an agreement
25 as to how they would like to handle this,