**EXHIBIT A**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLIED ENVIRONMENTAL SOLUTIONS,
INC., formerly known as
Lurgi Lentjes North America, Inc.

                              Petitioner,

v.                                  CIVIL ACTION NO. 06-0527-RMU

FRANK W. HAKE, INC.,

                              Respondent.

### DECLARATION OF JOHN J. CARWILE

I, John J. Carwile, declare as follows:

1.    I am an attorney at the law firm of Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, attorneys for Respondent, Frank W. Hake, Inc. ("Hake"), and as such, have personal knowledge of the facts set forth herein.

2.    I am a 1984 graduate of Harvard Law School. I have practiced law in Oklahoma since 1985. I have also over the years served as an outside attorney for Matrix Service Company and its affiliates.

3.    Matrix Service Company at all relevant times herein was, and has remained, the parent company of Hake, or its successor.

4.  I make this Declaration in response to the allegations made by Petitioner Allied Environmental Solutions, Inc., formerly known as Lurgi Lentjes North America, Inc. ("Lurgi"), and specifically in Paragraphs 23 through 33 of Mr. Schrama's Declaration, which purports to support Lurgi's allegations that Hake and Matrix Service Company's claims to JAMS arbitrator Curtis E. von Kann were unsubstantiated or misleading.

5.  Matrix Service Company ("Matrix") is a publicly traded company. Because of Matrix's status as a public company, there are restrictions on the ability of any person, such as myself, to distribute or disseminate nonpublic expected earnings or other financial information.

6.  In the Spring of 2005 Matrix was in serious financial difficulty, all of which was publicly disclosed at the time, resulting in a liquidity crisis and a need to restructure many of its operations, including those of Hake. In the Spring of 2005 the unpaid and unliquidated claim of Hake against Lurgi, was one of two large unresolved Hake construction claims which contributed significantly to the Matrix liquidity crisis at the time. The other was a claim by Hake and its affiliates against Stone & Webster Construction ("Stone & Webster"). Beginning in the Spring of 2005, and going forward, Matrix's liquidity situation required it to engage in ongoing and protracted negotiations with its then existing lenders in efforts to refinance its debt.

7.  In April, 2005, when the Lurgi arbitration was first scheduled, I attended by telephone the initial scheduling conference before JAMS arbitrator Curtis E. von Kann, held on April 4, 2005. At that time, when Lurgi requested a 2006 setting, I advised arbitrator von

2

Kann that Matrix and Hake needed resolution of the claim against Lurgi as soon as possible, and that resolution of that claim was central to Matrix's ongoing efforts and negotiations with its lenders and refinancing efforts. I also advised arbitrator von Kann that Matrix is a publicly traded company, and that I was limited in the specific information that I could give him but I did advise arbitrator von Kann that potential liquidation concerns existed.

8.  I also participated in the September 1, 2005 conference call with the arbitrator when Lurgi requested an indefinite adjournment, at that time I advised the arbitrator that any delay which pushed resolution of the Lurgi claim beyond the then scheduled decision date of October 31, 2005 would jeopardize Matrix's refinancing efforts and plan. At the time of the September 1, 2005 conference call Matrix was still in active and extended negotiations with its lenders in an effort to refinance its debt and meet its then existing liquidity needs. Prior to September 1, 2005 Matrix had already advised its lenders that the Lurgi arbitration schedule then in place had set a decision date of October 31, 2005.

9.  The fact that the Lurgi and Stone & Webster claims remained unresolved and unliquidated in the early fall 2005, forced Matrix to do a secondary equity offering of $15 million in October 2005. That October 2005 equity offering was not the preferred method of positioning Matrix for its refinancing, but was central to Matrix's refinancing efforts, that needed to be completed by January 1, 2006.

10. I have reviewed paragraphs 27 through 32 of Mr. Schrama's Declaration in which he sets forth highly selective excerpts and public filings of Matrix during the time period of the latter half of 2005. Mr. Schrama's Declaration is a distortion of Matrix's condition,

and in my opinion, is an effort to confuse this Court with a claim that because Matrix had some limited improvement in its financial performance in the latter half of 2005, Matrix's insistence that its claim against Lurgi needed to be resolved in 2005 was somehow inaccurate or misleading. This is not true, and it is completely inconsistent with the true facts. Notwithstanding some beginning improvement in Matrix's financial performance in the latter half of 2005, it was true on September 1, 2005, and remained true throughout the 2005 JAMS proceedings before the arbitrator, that a timely decision on the Lurgi claim remained a key component of Matrix's ability to solve its refinancing problems.

11. The facts noted by Mr. Schrama in his Declaration, that he now claims were ["not" disclosed to the arbitrator], were financial results in October and November of 2005, which were not known on September 1, 2005.

12. All statements I made to the arbitrator concerning Matrix's financial condition and its need for expedient resolution of the Lurgi claim were true and correct. Matrix's refinancing efforts would have been severely prejudiced in the late summer and fall of 2005 if Lurgi's request for an open ended adjournment of the arbitration had been granted.

4

Pursuant to 28 U.S.C. §1746, I declare under the penalties of perjury that the foregoing declaration is true and correct.

_____
John J. Carwile