## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

ALLIED ENVIRONMENTAL SOLUTIONS,
INC., formerly known as
Lurgi Lentjes North America, Inc.

                                    Petitioner,      CIVIL ACTION NO. 06-0527-RMU

        v.

FRANK W. HAKE, INC.,

                                    Respondent.

---

### MEMORANDUM OF POINTS AND AUTHORITY IN OPPOSITON TO THE PETITION TO VACATE ARBITRATION AWARD AND IN SUPPORT OF CROSS-PETITION TO CONFIRM AWARD

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

A.    The Project ................................................................................................ 3

B.    Commencement of JAMS Arbitration Proceedings ..................................... 5

C.    Judge von Kann's Initial Scheduling Order ................................................. 5

D.    Lurgi's Counsel of Record for the Arbitration ............................................ 7

E.    Discovery Proceedings............................................................................... 7

F.    The Parties' Expert Reports ....................................................................... 9

G.    Mr. Hilliard's Leave of Absence .............................................................. 11

H.    Commencement of the Hearings and Mr. Hembree's Problems ................. 13

I.    The Remaining Hearings .......................................................................... 17

LEGAL ARGUMENT .......................................................................................... 19

        POINT I - Hake's Cross-Petition To Confirm The Arbitration Award Must Be Granted
        Because No Legitimate Grounds Exist To Vacate, Modify Or Otherwise Correct The
        Award. ...................................................................................................... 19

        POINT II - The Court Should Strike All Material In Lurgi's Declarations That Was
        Not Previously Presented To The Arbitrator .............................................. 20

        POINT III - Lurgi's Petition To Vacate Must Be Denied Because The Arbitrator Did
        Not Engage In Misconduct Under 9 U.S.C. 10(C) ..................................... 21

        1.    There was No Misconduct Because the Arbitrator Outlined Six Valid
              Justifications for Granting Lurgi a Limited Adjournment Due to Mr.
              Hilliard's Temporary Leave of Absence, Rather Than the Unspecified Open-
              Ended Adjournment Requested by Lurgi. .................................................. 21

        2.    Lurgi has Failed to Demonstrate that It was Deprived in Any Way of a Fair
              Hearing. ................................................................................................... 28

        POINT IV - Lurgi Never Objected To Starting The Arbitration Hearing Without Its
        Expert Being Present And Cannot Be Heard To Claim It Suffered Prejudice On This
        Basis.......................................................................................................... 29

        POINT V - Lurgi's Attempt To Raise A Point Concerning Hake's Fee Application Is
        Legally Immaterial..................................................................................... 31

CONCLUSION..................................................................................................... 32

# TABLE OF AUTHORITIES

## CASES

ARW Exploration Corp. v. Aguirre, 45 F.3d 1455 (10th Cir. 1995)...................................1, 21, 22

Alexander Julian, Inc. v. Mimco, Inc., No. 00 CIV 4131, 2001 U.S. Dist. LEXIS 5744
    (S.D.N.Y. May 4, 2001), aff'd, 29 Fed. App'x 700 (2nd Cir. 2002) ..................................23, 24

Birkey Design Group, Inc. v. Egle Nursing Home, Inc., 687 A.2d 256 (Md. Ct. Spec.
    App. 1997) ..........................................................................................................................21

Bisnoff v. King, 154 F. Supp. 2d 630 (S.D.N.Y. 2001)...........................................................1, 22

Brd. of Ed. v. Prince George's County Educators Association, Inc., 522 A.2d 931 (Md.
    1987) ...................................................................................................................................22

Cheek v. United Healthcare of the Mid-Atlantic, Inc., 835 A.2d 656 (Md. 2003)......................19

Cheminova A/S v. Griffin L.L.C., 182 F. Supp. 2d 68 (D.D.C. 2002)..........................................19

City of New Haven v. Local 884, Council 4, AFSCME, AFL-CIO, 677 A.2d 1350
    (Conn. 1996) .......................................................................................................................27

DVC-JPW Investors v. Gershman, 5 F.3d 1172 (8th Cir. 1993) ...................................................22

District 17, United Mine Workers v. Island Creek Coal Co., 179 F.3d 133 (4th Cir. 1999).........29

Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac Railroad Co., 516 F.
    Supp. 1305 (D.D.C. 1981) ......................................................................................22, 23, 24

Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 121 S. Ct. 513, 148 L.
    Ed. 2d 373 (2000) ...............................................................................................................19

Holloman v. Circuit City Stores, Inc., 2006 Md. LEXIS 119, N. 53, September Term
    2005 (March 13, 2006) ........................................................................................................19

International Chemical Workers Union Local 566 v. Mobay Chemical Corp., 755 F.2d
    1107 (4th Cir. 1985)............................................................................................................29

International Components Corp. v. Klaiber, 59 A.D.2d 853 (N.Y. App. Div. 1977)..............27, 28

Mandl v. Bailey, 858 A.2d 508 (Md. Ct. Spec. App. 2004) .........................................................22

Marsh v. Loffler Housing Corp., 648 A.2d 1081 (Md. Ct. Spec. App. 1994)........................ 21-22

National Wrecking Co. v. Teamsters Local 731, 990 F.2d 957 (7th Cir. 1993)...........................29

OPEIU v. WMATA, 724 F.2d 133 (D.C. Cir. 1983).......................................................22

Revere Copper & Brass, Inc. v. Overseas Private Investment Corp., 628 F.2d 81 (D.C. Cir. 1980) ...........................................................................................................19

Scott v. Prudential Sec. Inc., 141 F.3d 1007 (11th Cir. 1998).......................................22

Sportastiks, Inc. v. Beltz, Case No. 88 (9293, 1989 U.S. Dist. LEXIS 2931 (N.D. Ill. 1989) .........................................................................................................20

Storey v. Searle Blatt Ltd., 685 F. Supp. 80 (S.D.N.Y. 1988).......................................22

Tube & Steel Corp. v. Chicago Carbon Steel Products, 319 F. Supp. 1302 (S.D.N.Y. 1970) ..........................................................................................................26

United Food & Commercial Workers Local 400 v. Marval Poultry Co., 876 F.2d 346 (4th Cir. 1989).................................................................................................29

## STATUTES

9 U.S.C. §9 .......................................................................................................19

9 U.S.C. §10(a)(3)..............................................................................................22

Fed. R. Civ. P. Rule 12(f) .............................................................................20, 21

# PRELIMINARY STATEMENT

The JAMS arbitration award in favor of Frank W. Hake, Inc. ("Hake") is entitled to what the courts have called "maximum deference" on the present cross-petitions. ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995). The standard of maximum deference applies equally to judicial review of an arbitrator's decision on whether to adjourn hearing dates. If an arbitrator had "at least a barely colorable justification" for his decision with respect to an adjournment request, his decision cannot be deemed misconduct under the Federal Arbitration Act and his award must be enforced. Bisnoff v. King, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001).

Here, the Arbitrator Curtis E. von Kann set forth six sound justifications for granting a limited adjournment due to Craig Hilliard's indeterminate unavailability instead of the unspecified open-ended postponement being requested by Lurgi Lentjes, NA ("Lurgi")[1] at the time. Prominent among those justifications was the fact that Lurgi had two other capable lawyers on its arbitration team who had been involved in the case throughout all proceedings and who were available to continue serving as counsel for Lurgi at the hearings. Furthermore, Lurgi's belated claim that Hake misled Judge von Kann by citing its parent company's financial problems as grounds for opposing an open-ended adjournment was never claimed before the Arbitrator is factually ludicrous.

Lurgi's alternative claim that the JAMS award should be vacated because its expert allegedly fell sick the week before hearings were scheduled to begin is also completely void of merit. First, as soon as Mr. Hembree's unavailability to testify was ascertained, which did not happen until the second week of the hearings, Judge von Kann granted Lurgi a forty-three (43)

---

[1] Presently known as Allied Environmental Solutions, Inc.

day adjournment to allow Mr. Hembree's partner, who had assisted with the preparation of Lurgi's expert report, to prepare himself to testify. Second, Lurgi never once objected to Hake's case-in-chief being presented without Mr. Hembree being present to hear it or assist with cross-examination.

