IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ALLIED ENVIRONMENTAL SOLUTIONS, INC., formerly known as Lurgi Lentjes North America, Inc.,<br><br>Petitioner,<br><br>v.<br><br>FRANK W. HAKE, INC.,<br><br>Respondent. | Civil Action No. 06-0527-RMU |

**MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO RESPONDENT'S CROSS-PETITION TO CONFIRM AWARD AND REPLY TO RESPONDENT'S OPPOSITION TO PETITION TO VACATE ARBITRATION AWARD**

The papers filed by Hake are most notable for what they do not say and their concessions from what they do say:

• Hake's brief does not address Lurgi's numerous citations to precedent interpreting the standard for vacatur of an arbitration award (Md. Code Ann, Cts. & Jud. Proc. § 3-224(b)(4) and 9 U.S.C. § 10(a)). Nor does Hake address the cases that have vacated an award in much less compelling circumstances than those presented here where Lurgi lost both its lead trial counsel and its only expert consultant and expert witness on the eve of trial.

• Hake concedes that its trial team (attorneys and expert consultant, Walter Wachter) had approximately eighteen *months* to prepare its case against Lurgi, while Lurgi's replacement lead counsel had only eighteen *days* to learn and prepare its case.

• Hake concedes that its expert was available and present for each day of the arbitration hearing, while Lurgi was left without a technical consultant for purposes of assisting

counsel in a proceeding based almost entirely on highly technical issues and details drawn from several hundred thousand pages of records

- Hake concedes that the Arbitrator subsequently forced Lurgi to accept a replacement expert witness of the Arbitrator's choosing.

- Hake even concedes that on the discrete issues for which Lurgi's replacement expert, Stephen Dellers, was given time to prepare, Lurgi prevailed. That concession alone demonstrates that had Lurgi been given a fair opportunity to present all its claims and defenses, the outcome in this case may well have been substantially different.

- Most important, perhaps, Hake concedes that the Arbitrator's six articulated "justifications" for denying Lurgi's request for a reasonable adjournment and continuance are drawn from his September 2, 2005 "Order No. 6." Hake concedes that document is dated two weeks before anyone knew that Lurgi's key witness (and trial team member with the greatest substantive knowledge of the case), Willis Hembree, would develop a serious cardiac condition that forced his complete withdrawal from the case. Thus, Hake concedes that the Arbitrator never adequately considered the loss of Hembree's services to Lurgi's ability to present its case during the arbitration proceeding.

Indeed, the Arbitrator's "justifications" for denying Lurgi's request for a continuance speak only to Mr. Hilliard's sudden withdrawal as lead counsel. None of the Arbitrator's articulated grounds for denying a continuance are reasonably justified in light of the circumstances of extreme prejudice visited upon Lurgi before the arbitration hearing commenced, namely, the loss of *both* its lead counsel and its key witness. The Arbitrator wholly ignored the cumulative impact of these two losses.

In essence, Hake does not, and cannot contest, that the impact on Lurgi from the loss of its lead counsel and its only expert consultant and witness is no different than had those gentlemen perished in an airplane crash within two weeks of the trial. While the loss of either individual should have been sufficient to grant a continuance of the hearing, the loss of both compelled a continuance of the hearing.

Hake's cross-petition to enforce the award also never addresses the substantive case law set forth in Lurgi's memorandum in support of its petition. That memorandum set forth case after case in which courts vacated arbitrator awards for unreasonably refusing to grant a continuance upon a showing of good cause. Hake's silence on this issue is resounding. It is beyond cavil that the facts presented in those cases pale in comparison to the circumstances supporting a reasonable continuance in this case. Not one of the cited cases in which an award was vacated comes close to the circumstances justifying vacatur in this case. Thus, if vacatur was warranted in those cases, it is mandated in this instance. Hake's decision to avoid any discussion of those cases speaks volumes.

Given these unprecedented circumstances, the Arbitrator's decision to deny Lurgi's reasonable request for a continuance amounted to misconduct under the Federal Arbitration Act and satisfies the statutory grounds for vacatur of his award. *See* 9 U.S.C. § 10(a)(3). Indeed, the Arbitrator did exactly what this Court (and others) has strictly prohibited — he allowed "the pursuit of an expedient adjudication to outweigh [his] obligation to ensure a just and fair one." *See Naing Int'l. Enters., LTD v. Ellsworth Assoc., Inc.*, 961 F. Supp. 1, 5 (D.D.C. 1997).