Finally, and critically, Lurgi's petition to vacate the JAMS award must be denied because Lurgi does not and cannot identify a single piece of evidence that it was precluded from presenting as the result of any of Judge von Kann's rulings. In the final analysis, Lurgi is asking this Court to take the unprecedented and impermissible step of substituting its judgment for that of the Arbitrator. For the reasons set forth within, the Court should deny Lurgi's petition to vacate and grant Hake's cross-petition to confirm the JAMS award. In reaching its decision, the Court should further strike all new material and arguments in Lurgi's present declarations that Lurgi never saw fit to put before the Arbitrator.

## STATEMENT OF FACTS

Lurgi's analogy of a plane crashing shortly before trial with both its trial counsel and its expert witness on board is not just blatant hyperbole, but is also egregiously misleading in light of what actually occurred both before and during the arbitration proceedings. Hake prevailed at arbitration because Lurgi's failure to pay for Hake's work at the subject construction project was factually and legally insupportable, not because of any of Judge von Kann's interim rulings.

A.    The Project

The underlying arbitration arose from a project involving the construction of two Selective Catalytic Reduction ("SCR") units at a fossil fuel burning plant owned and operated by PSE&G Fossil, LLC ("PSE&G") at Duck Island, New Jersey in 2003 and 2004 (the "Project"). Petr. Exh. 2, Arbitration Order No. 6 at P. 1. Lurgi served as the EPC (engineering, procurement and construction) general contractor for PSE&G with respect to the Project. Id.; Petr. Exh. 6, Final Award at p. 3.

Hake served as one of Lurgi's primary subcontractors on the Project and was responsible for erecting the structural steel, ductwork and certain other equipment necessary for the construction of the SCR units pursuant to the terms of a Subcontract Agreement between the parties dated May 14, 2005 (the "Subcontract"). Petr. Exhs. 6, Final Award at pp. 3-4; Exh. 12, Subcontract. In accordance with the parties' Subcontract, all of the steel, ductwork and equipment to be erected by Hake in constructing the SCR units was to be furnished by Lurgi. Id.

From almost the first day of work, the Project was plagued by innumerable design errors, drawing conflicts and material nonconformities caused by Lurgi and/or by Lurgi's outside engineers and suppliers. Preziosi Decl., Exh. 14, Hake's Proposed Findings of Fact and Conclusions of Law, see, e.g., ¶76. These problems required thousands of hours of corrective work in the field (e.g., re-locating steel column lines, re-welding defective shop welds,

-3-

straightening bent steel, etc.) that Lurgi asked Hake to perform under field change authorizations

called subcontract change directives ("SCCD's") between September 2003 and June 2005. Id.,

see, e.g., ¶77. Hake dutifully performed massive amounts of extra work for Lurgi in this manner

on account of errors committed by Lurgi and/or by Lurgi's outside engineers and suppliers. Id.,

see, e.g., ¶¶133-165.

On May 21, 2004 Hake filed suit against Lurgi in the Superior Court of New Jersey,

Mercer County, for non-payment of amounts owed under the Subcontract. As of that date, Lurgi

was 30 days or more past due to Hake for $7,958,836 in base Subcontract, change order and

SCCD work. By the end of May 2004, at least four other unpaid subcontractors on the Project

had also sued Lurgi in the Superior Court of New Jersey for nonpayment.

On June 4, 2004, PSE&G terminated Lurgi for cause, the grounds for which included

nonpayment of subcontractors. Preziosi Decl., Exh. 16, PSE&G's termination for cause letter.

Thereafter, PSE&G retained Hake directly to perform much of the work required for completion

and start-up of the SCR units. Petr. Exh. 6, Final Award at p. 6. ("[T]he fact that PSE&G

ultimately terminated Lurgi for cause and hired Hake to complete Lurgi's work speaks

volumes.").

On August 6, 2004 the Superior Court of New Jersey entered an order staying Hake's

state court action and requiring Hake to proceed to mediation and, if necessary, binding

arbitration against Lurgi through JAMS in accordance with Section 25.3 of the parties'

Subcontract. That paragraph provides as follows:

> If mediation of a Dispute does not result in a mutually agreeable
> resolution, the Dispute shall be immediately referred to and
> decided by binding arbitration before an arbitrator associated with
> the organization J.A.M.S./Endispute (the "Arbitrator").

> [Petr. Exh. 12, Subcontract, § 25.3. (emphasis added)].

B.    Commencement of JAMS Arbitration Proceedings

Hake filed its Mediation and Arbitration Demand against Lurgi on September 14, 2004 in accordance with the JAMS rules of comprehensive arbitration. Petr. Exh. 2, Arbitration Order No. 6 at p. 2. On December 1, 2004, Lurgi filed an Answer and Counterclaim with JAMS. Id.

Glenn Azzinari, a partner in the New York law firm of Wormser, Kiely, Galef & Jacobs LLP, filed the Answer and Counterclaim on behalf of Lurgi in the JAMS proceedings. Preziosi Decl., Exh. 1. Mediation sessions were conducted in December 2004 and January 2005. Mr. Azzinari prepared the mediation statement that outlined Lurgi's defenses. Preziosi Decl., Exh. 4, Lurgi's Mediation Statement, dated January 15, 2005. Thereafter, Mr. Azzinari and Craig Hilliard of the New Jersey law firm of Stark & Stark represented Lurgi during the mediation sessions.

In the course of the mediation, Hake provided Lurgi with a detailed break-down of all of its claims, giving Lurgi a significant head-start in preparing for discovery in the arbitration. Preziosi Decl., Exhs. 2 and 3, Mediation Statement and Hake's Supplemental Mediation Statement.

On January 14, 2005, Glenn Azzinari sent JAMS and Hake a 4-page letter critiquing Hake's claims against Lurgi for delay damages and constructive acceleration damages. Preziosi Decl., Exh. 4. As the Arbitrator later noted, and as Lurgi could not genuinely dispute, Glenn Azzinari was involved in the preparation of Lurgi's defense from the inception of the JAMS proceedings and was intimately familiar with the issues and the evidence in the case.

Mediation was ultimately unsuccessful and the arbitration itself was then commenced.

C.    Judge von Kann's Initial Scheduling Order

On April 4, 2005, the Honorable Curtis E. von Kann, whom the parties jointly selected as their Arbitrator, issued Arbitration Order No. 2 which provided for, among other things, the

-5-

Federal Arbitration Act to be the governing procedural law for the arbitration. Petr. Exh. 1, Arbitration Order No. 2 at ¶1. Arbitration Order No. 2 also required the parties to exchange their Project documents by April 22, 2005; for the depositions of five fact witnesses from each side to be taken by June 10, 2005; for Hake to produce its expert report by April 11, 2005; for Lurgi to produce its expert report by June 30, 2005; and for the depositions of the experts to be concluded by July 22, 2005. Id. at ¶¶ 11, 14, 9, 15 and 16.

In terms of hearing dates, Hake had originally requested that the arbitration hearings be completed by the end of June 2005. Petr. Exh. 2, Arbitration Order No. 6 at pp. 2-3. See also Carwile Decl., ¶¶ 6-7 (setting forth the financial condition of Hake's parent company which Hake explained to the Arbitrator as grounds for requesting expedient hearing dates). Lurgi, on the other hand, originally requested that hearings not even start until January 2006. Petr. Exh. 2. at p. 3. Judge von Kann carefully weighed both parties' respective positions and ordered that hearings would instead be held each weekday from September 6 through September 20, 2005 and on Saturday, September 10, 2005. Petr. Exh. 1, Arbitration Order No. 2 at ¶21. Judge von Kann further ruled in Order No. 2 that a final arbitration award would be issued by October 31, 2005. Id. at ¶24.