Hake's concessions, coupled with unrebutted evidence of arbitrator misconduct, underscore that Respondent's cross-petition to confirm the award must be denied, that the

arbitration award must be vacated, and that the matter should be remanded to a different JAMS arbitrator for a new arbitration proceeding on the merits.

## ARGUMENT

A. **"Maximum Deference" Is Only Accorded An Arbitration Award In The Absence Of Misconduct. The Arbitrator Committed Misconduct Under The Plain Terms Of The Federal Arbitration Act And The Maryland Uniform Arbitration Act. Thus, No Deference Is Owed And The Award Should Be Vacated.**

Hake's legal argument in defense of the arbitration award misses the mark — Hake ignores that statutory requirement that an award be vacated when the arbitrator failed to grant a postponement of the hearings upon reasonable grounds shown. Instead, Hake repeatedly emphasizes a line of cases that holds an arbitrator's award is entitled to "maximum deference" by reviewing courts. *See, e.g., ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455 (10th Cir. 1995). Those cases, however, are inapposite to the situation presented here, which goes to the Arbitrator's failure to grant a reasonable postponement for good cause shown, and not the substance of his decision on the merits.[1]

The grounds for vacating an award are statutory, and generally do not relate to the arbitration *decision* itself, but rather to the *conduct of the arbitrator* which materially affects the proceedings. If the statutory grounds for vacatur are satisfied, a court must vacate an arbitrator's decision and award. *Id.*; *Transit Cas. Co. v. Trenwick Reinsurance Co.*, 659 F. Supp 1346, 1354

---

[1] As a general matter, arbitrators are given significant discretion in rendering their decisions, and courts will not review an arbitrator's decision for errors of law or adequacy of evidence—courts will defer to an imperfect ruling even when such errors appear on the face of the award. *See, e.g., OPEIU v. WMATA*, 724 F.2d 133, 137 (D.C. Cir. 1983). Nevertheless, the deference owed to arbitrators "is not the equivalent of a grant of limitless power." *See Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.*, 334 F.3d 721, 725 (8th Cir. 2003), quoting *Leed Architectural Prods., Inc. v. United Steelworkers of Am., Local 6674*, 916 F.2d 63, 65 (2d Cir.1990); *see also Matteson v. Ryder Sys. Inc.*, 99 F.3d 108, 113 (3d Cir.1996)("the courts are neither entitled nor encouraged simply to 'rubber stamp' the interpretations and decisions of arbitrators").

(S.D.N.Y. 1987), *aff'd mem.*, 841 F.2d 1117 (2d Cir. 1988)(where there is a "denial of fundamental fairness of the arbitration proceeding" a resulting award must be vacated); *Tempo Shain Corp. v. Bertek, Inc.*, 120 F.3d 16 (2d Cir. 1997)(same). Hake's brief conveniently ignores the statutory standard for vacatur when an arbitrator commits misconduct as defined under the plain language of the Federal Arbitration Act, 9 U.S.C. § 10(a),[2] which provides that an arbitrator's failure to grant a postponement under circumstances reasonably calling for such postponement requires that the award be vacated. So, too, Maryland law (the substantive law governing the underlying arbitration proceeding) provides that the "court *shall* vacate an award if ... [t]he arbitrators refused to postpone the hearing upon sufficient cause being shown for the postponement....") Md. Code Ann, Cts. & Jud. Proc. § 3-224(b)(4) (emphasis added). Hake's argument — that *absent misconduct*, arbitrators' decisions normally are accorded significant deference — simply misses the mark. It does not address the situation presented in this case, which goes to the Arbitrator's decision to force Lurgi to trial without its lead counsel and only consulting expert and witness.

    Hake's blithe dismissal of Lurgi's analogy to losing its trial team in a plane crash as "egregiously misleading" and "hyperbole" never substantively addresses or refutes the simple and inescapable facts that, due to no fault of its own, Lurgi was left: 1.) without a lead counsel; 2.) without its key expert witness, litigation consultant, and trial team member with the greatest substantive knowledge of the evidence; 3.) with only days to prepare for a complex, multi-million dollar arbitration proceeding for which its opponent, Hake, had spent more than year preparing; and 4.) with a diminished ability to fairly present its claims and defenses and

---

[1] "[T]he United States court in and for the district wherein the award was made may make an order vacating the award upon the application of any party to the arbitration ... *where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown....*" See 9 U.S.C. § 10(a) (emphasis added).