As set forth within, the hearings were ultimately re-arranged and re-arranged a second time at the request of Lurgi. As a result, the hearings were not actually conducted until the following dates: September 19, 20, 26-30; October 4-7; and November 18-22. Preziosi Decl. ¶16 Exh. 10. The new schedule not only resulted in a postponement of the first hearing dates, but also provided for lengthy breaks between subsequent hearing dates that were not provided for under the original schedule.

D.    Lurgi's Counsel of Record for the Arbitration

On May 10, 2005, Lurgi's counsel Glenn Azzinari of the Wormser Kiely firm sent

Hake's surety a 3-page letter identifying himself and Craig Hilliard as the two attorneys "co-

representing Lurgi" in the arbitration and detailing Lurgi's counterclaim against Hake in the

JAMS arbitration. Preziosi Decl., Exh. 19, 5/10/2005 correspondence from Azzinari to Hake's

Surety at p. 3. (emphasis added).

At the time of the arbitration, Mr. Azzinari's biography stated that he was experienced in

"commercial litigation and international arbitration, having conducted or assisted in trials and

proceedings before the federal and state courts in New York, the International Court of

Arbitration and the American Arbitration Association." Preziosi Decl., Exh. 17, Azzinari Firm

Biography, viewed on 9/1/2005. Mr. Azzinari's present biography states that he is experienced

in "areas of litigation and arbitration of commercial and construction disputes and has conducted

or been involved in trials and proceedings before the federal and state courts of New York, the

International Court of Arbitration, the American Arbitration Association and JAMS." Preziosi

Decl., Exh. 18.

The Wormser Kiely firm and the Stark & Stark firm were listed as co-counsel of record

for Lurgi throughout discovery and all other pre-arbitration proceedings before JAMS. See, e.g.,

Preziosi Decl., Exh. 11. As of September 2005, the Wormser Kiely firm and the Stark & Stark

firm had a combined total of 127 lawyers, 64 of whom were partners. Both firms boast

substantial litigation depth and strength. Petr. Exh. 2, Arbitration Order No. 6 at pp. 6-7, ¶3.

E.    Discovery Proceedings

The exchange of Project documents between Lurgi and Hake was voluminous.

Approximately 400 out of the approximately 500 boxes of documents exchanged between the

parties, however, were from Lurgi. Thus, Lurgi's testifying witnesses presumably had a good command of those documents long before depositions ever commenced.

Lurgi first reviewed Hake's production of Project documents on May 5-6, 2006.[2] Preziosi Decl. ¶9. Lurgi had two expert consultants review and analyze those documents in the May to June 2005 time period, namely, Willis Hembree of the Annapolis firm HDH Construction Consultants, Inc. and his partner, Stephen Dellers, of the same firm. See page 17 (concerning Mr. Dellers' role in preparing the HDH report), supra.

There were relatively few discovery disputes between Lurgi and Hake prior to arbitration. In mid-July 2005, a dispute arose concerning Lurgi's non-production of certain "claim" binders it had assembled in the course of the Project to build its case against its outside engineer for poor structural steel design of the SCR units. This was the one discovery dispute as to which the Arbitrator required briefing and oral argument. The hearing on that issue was conducted via telephone and was argued primarily by Glenn Azzinari on behalf of Lurgi. Preziosi Decl., ¶14; see also Exh. 11, Arbitration Order No. 3.

Martin Schrama from Stark & Stark defended all of Hake's depositions of Lurgi's fact witnesses during discovery. Mr. Schrama also took the deposition of two of Hake's five fact witnesses, with Mr. Hilliard conducting the other three. Preziosi Decl. ¶19.

Glenn Azzinari had a primary role in preparing Lurgi's fact witnesses. Lurgi's site manager for the Project, Rob Cash, was deposed on May 27, 2005. Mr. Cash testified in his deposition that he had been asked to prepare an analysis of Hake's claims for payment for extra work. Lurgi objected to any questions about that analysis because it was asserted to have been

---

[2] Lurgi's claim that Hake "tardily" produced its Project documents is yet another falsehood in its petition.

prepared under the supervision of Glenn Azzinari.  Preziosi Decl. Exh. 20, Cash Deposition Tr. 62:22 to 64:25.

The depositions of Hake's fact witnesses were completed by June 2005, with Hake's expert report and Project documents having already been provided in April and May 2005. Thus, irrespective of the medical problems Lurgi's legal team claims to have encountered between August 31 and September 19, 2005, it had all of July and August 2005 to outline and otherwise prepare for cross-examination of Hake's witnesses, as well as to prepare for the direct examination of its own witnesses.

Certainly, Lurgi would not have waited until the week before the first scheduled hearing date (when Craig Hilliard took his temporary leave of absence) to start preparing for cross-examination of Hake's witnesses, let alone to start preparing its own witnesses to testify as Lurgi's present declarations suggest.

F.      The Parties' Expert Reports

Hake's expert report was authored by Walter Wachter, P.E. and produced to Lurgi in the beginning of April, 2005.  Preziosi Decl., Exh. 5, Wachter Report.  That report set forth opinions on the following issues:  (1) the cause of expansion joint misalignment on the SCR ductwork that took 48 days to correct; (2) Hake's entitlement to payment under a Subcontract provision calling for Hake to provide a work schedule within 10 days of positive float; (3) Hake's entitlement to "constructive acceleration" damages caused by the imposition of massive amounts of extra work without a commensurate extension of the subcontract completion date; (4) Hake's entitlement to delay damages; and (5) Hake's entitlement to payment for erecting structural steel beyond the scope quantity of the Subcontract.  Id.

Lurgi's expert report was authored by Willis Hembree and his partner Steve Dellers[3] of HDH. Preziosi Decl., Exh. 6. That report was produced to Hake on July 20, 2005. The HDH report did not address any of Lurgi's affirmative claims against Hake. Nor did it address responsibility for the expansion joint misalignment. Nor did it address reasonableness or entitlement with respect to Hake's claims for compensation for extra work, which comprised more than $7,500,000 of Hake's total claims. Instead, the report was limited in scope to an opinion that Hake's expert had failed to establish a causal link between disruptions on the Project and Hake's claims for delay damages, loss of productivity damages and similar "impact" costs. Id.

In mid-August 2005, Lurgi identified a second expert report that had been prepared by a Lurgi project engineer named Ralph Lebron in February 2005. Preziosi Decl. ¶12, Exh. 8, Lebron Report. In that report, Lebron set forth his opinion on the cause of the expansion joint issue. Hake objected to the issuance of this report and any testimony based thereon due to its late production and prior nondisclosure. Preziosi Decl. ¶13, Exh. 9. On August 19, 2005, Judge von Kann ruled over Hake's objection that he would permit Lurgi to present expert testimony from Mr. Lebron. Preziosi Exh. 11, Arbitration Order No. 5. Judge von Kann rendered that decision notwithstanding the fact that Lurgi had theretofore withheld the Lebron expert report on the purported grounds of the attorney work product doctrine.

Hake's deposition of Lurgi's expert Willis Hembree was scheduled to occur on August 30, 2005. On that date, Lurgi advised Hake that Mr. Hembree could not appear for his

---

[3] See page 17, supra, concerning Mr. Dellers' involvement in preparing Lurgi's expert report.

deposition because his mother had suffered an unspecified medical emergency.  Preziosi Decl., ¶15.

G.    Mr. Hilliard's Leave of Absence

On August 31, 2005, Mr. Schrama advised counsel for Hake that Mr. Hilliard had taken a sudden medical leave of absence from his practice.  Petr. Exh. 2, Arbitration Order No. 6 at p. 4.

On September 1, 2005 Judge von Kann held a telephone conference with counsel.  Id. For reasons that are unknown, Mr. Azzinari chose not to participate on that call.  During the call, Stark & Stark's managing partner Lewis Pepperman stated that Mr. Hilliard had suffered exhaustion and was unable to proceed with the arbitration hearings as scheduled.  Id. at p. 4.