5

effectively cross-examine witnesses. The Arbitrator declined to grant a reasonable continuance even though he was fully apprised of these facts. The resulting substantive and procedural disadvantages forced upon Lurgi during this arbitration are obvious, significant, and patently prejudicial. The Arbitrator failed to weigh appropriately these circumstances in light of basic notions of fairness and justice, fundamental requirements of due process, and the requirements of both the Federal Arbitration Act ("FAA") and the Maryland Uniform Arbitration Act ("MUAA"). The Arbitrator's failure denied Lurgi a fair opportunity to present evidence in support of its claims and defenses and to examine and cross-examine witnesses that appeared at the hearings. Significantly, on issues where Lurgi could present expert testimony from its expert witness, it largely prevailed. This fact alone demonstrates the fundamental prejudice suffered by Lurgi.

In this case, the deference normally accorded an arbitration award is superseded by the statutory grounds for vacatur. Simply put, Lurgi's rights were substantially prejudiced when the arbitrator refused to postpone the hearing after Lurgi presented more than adequate cause for a continuance. The violation of 9 U.S.C. 10(a), coupled with the prejudice to Lurgi, requires vacatur and remand of this matter to a new arbitrator for hearing.

> **B.    None Of The Arbitrator's Six Articulated Grounds Justify His Denial Of A Continuance Upon Lurgi's Showing Of Good Cause.**

The central argument in Hake's brief is that the Arbitrator articulated six "justifications" for refusing to continue the arbitration, setting forth "ample reasonable grounds for his decision on Lurgi's adjournment request." *See* Hake Brief at 24. Given such justifications, Hake argues, the Court is obliged to defer to the Arbitrator's judgment. Hake is both legally and factually wrong.

First, it is notable that these six grounds are all drawn from the Arbitrator's September 2, 2005 Order No. 6. *See* Petition to Vacate Ex. 2. This is crucial, as Lurgi only learned of Hembree's unavailability due to illness on *September 15*. *See* Petition to Vacate Ex. 3, September 16, 2005 letter from Kevin Hart to Arbitrator von Kann at 4. Thus, these "justifications" demonstrate that the Arbitrator never considered the prejudice Lurgi would suffer if forced to participate in the arbitration proceeding without its key expert, litigation consultant, and repository of institutional knowledge about the case, claims, and key documents. *See* Petition to Vacate Ex. 7, Decl. of Willis Hembree, at ¶¶11-12.

Second, Hembree's role and importance to Lurgi's trial team cannot be overstated. *Id.* In addition to providing expert testimony, Hembree had the primary responsibility for reviewing and digesting both parties' voluminous document productions and identifying key documents for witness examinations. In essence, Mr. Hembree was second chair on Lurgi's trial team. Losing Mr. Hembree was at least as damaging and as prejudicial as losing its lead counsel, Craig Hilliard, but *none* of the Arbitrator's professed "justifications" acknowledges this blow to Lurgi's ability to fairly present its case.

Third, the Arbitrator never considered the cumulative impact of the loss of Messrs. Hilliard and Hembree. The loss of either person was more than sufficient grounds for a postponement. The cumulative loss of both compelled a postponement. Indeed, the Arbitrator should have granted it *sua sponte*.

Hake relies almost solely upon the following six factors that the Arbitrator considered in reaching the decision found in Order No. 6—none of which are availing.

1.   *The Parties Agreed To The Risks Of "Fast Track" Dispute Resolution*

The most important reason the Arbitrator declined to grant Lurgi a meaningful continuance was because the parties "assumed the risks" of arbitration, including the possible need to replace quickly any counsel who becomes unavailable. *See* Petition to Vacate Ex. 2 at 6. There is no doubt that when the parties agreed to arbitrate any dispute, they understood that the arbitration process would be more expeditious than litigation. They also understood that the proceeding would be fair. But, however, they nowhere agreed that they would be forced to proceed to hearing without their counsel of choice at the helm. Nor did the parties agree that a reasonable request for a postponement could be denied. Agreeing to expedite the dispute resolution process is very different from surrendering one's right to a fair proceeding and due process.