Hake responded by agreeing to adjourn the first hearing to September 19, 2005 but explained in detail that an adjournment of any further, unspecified duration would threaten the survivability of Hake's parent company, Matrix, whose lenders had agreed to restructure Matrix' debt based on the provision in Scheduling Order No. 2 from the prior April that the Lurgi case would be resolved by October 31, 2005.  Carwile Decl., ¶8; Petr. Exh. 2, Arbitration Order No. 6 at p. 5.

On September 2, 2005 Judge von Kann issued Order No. 6 which rescheduled the arbitration hearings from September 6 through 20, 2005 to the following new dates:  September 19-20; September 26-30; and October 4-7, 2005.  Petr. Exh. 2 at p. 9.  In so ruling, Judge von Kann set forth a detailed evaluation of the circumstances and the grounds for his decision.

Lurgi has, in its petition, taken great pains to avoid any quote or direct reference to the written opinion in which Judge von Kann ruled on Lurgi's adjournment request.  The Arbitrator set forth his rationale in writing on September 2, 2005 as follows:

> "1.    When parties enter into an arbitration agreement, they commit to participate in a process that is much more expeditious than litigation.  Discovery is truncated and hearings are held

-11-

sooner then they would be in court. The arbitration clause in this matter conveys a particular sense of urgency (if the dispute is not resolved through mediation, it "shall be immediately referred to and decided by binding arbitration") (Subcontract §25.3, emphasis added). An inherent risk of thus agreeing to "fast track" dispute resolution is the possible need to quickly replace the other counsel any lawyer who becomes unavailable to work on the arbitration.

2.      Lurgi has not provided any specific information (e.g., a doctor's evaluation or even an affidavit from Mr. Hilliard) concerning Mr. Hilliard's condition. Lurgi has not shown how long Mr. Hilliard will need to rest or when he may be able to resume full or partial work in this matter. There is no evidence before me that he will be unable to consult with other Lurgi counsel before and during the hearing, and perhaps even participate in the hearing in some fashion.

3.      Lurgi is represented in this matter by two law firms that have a combined total of approximately 127 lawyers, 64 of whom are apparently partners. (Stark & Stark's website lists 93 lawyers, of whom 46 are shareholders, and Wormser Kiely's website lists 34 lawyers, of whom 18 are partners.) There is no evidence before me that one or more of these lawyers cannot take over for Mr. Hilliard and get up to speed in the two and one-half weeks that remain before the hearing begins. Moreover, the original hearing schedule (to which neither side objected) provided only three days off between the starting and ending dates of the hearing; under the new schedule, there will be eight days off between the starting and ending dates, including a block of five days after the first two days of hearing (in which Hake will be presenting its case). These eight days will give any new counsel further time to become familiar with the evidence and consult with Messrs. Hilliard, Schrama and Azzinari.

4.      Mr. Schrama, a senior associate who has been on the case from the beginning and was expected to examine some witnesses at the hearing, is still available to do so. Mr. Azzinari, a law firm partner who has some arbitration and litigation experience, filed Lurgi's Answer and Counterclaim in this matter, and participated in the mediation, is, so far as the record shows, also available to participate in the hearing.

5.      Hake, and its parent Matrix, have repeatedly represented that they will suffer severe prejudice, perhaps liquidation, if the arbitration does not proceed promptly and result in an award by October 31, 2005. Lurgi has not shown, nor even contended, that this prejudice is not real.

-12-

6.    Because of the commitments which I (the arbitrator selected by Hake and Lurgi) have to parties in other cases, I will be unable to issue the arbitration award by October 31, 2005, or even complete the hearing before January, 2006, unless the hearing commences by September 19, 2005.

In view of all these considerations, I am confident that the most equitable and appropriate course is to postpone the commencement of the hearing to September 19 and hold it on the dates set forth above.  It should be noted that in doing so, I am granting, not refusing, Lurgi's request for a postponement.  I am simply not postponing the hearing to the date (thus far unspecified by Lurgi) beyond September 19 to which Lurgi would like to have the hearing postponed."

[Petr. Exh. 2, Arbitration Order No. 6 at pp. 6-7 (emphasis added)].

H.    Commencement of the Hearings and Mr. Hembree's Problems

On September 16, 2005 Kevin Hart of Stark & Stark wrote the Arbitrator advising that he would be serving as Lurgi's lead counsel at the hearings and further advising that Mr. Hembree had experienced a cardiac episode that might or might not affect his availability to testify.  Mr. Hart's letter stated that he would keep the Arbitrator and counsel informed as any further information about Mr. Hembree's health became available.  Petr. Exh. 3 at p. 4.

Hearings then commenced on September 19, 2005 at the Washington, DC offices of JAMS.  Mr. Hart, as well as Mr. Azzinari and Mr. Schrama, appeared as counsel for Lurgi.  That morning counsel and the Arbitrator discussed the status of Mr. Hembree.  Mr. Hart advised that he was still awaiting further information, hopefully from a doctor, about Mr. Hembree's condition.  Preziosi Decl., Exh. 10, 9/19/05 Arbitration Tr. 18:24-19:18.

Hake then called its first witness, Project Manager David Kazokas.  Lurgi's counsel never took the position that Hake's case-in-chief should be postponed until Mr. Hembree could be present.  Not only was no such application ever made, but it was never even mentioned.  Rather, the parties proceeded with Hake's direct case without any reservation and with Mr. Hart

-13-

assuring that he would keep the Arbitrator and counsel advised as he learned anything more about Mr. Hembree's medical status. Preziosi Decl., Exh. 10, 9/19/05 Arbitration Tr. 19:11-18.

Direct examination of Mr. Kazokas continued late into the afternoon of September 20, 2005, at which time the proceedings recessed until September 26, 2005. This left counsel for Lurgi an additional five days to prepare for Mr. Kazokas' cross-examination when testimony resumed.

Testimony resumed as scheduled on September 26, 2005. That morning, Mr. Hart advised that Mr. Hembree was scheduled for an angiogram on October 5, and that "apparently his doctor has said [Mr. Hembree] is not available until the procedure [is done]." Preziosi Decl., Exh. 10, 9/26/05 Arbitration Tr. 606:5-6. The situation was potentially problematic because all testimony in the arbitration was then scheduled to conclude by October 7, 2005 (see page 15, supra). The following colloquy then occurred on the record:

> **MR. PREZIOSI:** The last time we had any update really on the status of Mr. Hembree, <u>Your Honor indicated that at some point in time it would be appropriate to have a letter from the treating and responsible physician.</u>
>
> **ARBITER von KANN:** <u>Yeah, I think it would.</u>
>
> **MR. PREZIOSI:** And at this point we have —you know, our case is going to be put on the record this week, our expert is going to be put on the record this week, and if Mr. Hembree is not going to be having his procedure done until October 5th —- and presently we plan to close the record or at least close testimony on October 7th.
>
> **ARBITER von KANN:** Well, you know, we will see. I mean, I guess he could testify the 6th or 7th, perhaps, if it is cleared with his doctor. Maybe we will have to come back for one day the following week or something. I don't know.
>
> <u>Why don't we try to get a report in the next day or so and then we will figure out what the plan is.</u>
>
> **MR. HART:** <u>I am hoping to have something by the end of the day.</u>

-14-

**ARBITER von KANN**:  All right, let's go.

[Preziosi Decl., Exh. 10, at 606:17-607:14 (emphasis added)].

Testimony then resumed, again without any reservation by Lurgi's counsel that Lurgi could not

proceed without Mr. Hembree being present.

With the last hearing date still being scheduled for October 7, 2005, the question of Mr.

Hembree's availability to testify in person came to a head on September 28 and 29, 2005.

Hake's direct examination of its boilermaker superintendent Bernie Finucan proceeded without

any reservation or objection from Lurgi the morning of September 28.

That afternoon Mr. Hart produced a two sentence handwritten doctor's note on a

prescription pad stating that Mr. Hembree would undergo an angiogram on October 5; that the

doctor would see Mr. Hembree for re-evaluation on October 10; and that the doctor would

determine then whether Mr. Hembree could perform his normal work responsibilities at that

time.  Preziosi Decl., Exh. 10, 9/28/05 Arbitration Tr. 1420:22-1421:18.  The note mentioned

nothing about any alleged "hospitalization" of Mr. Hembree earlier in September.  This was the

first and only doctor's note or medical record ever presented to the Arbitrator with respect to Mr.