The case law provides that when a contract provides for arbitration under a specific set of rules, the rules are incorporated into the contract. *See Rainwater v. National Home Insurance*, 944 F.2d 190, 192 (4th Cir. 1991)(arbitration in accordance with AAA rules incorporates the rules into the agreement); *Reed and Martin, Inc. v. Westinghouse Electric Corp.*, 439 F.2 1268, 1273 (2d Cir. 1971) (same); and *St. Lawrence Explosives Corp. v. Worthy Brothers Pipeline Corp.*, 916 F. Supp. 187, 190 (N.D.N.Y. 1996) (same). The rules applicable to this arbitration include the Maryland Uniform Arbitration Act and the Federal Arbitration Act — both of which provide that the Arbitrator's failure to grant a reasonable request for a postponement require the vacatur of the resulting award. Thus, no party's agreement to arbitration can reasonably be interpreted to mean a binding commitment to proceed with an arbitration hearing at all costs-- regardless of circumstances that constitute substantial prejudice to one side. Rather, the Maryland UAA and the FAA are clear that an arbitrator's failure to reasonably grant a

continuance is misconduct and grounds for vacatur. 9 U.S.C. 10(a). In essence, Hake argues that Lurgi, by agreeing to arbitration, waived its rights to basic fairness and due process. That argument has no legal support. And, it defies commons sense.

Of all the errors that an arbitrator could commit during an arbitration hearing, the denial of a reasonable request for a continuance is subject to the strictest judicial scrutiny and constitutes statutory grounds for vacatur of the entire award—precisely because it undermines the fairness of the arbitration process. *See* 9 U.S.C. §10(a)(3); *Naing Int'l.*, 961 F. Supp. at 5 ("[N]either this Court nor the arbitration panel can allow the pursuit of an expedient adjudication to outweigh its obligation to ensure a just and fair one.") The Court cannot merit an Arbitrator's professed desire to "speed things along," if the result is the deprivation of a party's ability to fairly present its claims and defenses. *Hoteles Condado Beach v. Union De Tronquistas Local 901*, 763 F.2d 34, 39 (1st Cir. 1985) (The Arbitrator "must give each of the parties to the dispute an adequate opportunity to present its evidence and argument.") By exalting efficiency over fairness, the Arbitrator committed serious misconduct warranting vacatur of his award.

    2.  *Lack Of Specific Information Regarding Hilliard's Condition*

Hake argues that another reason the Arbitrator was justified in denying Lurgi's request for a continuance was because Lurgi did not provide a doctor's evaluation of Mr. Hilliard's condition to further explain the nature of his unavailability. *See* Hake Brief at 24. However, Lurgi provided both Hake and the arbitrator all information it had at the time regarding Mr. Hilliard's sudden withdrawal from the case, and neither Hake nor the Arbitrator requested any additional documentation or information about the nature of, or reasons for, his medical leave of absence. *See* Petition to Vacate Ex. 2, September 2, 2005 Order No. 6 at 4-5. At no time did the Arbitrator or Hake ever doubt the seriousness of Mr. Hilliard's condition that prompted his

9

abrupt withdrawal from the practice of law. All parties continued to act on the understanding that Mr. Hilliard would no longer serve in any capacity in the arbitration proceeding.

In an open proceeding like this one, there was (and is) no justification to subject Mr. Hilliard to unnecessary scrutiny and invasion of his privacy by exposing additional details surrounding his medical leave of absence. Mr. Hilliard's unavailability due to medical necessity was sufficient grounds for a meaningful continuance to allow replacement counsel to familiarize himself with the technical issues, voluminous record, and nuanced claims and defenses in this case. Instead, however, the Arbitrator saw fit to only grant Lurgi a brief continuance (less than two weeks)—in which time Lurgi needed to find replacement lead counsel for this complex, multi-day arbitration proceeding and to familiarize him with the massive record in this dispute. In so doing, the Arbitrator behaved unreasonably and contrary to the requirements of 9 U.S.C. §10.

> 3.   *Lurgi Had 127 Lawyers At The Stark And Wormser Firms From Which To Choose Its Replacement Lead Counsel.*

The Arbitrator stressed in Order No. 6 that Lurgi was represented by two law firms that had a combined total of 127 lawyers, including sixty-four partners, one or more of whom he presumed could "get up to speed" in the sixteen days before the hearings began. *See* Petition to Vacate Ex. 2 at 6-7. Hake's brief picks up this argument and repeatedly cites an unreported decision, *Alexander Julian, Inc. v. Mimco, Inc.*, No. 00 Civ 4131 U.S. Dist. LEXIS 5744 (S.D.N.Y. May 4, 2001), for the proposition that a party must be ready to replace its counsel at the last moment in an arbitration proceeding. In that case, an arbitration panel found that an adjournment was unnecessary to accommodate the trial schedule of one party's counsel and that one of his partners would have to step in and serve as replacement counsel for the scheduled hearing. That case, however, presents substantially different facts than those at issue here.