Hembree.

Thereupon, the Arbitrator raised the possibility of whether another principal of HDH

might be able to testify in Mr. Hembree's place.   Mr. Hart responded as follows:

> But I guess my feeling would be this, Your Honor, unless there is
> somebody that has been working hand-in-hand with Mr. Hembree
> on this, in light of the complex nature, the issues that are presented
> in these reports, I don't think it's reasonable to expect somebody,
> an expert to step up to the plate in the type of time frame we're
> working on.  And I appreciate that there is the Hake concerns, and
> I appreciate Your Honor's scheduling concerns.
>
> But I just would like to reflect on the record that, notwithstanding
> both of those, I would think that at this point, that there is a

-15-

> substantial prejudice to Lurgi if they are effectively forced to go
> forward with an expert who may be unprepared.

[Preziosi Decl., Exh. 10, 9/28/05 Arbitration Tr. 1426:8-23].

Lurgi has not so cleverly twisted this passage in its brief to misrepresent that Lurgi was, at some point in time, objecting to the presentation of any evidence by Hake until Mr. Hembree could be present in the room. That simply never happened.

The discussion then turned to whether Stephen Dellers, Mr. Hembree's partner who as set forth within had already been involved in the matter, might be able to testify for Lurgi. To that end, Mr. Hart was directed to speak with Mr. Dellers later in the afternoon of September 28 to determine whether Mr. Dellers would be able to testify and, if so, how much time he would need to prepare. Preziosi Decl., Exh. 10, 9/28/05 Arbitration Tr. 1438:23-1439:14; 1464:8-23.

Judge von Kann interviewed Mr. Dellers by phone the morning of September 29 with counsel present. Mr. Dellers was asked to address his availability and the time he would need to prepare himself for testimony. The results of that call and an ensuing stipulation by counsel were then placed on the record. Preziosi Decl., Exh. 10, 9/29/05 Arbitration Tr. In summary, Mr. Dellers stated affirmatively that he was able to testify, and that he would be prepared to appear before the Arbitrator by November 14. Id. at 1535:9-18. The Arbitrator and counsel then agreed that the parties would complete fact witness testimony by October 7; that Hake's expert Walt Wachter would also testify as to the opinions set forth in his report that were not addressed by the HDH report — i.e., the expansion joint misalignment and quantity scope of structural steel issue — before October 7; that Hake's counsel could take Mr. Dellers' deposition on November 14; and that Mr. Wachter and Mr. Dellers would testify on November 18 through 21 concerning any and all other remaining expert issues in the case. Id. at 1552:13-1554:20.

PR: #590821 v6 (CNVP06!.DOC) 128526-6

Mr. Dellers' deposition was conducted on November 15, 2005. During that deposition, Mr. Dellers testified at length about his role in preparing HDH's expert report. Mr. Dellers testified that he discussed with Hembree "many of the aspects of the claim at the time it was being prepared". Preziosi Exh. 7, Dellers Dep. Tr. 19:2-7. Mr. Dellers further testified that he had a significant role in providing information to Mr. Hembree and in preparing initial drafts of certain sections of the report. Id. at 19:8-10. Mr. Dellers indicated that he prepared rough drafts for sections, "starting towards the bottom of page 15, parts of page 16, 17, 18, 19 . . . [and] the sections pertaining to the specific numerical calculations that Wachter did." Id. at 19:11-12; 19:16-18. The HDH report had, without question, been a collaborative effort between Mr. Dellers and Mr. Hembree.

I.    The Remaining Hearings

Following the parties' agreement on the postponement of the expert portion of the hearing, the parties continued to introduce fact witness testimony between September 29 and October 6 without any objections from Lurgi concerning its not having Mr. Hembree present. Lurgi's case-in-chief was presented on September 30 and on October 4 through October 6.

Lurgi was never precluded from producing a single piece of evidence in support of its case and never made an assertion to the contrary. The Arbitrator even permitted Lurgi to introduce extensive evidence, over Hake's objection, that Lurgi had previously withheld from Hake during discovery under the guise of the attorney/client privilege and/or work product privileges. By way of example only, that evidence included the introduction of Mr. Lebron's testimony based on his previously withheld report, as well as an analysis prepared by Lurgi's project scheduler concerning the time it had taken Lurgi to respond to various design and/or material problems encountered during construction, an analysis that Lurgi had also withheld from Hake in discovery. Preziosi Ex. 9; Exh. 11, Arbitration Order No. 5; and Exh. 10, October

-17-

4, 2005 Tr. 2067:1 to 2070:20. In sum, Lurgi moved 150 exhibits into evidence during the arbitration. Preziosi Decl., Exh.12, Lurgi Exhibit List.

During the arbitration, Mr. Schrama conducted the direct examination of two of Lurgi's fact witnesses. After fact testimony was completed, the hearings recessed for 43 days. The hearings then resumed from November 18, 2005 through November 22, 2005 for the purpose of presenting expert testimony on Hake's claims for delay damages and constructive acceleration damages. Mr. Dellers testified on these points over the course of two days. As the Arbitrator noted in the Final Award, Mr. Dellers was a well-prepared and competent witness. Petr. Exh. 6, Final Award at p. 5. The Arbitrator relied on Mr. Dellers' testimony in rejecting all of Hake's $1,339,502.62 claim for delay damages. The Arbitrator further relied on Mr. Dellers' testimony in rejecting all but $742,841 of Hake's $2,561,387 claim for constructive acceleration/loss of productivity damages.[4] Petr. Exh. 6, Final Award.

Lurgi's primary fact witness with the most institutional knowledge of the Project was its Director of Construction Operations Scot Ojard. Mr. Ojard was present for Lurgi every day of the hearings.

---

[4] Lurgi is not being straight with the Court when it feigns believing that Hake's claims "mushroomed" into a "runaway" award. Hake's first construction lien against the Project for $597,214 was filed three months before the Lurgi was terminated from the Project, well before several million dollars in work and extra steel was invoiced. Lurgi also consistently mis-states the base Subcontract price as being $28.5 million, when it was really $28.5 million plus $1,598,875 for providing a work schedule with 10 days of positive float, Subcontract ¶ 5.1, a payment that Hake also earned. The Arbitrator meticulously examined Hake's claims and Hake proved entitlement to every penny of its Award.

## LEGAL ARGUMENT

## POINT I

**HAKE'S CROSS-PETITION TO CONFIRM THE
ARBITRATION AWARD MUST BE GRANTED BECAUSE
NO LEGITIMATE GROUNDS EXIST TO VACATE,
MODIFY OR OTHERWISE CORRECT THE AWARD.**

Pursuant to the Federal Arbitration Act (the "FAA"), a court of competent jurisdiction "must" confirm an arbitration award if (a) the parties' agreement provides for entry of a final and binding judgment upon the award, (b) a motion to confirm is filed within one year, and (c) there is no basis explicitly provided for under §10 or §11 of the FAA to vacate, modify or correct the award. 9 U.S.C. §9.

The mandatory confirmation and limited scope of review provisions of the FAA arise from longstanding federal policy that strongly favors judicial confirmation of binding arbitration decisions. Cheminova A/S v. Griffin L.L.C., 182 F. Supp. 2d 68, 73 (D.D.C. 2002)(citing Green Tree Financial Corp.-Alabama v. Randolph, 531 U.S. 79, 91, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000); Revere Copper & Brass, Inc. v. Overseas Private Inv. Corp., 628 F.2d 81, 84 (D.C. Cir. 1980)). See also Holloman v. Circuit City Stores, Inc., 2006 Md. LEXIS 119, No. 53, September Term, 2005, at *12 (Md. March 13, 2006) (noting that the Maryland Arbitration Act ("MAA") has been called the State analogue to the FAA and that like its federal counterpart, the MAA similarly favors enforcement of arbitration agreements); Cheek v. United Healthcare of the Mid-Atlantic, Inc., 835 A.2d 656, 660 (Md. 2003).