First, the only issue in *Alexander Julian* was of counsel availability—lead counsel for one party had a trial scheduled on the same day that the arbitration panel wished to proceed. Here, Lurgi presented the Arbitrator with evidence not only counsel unavailability, but also *witness* unavailability. When a witness or an indispensable party cannot attend an arbitration proceeding, failure to grant a reasonable continuance is consistently found to constitute grounds for vacatur. *See, e.g., Allendale Nursing Homes, Inc. v. Local 1115 Joint Board*, 377 F. Supp. 1208, 1213-14 (S.D.N.Y. 1974); *Harper Builders, Inc. v. Edens*, 318 S.E.2d 363, 365 (S.C. 1984); *Insurance Company of North America. v. St. Paul Fire & Marine Insurance Company*, 626 N.Y.S.2d 232 (N.Y. App. Div. 1995); *Leblon Consultants, Ltd. v. Jackson China, Inc.*, 459 N.Y.S. 2d 93, 94 (N.Y. App. Div. 1983); *see generally* Petition to Vacate at 15-18.

Moreover, the *Alexander Julian* case involved simple legal and factual issues regarding a licensing agreement that required only three hearing days. Both parties had only a month to prepare their cases from the date of the scheduling conference. It was within the realm of reason and replacement counsel's experience to assume the duties of his colleague with a month to prepare for that simple proceeding.

That is in sharp contrast to this case, however, where the parties spent months reviewing voluminous records and the arbitration proceeding itself was held over sixteen days of hearings. As the Arbitrator held here, "[t]he record in this case is huge, consisting of more than 4,000 pages of testimony and tens of thousands of pages of project records." *See* Interim Award at 2. Thus, the relative complexity of these cases is incomparable. Unlike *Alexander Julian*, this was not a simple case in which a seasoned litigator could simply "step in" and try the matter effectively. By way of analogy, while it is true that most doctors can perform standard treatments such as suturing a wound, not all doctors can simply walk into an operating theater

11

and perform open heart surgery on a patient with a complicated medical history. Expecting a replacement counsel to "step in" to a complex arbitration such as this, involving hundreds of thousands of pages of records and highly technical issues and factual disputes about mechanical and structural engineering tasks in a multi-million dollar construction project, is unrealistic and prejudicial.

The arbitrator's (and Hake's) blithe assumption that any one of the sixty-four partners of these firms (the majority of whom are transactional attorneys with little or no arbitration/litigation experience whatsoever) could simply "get up to speed" is simply absurd. No attorney, with eighteen days to prepare, could fairly present a case of comparable quality to that of Hake's litigation team (who had eighteen months to hone and prepare its case). Such statements typify and underscore the poor reasoning and judgment that the Arbitrator exhibited when considering Lurgi's request for a continuance.

    4.  *Messrs. Azzinari And Schrama Were Available To Serve As Lead Counsel*

The Arbitrator and Hake each make much of the fact that Martin Schrama, an associate attorney who assisted Craig Hilliard and Kevin Hart (replacement lead counsel) during the arbitration, and Glenn Azzinari, Lurgi's outside general counsel at the Wormser firm, were each available to participate in the hearing as lead counsel. *See* Hake Brief at 5, 7, 12-13, 25 and 27; Petition to Vacate Ex. 2 at 7. This misimpression is simply inaccurate.

Mr. Azzinari is not a trial lawyer. He did not attend a single deposition in the case. He did not work with the documents as a trial lawyer. Rather, he served in the capacity as an outside general counsel to Lurgi. He is not its litigation counsel. Mr. Azzinari was involved in the arbitration only in a general oversight capacity. Mr. Azzinari is primarily a transactional attorney and has no "first chair" litigation experience in this area. Although he was aware of the

dispute and counseled Lurgi from a business perspective, he was not involved in the day-to-day preparations of the litigation team. *See* Declaration of Glenn Azzinari, Esq. at ¶¶ 5; 9-11; 24-27, attached hereto as Ex. 1.

Mr. Schrama is a capable, but junior, litigation associate. He is neither a seasoned trial lawyer nor a partner at his firm. He has never had a lead role in a case approaching the magnitude of this case. Mr. Schrama served both Messrs. Hilliard and Hart ably in a supporting capacity, but neither he nor Lurgi would have felt comfortable thrusting an untried associate into the lead counsel role for this complex, multi-million dollar arbitration—especially given the extraordinary time constraints the Arbitrator forced upon Lurgi.

The fact remains that ultimately Lurgi was (and is) entitled to counsel of its choice—not the choice of the Arbitrator or its opponent in the arbitration. While both Messrs. Schrama and Azzinari are fine attorneys in their own right, neither was an appropriate choice to replace Craig Hilliard as lead litigation counsel.