Here, Hake's motion to confirm the March 20, 2006 JAMS Arbitration Award must be granted because all the prerequisites to confirmation under Section 9 of the FAA have been established. First, the Subcontract between Hake and Lurgi expressly provides that "[t]he award rendered by the Arbitrator(s) shall be final and judgment may be entered upon it in accordance

-19-

with applicable law in any court having jurisdiction." Petr. Exh. 12, Subcontract § 25.7.[5]

Second, Hake's motion for confirmation has been filed within one year of the issuance of the

March 20, 2006 award. Finally, for the reasons set forth below, Lurgi does not - - and cannot - -

establish a valid reason to vacate, modify or otherwise correct the award. In light of the

foregoing, the JAMS arbitration award in favor of Hake must be confirmed.

**POINT II**

**THE COURT SHOULD STRIKE ALL MATERIAL IN
LURGI'S DECLARATIONS THAT WAS NOT
PREVIOUSLY PRESENTED TO THE ARBITRATOR**

Fed. R. Civ. P. Rule 12(f) specifically permits a court to strike from a pleading "any

redundant, immaterial, impertinent, or scandalous matter." The declarations of its counsel and

experts submitted by Lurgi its petition to vacate must be stricken to the extent that they set forth

matters that were never brought before the Arbitrator. See Sportastiks, Inc. v. Beltz, Case No. 88

C 9293, 1989 U.S. Dist. LEXIS 2931 at *7-8 (N.D. Ill. 1989).

Specifically, the following argument/material must be excluded because it was never

brought before the Arbitrator: all assertions of alleged prejudice to Lurgi as the result of not

having Mr. Hembree available as a consultant to hear Hake's direct case and assist with cross-

examination; all assertions that Hake and its parent would not have been prejudiced by an open-

ended adjournment; all assertions that the 43-day adjournment into mid November was

insufficient time for Mr. Dellers to prepare himself to testify; and all alleged information from

Mr. Hembree concerning his medical condition <u>other than</u> the contents of the doctor's note

reflected in the September 28, 2005 hearing transcript, including but not limited to any

---

[5] The jurisdiction of this court to confirm is proper because the Award was rendered in
the District of Columbia.

declarations concerning his alleged hospitalization prior to the start of hearings. Preziosi Decl., Exh. 10, 9/28/05 Arbitration Tr. 1420:22-1421:18. Lurgi cannot argue Arbitrator misconduct based on after-the-fact arguments or alleged facts never brought before the Arbitrator. Sportastiks, supra, 1989 U.S. Dist. LEXIS 2931 at *7-8.

## POINT III

### LURGI'S PETITION TO VACATE MUST BE DENIED BECAUSE THE ARBITRATOR DID NOT ENGAGE IN MISCONDUCT UNDER 9 U.S.C. 10(C)

Regardless of whether any of Lurgi's declarations are stricken under Rule 12(f), Lurgi is not entitled to a vacatur of the arbitration award because it has not met its heavy burden of showing either misconduct by Judge von Kann or deprivation of a fair hearing. Once the actual record from the arbitration is understood, it becomes clear that Lurgi is essentially asking this Court to substitute its judgment for that of the Arbitrator. The FAA does not authorize such second-guessing of an arbitrator's determination as Lurgi now seeks.

1.    **There was No Misconduct Because the Arbitrator Outlined Six Valid Justifications for Granting Lurgi a Limited Adjournment Due to Mr. Hilliard's Temporary Leave of Absence, Rather Than the Unspecified Open-Ended Adjournment Requested by Lurgi.**

Vacatur of arbitration awards is severely limited and is not warranted by the facts of this case. As set forth above, the JAMS arbitration award in favor of Hake is entitled to "maximum deference." ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (stating that the standard for review of an arbitration award is "among the narrowest known to the law" and refusing to vacate award under Federal Arbitration Act); Birkey Design Group, Inc. v. Egle Nursing Home, Inc., 687 A.2d 256, 265 (Md. Ct. Spec. App. 1997)("arbitration is encouraged; accordingly, the scope of judicial review of an arbitrator's award is limited")(internal citation omitted); Marsh v. Loffler Housing Corp., 648 A.2d 1081, 1085 (Md. Ct. Spec. App. 1994) (the

-21-

Maryland General Assembly has established a policy in favor of the settlement of disputes through arbitration, and thus has severely limited the role of the courts in this process).

Under this standard, a Court cannot substitute its judgment for that of an arbitrator. OPEIU v. WMATA, 724 F.2d 133, 137 (D.C. Cir. 1983); Brd. of Ed. v. Prince George's County Educators Ass'n, Inc., 522 A.2d 931, 937-38 (Md. 1987); Mandl v. Bailey, 858 A.2d 508, 521 (Md. Ct. Spec. App. 2004).

The standard of maximum deference applies equally to judicial review of an arbitrator's decision on whether to postpone a hearing.  ARW Exploration, supra, 45 F.3d at 1463; Storey v. Searle Blatt Ltd., 685 F.Supp. 80, 82 (S.D.N.Y. 1988).  It is well settled that if an arbitrator set forth "at least a barely colorable justification" for denying a postponement request, the decision cannot be deemed misconduct under 9 U.S.C. §10(a)(3) and the award must be enforced. Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac Railroad Co., 516 F. Supp. 1305, 1313-14 (D.D.C. 1981) ("assuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award"); Scott v. Prudential Sec. Inc., 141 F.3d 1007, 1016 (11th Cir. 1998) (courts will not vacate awards if arbitrators had "any reasonable basis" for denying the requested postponement); DVC-JPW Investors v. Gershman, 5 F.3d 1172, 1174 (8th Cir. 1993) ("[i]f any reasonable basis exists for the arbitrators' decision not to postpone a hearing, we will not intervene."); Bisnoff v. King, 154 F. Supp. 2d 630, 637 (S.D.N.Y 2001) ("[t]he expeditious resolution of disputes requires that arbitrators be provided with broad discretion and great deference in their determinations of procedural adjournment requests").

The standard of maximum deference also applies equally to situations where an adjournment based on counsel's asserted unavailability has been denied.  The decisions in

-22-

Alexander Julian, Inc. v. Mimco, Inc., No. 00 CIV 4131, 2001 U.S. Dist. LEXIS 5744 (S.D.N.Y. May 4, 2001), aff'd, 29 Fed. App'x 700 (2nd Cir. 2002) and in Fairchild & Co., Inc. v. Richmond, Fredericksburg and Potomac Railroad Co., 516 F. Supp. 1305 (D.D.C. 1981) provided examples.

In Alexander Julian, the petitioner moved to vacate an arbitration award on the asserted ground that the arbitration panel committed misconduct by refusing to adjourn the hearings based on an attorney's unavailability. In that case the petitioner had sought an adjournment because its arbitration counsel had trials in other matters on the proposed hearing dates and was therefore unavailable. Id. at *3. The claimant objected to the adjournment request on the basis that its business would be prejudiced by the delay. Id. at *8. The arbitration panel credited the claimant's argument and denied the adjournment request. Id. The panel found that the petitioner's counsel was from a law firm consisting of approximately ten (10) or more lawyers who were capable of handling the arbitration, that the petitioner had approximately one month to arrange for a substitute for the unavailable attorney, and that the adjournment request should therefore be denied. Id.

Upon review of the tribunal's decision, the United States District Court for the District of New York made clear that postponement decisions are entitled to "great deference." Id. at *9. The Court went on to deny the motion to vacate because the arbitrator "had a reasonable basis for denying" the adjournment request. Id. at *10. The decision by the United States District Court was then affirmed by the United States Court of Appeals for the Second Circuit. Alexander Julian, Inc. v. Mimco, Inc., 29 Fed. App'x 700, 703 (2nd Cir. 2002)

Similarly, in Fairchild, the petitioner filed a motion to vacate an arbitration award claiming, among other things, that the arbitrators committed of misconduct refusing to postpone

-23-

proceedings for three months to permit the petitioner to be adequately represented by counsel.
Fairchild, 516 F. Supp. at 1313. The petitioner claimed that, due to a series of circumstances that
had led to the withdrawal of its counsel, it was unable to secure new counsel until shortly before
the hearings were scheduled to begin. Id.