     5.    *Hake And Its Parent, Matrix, Faced Liquidation Absent An Award By October 31, 2005.*

The Arbitrator relied upon Hake's uncorroborated (and now known to be erroneous) assertions of financial ruin unless an award was issued by October 31, 2005 as a basis for rejecting Lurgi's reasonable request for a continuance. Those assertions — which the Arbitrator never questioned or required to be corroborated — were not only substantively irrelevant when weighed against the inability of Lurgi to fairly present its case, but actually turned out to be untrue. In fact, Matrix was making money in 2005, and it successfully completed its restructuring before the Arbitrator issued his award. *See* Petition to Vacate at 7-8. As is obvious with the benefit of hindsight, Hake's October 31, 2005 "deadline" was of no actual significance

to the survival of Hake or its parent, and was merely used to pressure the Arbitrator to maintain the schedule despite Lurgi's loss of its counsel and key expert witness.

Regardless of the true state of Hake's finances (which are publicly available on the Matrix Internet web site), Hake's carefully worded declaration from its general counsel does not address the underlying legal issue—that the Arbitrator inappropriately credited and gave superior weight to one party's financial concerns over evidence of substantial prejudice to another party in the arbitration proceeding absent a continuance. Both Maryland law and the Federal Arbitration Act obliged the Arbitrator to ensure, at a minimum, the procedural fairness and impartiality of the arbitration process. By refusing Lurgi a reasonable continuance, he violated this duty. 9 U.S.C. §10(a).

      6.    *The Arbitrator's Own Schedule*

The Arbitration was originally placed on an expedited timetable in part to accommodate the convenience of the Arbitrator, who was involved in another arbitration and other matters between October 18, 2005 and late December 2005. *See* Petition to Vacate Ex. 2 at 5. Despite Lurgi's demonstrated hardship and prejudice after losing its lead counsel, the Arbitrator rejected Lurgi's request for a continuance and made plain that he would not continue or adjourn the proceedings due to these other commitments. *Id.* at 7. This remained true even after Lurgi's key expert witness and consultant, Willis Hembree, became unavailable due to his medical condition. In so doing, the Arbitrator's sixth "justification" was no justification at all. His denial of Lurgi's reasonable request for a continuance was based, at least in part, on considerations of the Arbitrator's own schedule and convenience. Moreover, and although not stated by the Arbitrator, the denial of the postponement based on the Arbitrator's schedule implicated the Arbitrator's own financial interest — he could have easily transferred the case to another

14

arbitrator. Indeed, at the time he denied the requested continuance, he had not heard any evidence and had not become substantively involved in the case. By making such considerations (including his own, unstated financial interest) a paramount concern over the reasonable availability and convenience of the parties, the Arbitrator created a "patent procedural unfairness" which serves as additional grounds for vacatur of the award. *See Tube and Steel Corp. of Am. v. Chicago Carbon Steel Prods.*, 319 F. Supp. 1302 (S.D.N.Y. 1970).

    C.    **Hake's Brief Does Not Address Lurgi's Numerous Citations To Precedent Interpreting The Standard For Vacatur Of An Arbitration Award (9 U.S.C. § 10(A)).**

Pages 15-18 of Lurgi's Petition to Vacate detail numerous cases in which arbitration awards were vacated by various courts upon showing that the arbitrator unreasonably denied a party's request for a continuance. In most of these cases, good cause was shown when a party unexpectedly lost the services a key fact or expert witness, or when counsel suddenly became unavailable for the proceeding. *See, e.g., City of New Haven v. Local 884, Council 4, AFSCME, AFL-CIO*, 677 A.2d 1350, 1353 n. 4 (Conn. 1996); *Allendale Nursing Homes, Inc. v. Local 1115 Joint Board*, 377 F. Supp. 1208, 1213-14 (S.D.N.Y. 1974); *Harper Builders, Inc. v. Edens*, 318 S.E.2d 363, 365 (S.C. 1984); *Insurance Company of North America. v. St. Paul Fire & Marine Insurance Company*, 626 N.Y.S.2d 232 (N.Y. App. Div. 1995); *Jaycox v Ekeson*, 857 P.2d 35 (N.M. 1993); *Bevona v. Superior Maintenance Co.*, 611 N.Y.S.2d 193 (N.Y. App. Div. 1994). Reasons for such continuances included medical emergencies, deaths in the family, or general unavailability of key witnesses or parties. *Id.*

In this case, **both** lead counsel, Craig Hilliard, and Lurgi's key expert witness/arbitration consultant, Willis Hembree, had medical and personal circumstances that prevented any

meaningful participation in the arbitration proceeding.[3] An arbitrator's refusal to grant a continuance to a party who suffered such a "double whammy" in the days leading up to an arbitration proceeding is unprecedented. Lurgi's opening papers presented the relevant case law. Hake simply ignored these compelling cases. Lurgi's entitlement to a reasonable continuance far exceeded any recognized justification for continuance in the precedent cited in Lurgi's petition for vacatur.