The United States District Court for the District of Columbia denied the motion to vacate
on the basis that the arbitration tribunal had the benefit of hearing all of the parties' respective
arguments for and against postponement, and had articulated at least a reasonable basis for its
considered denial of the petitioner's adjournment request. In so holding the Court recognized:

> the expeditious resolution of a dispute remains one of the principal
> purposes for referring the matter to arbitration, and the statute
> limits the Court's review to a determination as to whether the
> arbitrators were guilty of misconduct in refusing a postponement.
> As such, it follows that arbitrators are to be accorded a degree of
> discretion in exercising their judgment with respect to a requested
> postponement. Therefore, assuming there exists a reasonable basis
> for the arbitrators' considered decision not to grant a
> postponement, the Court will be reluctant to interfere with the
> award on these grounds.

> [Id. at 1313-14].

Here, as was the case in Fairchild and Alexander Julian, the Court cannot disturb the
arbitration award because the Arbitrator set forth ample reasonable grounds for his decision on
Lurgi's adjournment request. Judge von Kann had the benefit of argument from both sides and
articulated six sound justifications for his postponement decision:

- Lurgi would not provide any specific information (e.g., a doctor's evaluation) to
  describe Mr. Hilliard's condition, to shed light on how long he might be
  unavailable, or to explain whether he would be able to help prepare the rest of
  Lurgi's arbitration team for the hearings;

- Lurgi would give no colorable reason why Mr. Azzinari and Mr. Schrama (the
  two other counsel on Lurgi's litigation team) were not prepared and available to
  handle the arbitration together, given the involvement they already had in the
  case;

-24-

- Lurgi was represented by two law firms with a total of 127 lawyers. If Mr. Azzinari and Mr. Schrama could not/would not proceed without Mr. Hilliard, there were certainly other litigation partners in their firms who could get prepared to serve as lead counsel with Mr. Azzinari's and Mr. Schrama's support, especially since the first hearing date would be adjourned and there would now be lengthy breaks between some of the hearing dates which were previously not built into the schedule;

- Hake's parent company faced potential liquidation if the arbitration did not proceed promptly, and "Lurgi [had] not shown, nor even contended, that this prejudice [was] not real";

- The parties had specifically contracted for a "fast track" resolution of their dispute. By agreeing to this form of resolution, Lurgi assumed the inherent risk that the arbitration would proceed quickly and that it would need to replace counsel quickly if unforeseen circumstances required; and

- Unless the hearing started on September 19, 2005, the arbitrator would be unable to issue an award prior to January 2006.

[Petr. Exh. 2, Arbitration Order No. 6 at pp. 6-7].

As set forth above, Mr. Azzinari had from the outset identified and comported himself as co-representing Lurgi with Mr. Hilliard and Mr. Schrama in the JAMS proceedings. Critically, Lurgi never gave Judge von Kann any legitimate explanation why Mr. Azzinari and Mr. Schrama could not conduct the hearings for Lurgi in Mr. Hilliard's absence, especially given the size and resources of their respective law firms and the appreciable relaxation of the schedule for hearing dates that Judge von Kann was in fact granting Lurgi. (See Subpoint 2, infra). To this date, Lurgi has still not offered any such explanation, let alone an explanation sufficient for this Court to conclude that Judge von Kann was guilty of misconduct based upon the information he had before him at that time. See Julian, supra., 29 Fed. App'x. 700, 703 (misconduct only exists where there is proof of gross error or bad faith).

In this vein, Lurgi's attempt to create the misimpression that Judge von Kann "elevated his own schedule" over Lurgi's rights, or erred by not securing another arbitrator from JAMS who could conduct the hearings later in 2005 or 2006, is a diversion from the gravemen of Judge

-25-

von Kann's ruling. Since Lurgi had failed to demonstrate why the rest of its arbitration team could not proceed with the arbitration in September, Judge von Kann's own unavailability later in November and December 2005 was not, in and of itself, a dispositive factor in his ruling. Lurgi's reliance on cases like <u>Tube & Steel Corp. v. Chicago Carbon Steel Products</u>, 319 F. Supp. 1302, 1304 (S.D.N.Y. 1970), where the arbitrators denied a week-long adjournment request without explanation, perhaps due to their own summer plans, is totally misplaced and inappropriate.

Moreover, Lurgi's after-the-fact attempt to claim that Hake's parent company would not have faced potential liquidation if hearings were postponed indefinitely is nothing but a subterfuge. Hake's representation that the original provision in Order No. 2 for a decision to be rendered by October 31, 2005 was crucial to its ability to obtain necessary capital and reach work-outs with lenders was absolutely true and continued to be true at all times. Carwile Decl., ¶¶ 6-8. The materials that Mr. Schrama has now produced with his current declaration showing a limited improvement in Matrix's financial condition towards the end of 2005 corroborate, rather than disprove, the statements Hake made to the Arbitrator on this issue and that the Arbitrator properly credited. <u>See</u>, <u>e.g.</u>, Schrama Decl., Exh. D. (Matrix 2005 Annual Statement with preface from President and Chief Executive Officer stating "Fiscal 2005 has been a difficult year and one we would rather not repeat. The changes we have made in late fiscal year 2005 and continuing into the first half of fiscal year 2006 will, however, put the Company in a position to return to profitable growth . . . We are hopeful that the disputed receivables will be resolved by the end of fiscal year 2006, which, when coupled with the planned liquidity events discussed earlier and cash flow from operations, would allow us to be in a position to pay off most, if not all, of our bank debt.") Judge von Kann properly credited Hake's claim of prejudice in tailoring

an adjournment for Lurgi, and for modifying the schedule of hearing dates in the manner that he did.

Furthermore, Lurgi fails to cite a single case under the FAA or the MAA where an arbitrator articulated a reasonable justification for denying an adjournment request, yet the reviewing court nevertheless deemed that denial to constitute misconduct. Indeed, no such case exists. The two state court decisions that Lurgi does cite involving the unavailability of counsel, City of New Haven v. Local 884, Council 4, AFSCME, AFL-CIO, 677 A.2d 1350, 1353 n. 4 (Conn. 1996) and International Components Corp. v. Klaiber, 59 A.D.2d 853, 854 (N.Y. App. Div. 1977), are wholly distinguishable from this case.

In the City of New Haven case, the Court vacated an arbitration award where the arbitrator had denied an adjournment request for no colorable reason, even though the petitioner had given definitive testimony as to the nature of the attorney's illness, the fact that no other attorney was familiar with his client's case, and the inability to find a replacement. City of New Haven, 677 A. 2d at 1352. As reflected by Order No. 6, Lurgi never provided the Arbitrator with any specific information concerning Mr. Hilliard's condition, whether or when he might be able to continue working on the matter in some capacity, or whether he would be able to work with Lurgi's other attorneys, Mr. Azzinari and Mr. Schrama, as they handled the arbitration. Petr. Exh. 2, Arbitration Order No. 6 at p. 6, ¶2. More importantly, and in stark contrast to the facts presented in City of New Haven, the Arbitrator in this case had reasonable grounds to understand that there were two other experienced attorneys on Lurgi's arbitration team, Mr. Azzinari and Mr. Schrama, who had been involved in the case all along and who were capable of proceeding with September hearings without Mr. Hilliard. Id. at pp. 6-7. Lurgi may now wish for this Court

to substitute its judgment for that of the Arbitrator on that issue, but the FAA simply does not authorize such second-guessing.