By failing to address any of the cases interpreting the standard for vacatur under 9 U.S.C. 10(a) in its brief, Hake apparently concedes the inescapable conclusion that if courts from across the country uniformly interpreted the FAA to vacate arbitration awards under the circumstances presented in those cases, vacatur is mandatory given Lurgi's situation in this instance.

> D. **Lurgi Preserved Its Objections To The Arbitrator's Rulings. The Arbitrator Made Clear He Would Not Change His Mind About A Continuance Regardless Of Circumstance Or Prejudice, So It Was Futile For Lurgi To Object Repeatedly.**

A cursory inspection of the record belies Hake's assertion that Lurgi never presented the Arbitrator with objections and concerns of prejudice regarding the arbitration schedule after Lurgi's request for a continuance was denied. In fact, Lurgi strenuously objected to the Arbitrator's refusal to adjourn/continue the proceedings after Mr. Hilliard's sudden withdrawal in late August. On September 16, 2005, Lurgi's replacement counsel, Kevin Hart, sent the Arbitrator a detailed, four-page letter reiterating his disagreement with, and objection to, the Arbitrator's Order No. 6, in which the Arbitrator provided only eighteen days for Mr. Hart to "catch up" to prepare and present Lurgi's case. *See* Petition to Vacate Ex. 3. Mr. Hart indicated that he would proceed with the hearing **under protest**, despite the overwhelming prejudice Lurgi

---

[3] In addition to his own health issues, Mr. Hembree was also dealing simultaneously with the loss of his younger brother from a heart condition similar to his own and his elderly mother's medical problems. *See* Petition to Vacate Ex. 7 (Decl. of Willis Hembree).

16

would suffer. *Id.* The Arbitrator, in his ruling and on telephone conferences with the parties, indicated that he would brook no compromise on scheduling, due to his own commitments and Hake's (unevidenced) financial pressure for an expedited award. *See* Supplemental Declaration of Kevin Hart at ¶ 5-6, attached hereto as Ex. 2. Mr. Hart renewed his objection on the first day of the hearings. *See* Tr. 1 at 26 (ensuring his September 16, 2005 letter was made part of the record).

Mr. Hart's letter also raised concerns about Willis Hembree's availability for the arbitration. Lurgi had learned the previous day that Mr. Hembree had suffered a "cardiac incident," and Mr. Hart promised to provide additional details when it learned more information. That same day, Mr. Hembree was being treated by a cardiologist and was directed to avoid all stress (including work) for two weeks pending a cardiac catheterization procedure to determine the severity of his condition. *See* Petition to Vacate Ex. 7 at ¶16. Lurgi's counsel consistently informed the Arbitrator of all new developments regarding Mr. Hembree's condition. *See* Ex. 2 at ¶ 4.

As more facts were learned about the severity of Mr. Hembree's personal medical condition, compounded by the sudden death of his younger brother, it became obvious that Mr. Hembree would not even be available to provide expert testimony, much less serve in the consultative capacity Lurgi had expected him to provide during the arbitration. *Id.* at ¶ 6. On September 29, 2005, the parties and the Arbitrator had a telephone conference during which this information was relayed. Rather than suspending the hearings to accommodate Mr. Hembree and Lurgi, the Arbitrator insisted on pressing ahead and required Mr. Hembree's colleague, Stephen Dellers, to serve as Lurgi's expert witness. *See* Petition to Vacate Ex. 8, Decl. of Stephen Dellers, at ¶8. Mr. Hart explicitly objected to the Arbitrator's ruling. *See* Petition to

Vacate Ex. 13 at Hearing Tr. 5 pg 1425 ("…I don't believe it's feasible, and I think it is prejudicial to my client to have an expert step into a complex matter like this in the type of timeframe Your Honor has set forth.")