The decision in International Components Corp. likewise provides no support for Lurgi's arguments. There, the court granted a motion to vacate where the arbitrator had given no colorable reason for denying an adjournment request, even though the petitioner had provided specific information about the reason for the attorney's unavailability (i.e., his wife's surgery for cancer) and even though that attorney was, himself, a material witness to the case. International Components Corp., 59 A.D. 2d 853, 853-54. In this case, Lurgi failed to demonstrate why its other arbitration counsel could not proceed with the arbitration. Nor has Lurgi identified a single piece of evidence that it was unable to present as a result of Mr. Hilliard's absence.

Given the standard of maximum deference that controls these cross-petitions, and given the six reasons the Arbitrator gave for his decision in Order No. 6, there is simply no precedent and no factual basis for this Court to find that Judge von Kann was guilty of misconduct in ruling as he did on Lurgi's adjournment request.

**2.     Lurgi has Failed to Demonstrate that It was Deprived in Any Way of a Fair Hearing.**

The remainder of the cases cited by Lurgi all involved situations where, unlike here, the denial of an adjournment request prevented a party from presenting material evidence and, thus, deprived that party of a fair hearing. Petr. Memorandum at pp. 16-18. Lurgi has failed to cite a single piece of evidence that it was unable to present as a result of any of the Arbitrator's rulings. Nor did it make any claim below. Unlike the cases cited by Lurgi such as Tempo Shain Corp., Allendale Nursing Homes, Omega Contracting, etc., where the denial of an adjournment precluded a party from presenting pertinent and material evidence, no such prejudice occurred

here. Present counsel's net statement that Lurgi was deprived of presenting pertinent or material evidence during the hearings simply finds no support in the record.

**POINT IV**

**LURGI NEVER OBJECTED TO STARTING THE
ARBITRATION HEARING WITHOUT ITS EXPERT
BEING PRESENT AND CANNOT BE HEARD TO CLAIM
IT SUFFERED PREJUDICE ON THIS BASIS.**

Lurgi's attempt to now argue that it was forced to start the arbitration hearing without its expert present is entirely improper because Lurgi <u>never</u> raised this issue before the Arbitrator. It is well settled that a party to an arbitration may not seek court review of the arbitration award on the basis of claims that were not raised to the arbitrator. <u>District 17, United Mine Workers v. Island Creek Coal Co.</u>, 179 F.3d 133, 140 (4th Cir. 1999); <u>United Food & Commercial Workers Local 400 v. Marval Poultry Co.</u>, 876 F.2d 346, 352-53 (4th Cir. 1989); <u>Int'l Chemical Workers Union Local 566 v. Mobay Chemical Corp.</u>, 755 F.2d 1107, 1112 (4th Cir. 1985).

This principle was explained succinctly and thoroughly in <u>Nat'l Wrecking Co. v. Teamsters Local 731</u>, 990 F.2d 957, 960-61 (7th Cir. 1993) where the Seventh Circuit recognized:

> Parties . . . cannot stand by during arbitration, withholding certain arguments, then, after losing the arbitration, raise such arguments in federal court. <u>We will not tolerate such sandbagging</u>. Permitting parties to keep silent during arbitration and raise arguments in enforcement proceedings would undermine the purpose of arbitration, which is to provide a fast and inexpensive method for the resolution of labor disputes.

(emphasis added)(internal citation and quotation marks omitted).

The record here demonstrates that Lurgi <u>never</u> took the position before Judge von Kann that it could not start the arbitration hearing without Mr. Hembree being present. Lurgi's petition is bereft of any citation to the contrary. In fact, as demonstrated by the September 28, 2006

-29-

hearing transcript, Lurgi took no exception to moving forward with fact testimony at the hearing

without Mr. Hembree present:

> MR. HART: Your Honor, if we didn't have his health issue,
> frankly, I think I would be prepared to finish this matter on the 7th,
> as originally scheduled. So from my standpoint, in terms of
> presenting the fact case, there is, I am not, you know, we will go
> proceed and be done. In fact, I had - -
>
> ARBITER VON KANN: It really boils down to Hembree, and if
> he can't do it, how feasible is it or isn't it for somebody else there
> to pick up and how quickly.
>
> MR. HART: And I guess I would say this, Your Honor, to make it
> clear, I would not want to put off any other part. In terms of this
> hearing, I want to present everything, but that.
>
> ARBITER VON KANN: Right.
>
> MR. HART: There's no reason that we don't want, I want to do
> that because witnesses disappear and everything. The only
> restriction we have, frankly, would be me crossing Mr. Wachter
> and me putting Mr. Hembree on direct, John [Preziosi] taking his
> deposition and crossing him.

9/28/05 Arbitration Tr. 1445:4 to 1446:2 (emphasis added). See also pp. 13-16, infra.

        In summary, Lurgi cannot contend that it suffered prejudice by virtue of the arbitration

having commenced without Mr. Hembree being present when Lurgi never even presented any

such argument to Judge von Kann.

        Nor has Lurgi demonstrated that it was prejudiced by the Arbitrator's decision to allow a

43-day adjournment in order for Mr. Deller's to "substitute" for Mr. Hembree and to prepare

himself to testify. As evidenced by the September 29, 2005 transcript, Mr. Dellers and Lurgi's

counsel agreed to that being enough time for Mr. Dellers to prepare for the hearing. Ultimately,

the Arbitrator found Mr. Dellers' testimony to be quite effective, leading to the rejection of all of

Hake's delay and most of Hake's constructive acceleration claim in the Final Arbitration Award.

-30-

Petr. Exh. 6, Final Award at p. 29. Lurgi's motion to vacate on the grounds of Mr. Hembree's asserted health condition has no basis in law or fact and must be rejected.

**POINT V**

**LURGI'S ATTEMPT TO RAISE A POINT CONCERNING
HAKE'S FEE APPLICATION IS LEGALLY IMMATERIAL**

Lurgi has not asserted any grounds for seeking vacatur other than, purportedly, the Arbitrator's adjournment rulings with respect to Mr. Hilliard and Mr. Hembree. Judge von Kann's interim award with respect to attorney's fees was totally unrelated and legally immaterial to the rulings now challenged. Furthermore, Hake withdrew its fee application not because of issues of merit,[6] but because of the additional amount of time Hake feared the process would take to obtain a final ruling on its fee application. For the same reason, namely the issuance of a final award without further delay, Hake also waived its right to pursue Lurgi for over $40,000 in Lurgi's share of the JAMS arbitration fees, which Lurgi refused to pay and Hake had to advance on Lurgi's behalf in order for the Interim Award to be released in December 2005. Petr. Exh. 6, p. 34 These matters all have no bearing on the issues presented by the instant petition and cross-petition.

---

[6] An award of attorneys fees to Hake would have been meritorious under the language of paragraph 25.10 of the Subcontract, in which the parties gave the Arbitrator seeming discretion to award attorney's fees without necessarily finding bad faith. Given the discretion for which paragraph 25.10 seems to provide, and given the fact that proof for Lurgi's defenses on major claims, such as Hake's claim for compensation for extra work, was flimsy to non-existent, it would not have been error for the Arbitrator to have granted Hake's fee application. Regardless, that never occurred and it is conjecture for Lurgi to now argue how the Arbitrator would have eventually ruled on Hake's fee application had it not been withdrawn.

-31-

## CONCLUSION

For the foregoing reasons, Hake respectfully requests that the Award be confirmed and that Lurgi's petition be denied.

Respectfully Submitted,

/s/ Charles H. Carpenter
Charles H. Carpenter (D.C. Bar No. 432004)
PEPPER HAMILTON LLP
Hamilton Square
600 Fourteenth Street, N.W.
Washington, D.C.  20005-1345
Tel. (202) 220-1665

/s/ Jonathan M. Preziosi
Jonathan M. Preziosi
Angelo A. Stio III
Pepper Hamilton LLP
300 Alexander Park
Princeton, New Jersey  08543-5276
Tel. (609) 951-4125

Attorneys for Respondent Cross-Petitioner Frank W. Hake, Inc.

Dated:  April 24, 2006

PR: #590821 v6 (CNVP06!.DOC) 128526-6