The Arbitrator was compounding error on top of error by continually refusing to grant Lurgi the continuance to which it was so clearly entitled. Once the Arbitrator required Mr. Dellers to replace Mr. Hembree as Lurgi's expert, it was clearly futile to reiterate the same objections of prejudice that Mr. Hart had articulated in his letter and again on the record during the arbitration hearings. The prejudice to Lurgi was substantial and obvious, and Lurgi adequately preserved its objections for purposes of judicial review.

> E. **The Prejudice To Lurgi Resulting From The Synergistic Effect Of Losing Both Its Lead Counsel And Its Key Expert And Consultant Was Not Cured By The Arbitrator's Brief Continuances For Replacements To "Get Up To Speed."**

Nowhere in the record does the Arbitrator appear to consider the synergistic, prejudicial consequences to Lurgi from losing *both* its lead counsel and its key expert and consultant. Under the Arbitrator's already expedited schedule, both Hilliard and Hembree had spent the majority of the six months leading up to the hearing reviewing voluminous records and preparing Lurgi's case. *See, e.g.,* Petition to Vacate Ex. 7, Hembree Decl. at ¶10 (Hembree spent 70% of his time from April-August and approximately 660 hours on this case alone). After working hand in glove throughout this extended period, Hilliard and Hembree together developed and possessed substantially all of the institutional knowledge of the case: the key documents, the important issues, subjects for rigorous cross-examination, Lurgi's areas of strength, and Hake's areas of weakness. Their respective knowledge of the case was unique and irreplaceable on short notice.

The sudden unavailability of either Hilliard or Hembree represented a tremendous blow to Lurgi's ability to present its case and, in itself, provided proper grounds for a meaningful

continuance. The loss of both men at the eleventh hour was something from which Lurgi could not have been expected to recover without a substantial period of time in which to regroup. The brief continuances offered by the Arbitrator were manifestly inadequate for the replacements, Messrs. Hart and Dellers, to familiarize themselves with the substance of this complex, eight-figure dispute and to prepare properly Lurgi's claims and defenses. Lurgi's participation in the hearings was frequently reduced to a situation of "the blind leading the blind," as Mr. Hart had only a day to prepare his each of his fact witnesses and he had no expert consultant to rely upon during the hearings. *See* Petition to Vacate Ex. 9, Hart Decl., at ¶18, 21, 27-29. This is in stark contrast to the eighteen months that Hake's counsel and expert enjoyed preparing their case, supplemented by Mr. Wachter's attendance during each hearing day of the proceeding.

Lurgi's substantial disadvantage should have been obvious to, and corrected by, the Arbitrator before it prejudiced the entire proceeding. Instead, the Arbitrator offered only token continuances and demanded that both Lurgi's lead counsel and a replacement expert simply "get up to speed" in the interstitial periods between hearing days (thirteen days for Hart, a little more than a month for Dellers)—despite knowing that *months* were required to prepare adequately. The Arbitrator's failure to consider, much less correct, the prejudice to Lurgi from the loss of both of its key litigation team members is more than sufficient grounds for vacatur and remand. *See generally, Bevona*, 611 N.Y.S.2d at 195-96 (after employer had requested adjournment due to death in witness' family three days before hearing date; court noted "there is no question that respondent stated compelling grounds for adjournment of the arbitration proceedings….").

## CONCLUSION

The loss of Lurgi's lead counsel and its only consulting expert and witness in the fortnight before trial and the applicable arbitration laws compelled the Arbitrator to grant a

substantial postponement in order to avoid prejudice to Lurgi. The Arbitrator failed to grant that postponement. The Arbitrator's refusal to grant the postponement requires vacatur of the Award under Maryland law and federal law. Indeed, the Arbitrator's conduct here pales in comparison with a long line of cases vacating arbitration awards for failure to grant a postponement in circumstances far less dire than those presented here.

For the foregoing reasons, as well as those set forth in Lurgi's Memorandum in Support of Its Petition to Vacate the Arbitration Award, Lurgi respectfully urges the Court to deny Respondent's cross-petition to confirm the arbitration award, to vacate the award in its entirety, and to remand this matter for *de novo* hearings before a new JAMS arbitrator.

**Respectfully submitted,**

_____/s/_____
**James H. Hulme (D.D.C. Bar No. 323014)**
**Matthew M. Wright (D.D.C. Bar No. 474731)**
**ARENT FOX PLLC**
**1050 Connecticut Ave., NW, Suite 500**
**Washington, DC 20036-5339**
**Tel: 202-857-6144**

*Attorneys for Petitioner Allied Environmental Solutions, Inc., f/k/a/ Lurgi Lentjes North America, Inc.*