**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALLIED ENVIRONMENTAL SOLUTIONS, INC., formerly known as Lurgi Lentjes North America, Inc.<br><br>                                    Petitioner,<br><br>v.<br><br>FRANK W. HAKE, INC.,<br><br>                                    Respondent. | CIVIL ACTION NO. 06-0527-RMU |

**REPLY MEMORANDUM IN SUPPORT OF
CROSS-PETITION TO CONFIRM
JAMS ARBITRATION AWARD**

**TABLE OF CONTENTS**

Page

**TABLE OF AUTHORITIES** ................................................................................................... i

**I.**   LEGAL ARGUMENT ............................................................................................... 1

  A.   The Statutory Grounds for Vacatur Relied Upon by Lurgi Do Not, on their Face, Apply to this Matter. ........................................................................................ 2

  B.   Lurgi's Attempt to Scramble the Proper Standard of Review for the Court Must be Rejected. ................................................................................................... 2

  C.   In Examining the Record for Arbitrator Misconduct, the Court Cannot Consider Matters Never Raised Before the Arbitrator ........................................... 4

  D.   Judge Von Kann Had Ample Reasons for His Adjournment Rulings and Was Not Guilty of Misconduct .................................................................................. 5

  E.   The Standard of Review Does Not Permit the Reviewing Court to Substitute its Judgment for that of the Arbitrator. ................................................................ 11

  F.   Hake's Cross-Petition to Confirm the Award Must Be Granted ........................ 12

**II.**   CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

## CASES

ARW Exploration Corp. v. Aguirre, 45 F.3d 1455 (10th Cir. 1995)..................................................2

Bisnoff v. King, 154 F. Supp. 2d 630 (S.D.N.Y 2001)..............................................................3, 11

DVC-JPW Investors v. Gershman, 5 F.3d 1172 (8th Cir. 1993) .....................................................3

Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac Railroad Co., 516 F.
      Supp. 1305 (D.D.C. 1981) ...................................................................................................3

Health Serv. Management Corp. v. Hughes, 975 F.2d 1253 (7th Cir. 1992) ..................................5

Marsh v. Loffler Housing Corp., 648 A.2d 1081 (Md. Ct. Spec. App. 1994).................................2

OPEIU v. WMATA, 724 F.2d 133 (D.C. Cir. 1983)......................................................................11

Scott v. Prudential Sec. Inc., 141 F.3d 1007 (11th Cir. 1998)........................................................3

Sportasticks Inc. v. Bletz, Case No. 88 9293, 1989 U.S. Dist. LEXIS at #7-8 (N.D. Ill.
      1989) ....................................................................................................................................4

Tube & Steel Corp. of America v. Chicago Carbon Steel Products, 319 F. Supp. 1302
      (S.D.N.Y. 1970) ...................................................................................................................4

## STATUTES

9 U.S.C. §9   ...................................................................................................................................12

9 U.S.C. §10(a)(3).......................................................................................................................2, 3

## STATE STATUTES

Md. Cts. & Jud. Proc. Code Ann. §3-224(b)(4)..............................................................................2

Respondent/cross-petitioner Frank W. Hake, Inc. ("Hake") respectfully submits the following reply memorandum in further support of its cross-petition to confirm the JAMS Arbitration Award of March 20, 2006 (the "Award").

In its original petition brief, Lurgi withheld from the Court any reference to the six reasons that Judge von Kann gave in his 10-page opinion for not granting Lurgi an open-ended adjournment of the subject arbitration hearings. Lurgi also withheld from the Court the full extent of the schedule accommodations that Judge von Kann did, in fact, make for Lurgi. Instead, Lurgi had to spin its petition out of an incomplete and misrepresented account of what truly occurred in the JAMS proceedings.[1]

Lurgi has repeated the same pattern in its reply/opposition brief, but this time it has also mis-stated the applicable standard of review for the Court. For the reasons set forth below and in Hake's prior brief, Lurgi has failed to demonstrate arbitrator misconduct based upon the record that was actually before Judge von Kann. Furthermore, Lurgi cannot be permitted to urge arbitrator misconduct based upon matters that it failed to demonstrate, or even raise, before the Arbitrator.

## I.   LEGAL ARGUMENT

Lurgi has failed to meet its burden of proof on these cross-petitions. Judge von Kann gave ample reasonable grounds for not granting Lurgi the open-ended adjournments it requested. Based upon the totality of the circumstances before him, Judge von Kann instead followed the more judicious course of giving Lurgi an initial 13-day adjournment, coupled with lengthy breaks between the hearing dates that were not previously provided for, and then another

---

[1] Hake's cross-petition brief and exhibits provide a full and accurate account of the record below, (Hake Cross-Petition Memorandum at pp. 5-18), none of which Lurgi can dispute.

43-day adjournment when it became clear that Willis Hembree, PE, might not be testifying as Lurgi's expert.

### A. The Statutory Grounds for Vacatur Relied Upon by Lurgi Do Not, on their Face, Apply to this Matter.

As a threshold matter it should be noted that Lurgi is not even entitled to invoke 9 U.S.C. §10(a)(3) or §3-224(b)(4) of the Maryland Code, both of which provide for vacatur if an arbitrator "refused to postpone the hearing upon sufficient cause being shown," because Judge von Kann did in fact grant Lurgi two significant adjournments. Statutory grounds for vacatur are to be narrowly construed. See ARW Exploration Corp. v. Aguirre, 45 F.3d 1455, 1462 (10th Cir. 1995) (stating that the standard for review of an arbitration award is "among the narrowest known to the law" and refusing to vacate award under Federal Arbitration Act); Marsh v. Loffler Housing Corp., 648 A.2d 1081, 1085 (Md. Ct. Spec. App. 1994) (the Maryland General Assembly has established a policy in favor of the settlement of disputes through arbitration, and thus has severely limited the role of the courts in this process).

Precedent is non-existent for applying either of these statutes to a case where an adjournment was, as here, granted by an arbitrator to accommodate attorney and/or witness unavailability. For this reason alone, Lurgi's petition to vacate the Award must be dismissed.

### B. Lurgi's Attempt to Scramble the Proper Standard of Review for the Court Must be Rejected.

In any event, Lurgi's circular reasoning to the effect that an arbitrator's ruling on an adjournment request is "not entitled to deference if misconduct occurred" makes absolutely no sense.

Fortunately, the case law is clear as to what the Court's function should be on these cross-petitions. It is well-settled that if an arbitrator set forth "at least a barely colorable justification" for denying a postponement request, the decision cannot be deemed misconduct

under 9 U.S.C. §10(a)(3) and the award must be enforced. <u>Bisnoff v. King</u>, 154 F. Supp. 2d 630, 637 (S.D.N.Y 2001).

As the United States District Court for the District of Columbia has explained:

> "The arbitrary denial of a reasonable request for a postponement may serve as grounds for vacating an arbitration award, *SeeTube & Steel Corp. of America v. Chicago Carbon Steel Products,* 319 F.Supp. 1302 (S.D.N.Y. 1970). However, the expeditious resolution of a dispute remains one of the principal purposes for referring the matter to arbitration, and the statute limits the Court's review to a determination as to whether the arbitrators were guilty of *misconduct* in refusing a postponement. As such, it follows that arbitrators are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement. Therefore, assuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere on these grounds."

<u>Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac Railroad Co.</u>, 516 F. Supp. 1305, 1313-14 (D.D.C. 1981) (emphasis added). <u>See</u> <u>also</u> <u>Scott v. Prudential Sec. Inc.</u>, 141 F.3d 1007, 1016 (11th Cir. 1998) (courts will not vacate awards if arbitrators had "any reasonable basis" for denying the requested postponement); <u>DVC-JPW Investors v. Gershman</u>, 5 F.3d 1172, 1174 (8th Cir. 1993) ("[i]f any reasonable basis exists for the arbitrators' decision not to postpone a hearing, we will not intervene."); <u>Bisnoff</u>, 154 F. Supp. 2d at 637 (S.D.N.Y 2001) ("[t]he expeditious resolution of disputes requires that arbitrators be provided with broad discretion and great deference in their determinations of procedural adjournment requests").
It is only where an arbitrator has failed to articulate "at least a colorable justification" for his ruling on an adjournment request that the resulting award will be subject to vacatur based upon the statutory grounds of misconduct.

In summary, Lurgi's attempt to scramble the proper standard of review for this Court must be rejected. The Court need not look any further than to examine whether Judge von

-3-

Kann articulated "at least a colorable justification" for his adjournment rulings on the record. If the answer is in the affirmative, which it is, then the Award must be confirmed.

### C. In Examining the Record for Arbitrator Misconduct, the Court Cannot Consider Matters Never Raised Before the Arbitrator

Lurgi continues to assert matters that were never raised before Judge von Kann as a device to seek vacatur. In particular, Lurgi relies heavily on its new theory that Willis Hembree was the "second chair" of Lurgi's arbitration team, and that Lurgi needed Mr. Hembree to be present through all testimony in order for Lurgi to adequately cross-examine Hake's witnesses and for Lurgi to present fact witness testimony of its own.

Aside from the fact that this new theory is an artifice, it is outrageous for Lurgi to accuse Judge von Kann of misconduct for "failing to appreciate" that Mr. Hembree allegedly needed to be present during all fact testimony, when Lurgi never made any such claim during the arbitration. Quite to the contrary, fact witness testimony started and continued through September 2005 with Lurgi's attorneys simply stating that they would keep the Arbitrator advised as further information developed concerning Mr. Hembree's health and whether Mr. Hembree would be available in time for his anticipated expert testimony. Preziosi Decl., Exh. 10, 9/19/05 Arbitration Tr. 18:24-19:18.

As a matter of law, Lurgi cannot now assert new grounds for alleged misconduct that it never saw fit to raise before the Arbitrator. See Sportasticks Inc. v. Bletz, Case No. 88 9293, 1989 U.S. Dist. LEXIS at #7-8 (N.D. Ill. 1989). In its reply/opposition, Lurgi does not challenge this legal principle. In this vein, the Court must disregard all other material in Lurgi's declarations that Lurgi never presented to the Arbitrator. This would further include any alleged medical information about Mr. Hembree other than the solitary, two-line doctor's note on a prescription pad that Lurgi presented to Judge von Kann on September 28, 2005 (which

-4-

mentioned nothing about any alleged hospitalization in early September) right through to the present certification from Lurgi's co-counsel Glenn Azzinari, Esq., wherein Mr. Azzinari makes the absurd claim (despite representing himself to JAMS and to third parties[2] as Lurgi's co-counsel in the JAMS proceedings) that he is not a "litigator" and that this was "not his case," a stunt that Mr. Azzinari never attempted before Judge von Kann during the arbitration. See infra., pp. 6-8.

### D. Judge Von Kann Had Ample Reasons for His Adjournment Rulings and Was Not Guilty of Misconduct

Hake is not asking the Court to "rubber stamp" the Award as Lurgi wrongly states.  Rather, Hake is respectfully asking the Court to examine the circumstances actually presented to the Arbitrator, and to give proper deference to how the Arbitrator dealt with those circumstances in light of what Lurgi did, and did not, demonstrate.  The Court's examination of the record, moreover, must be measured by "the purpose of a court's function in confirming or vacating an arbitration award, ... which is severely limited." Health Serv. Mgmt. Corp. v. Hughes, 975 F.2d 1253, 1258 (7th Cir. 1992).

The record speaks for itself in establishing that Judge von Kann gave careful consideration to all information provided to him, and that he gave more than ample, colorable grounds for his adjournment rulings.  When Lurgi advised the Arbitrator that Craig Hilliard had taken a leave of absence, but was not in a hospital, there was no physician's note or other information of any kind to inform the Arbitrator as to how serious the condition was or whether Mr. Hilliard would return in a few days or a few weeks.  Judge von Kann noted in his Order No. 6 that "Lurgi has not provided any specific information (e.g. a doctor's evaluation or even an

---

[2] See Preziosi Decl., Exh. 24.

affidavit from Mr. Hilliard) concerning Mr. Hilliard's condition. Lurgi has not shown how long Mr. Hilliard will need to rest or when he may be able to resume full or partial work in this matter. There is no evidence before me that he will be unable to consult with other Lurgi counsel before and during the hearing, and perhaps even participate in the hearing in some fashion." Petr. Exh. 2, Arbitration Order No. 6 at p. 6.

In light of Mr. Hilliard's leave of absence, which was by all indications temporary, Hake agreed that it would consent to some adjournment. However, Hake could not consent to an indeterminate open-ended adjournment because an award by the Fall of 2005, as called for by JAMS April 2005 scheduling order, was critical to the debt restructuring that Hake's parent company, Matrix Services, had negotiated with its lenders. As Judge von Kann noted in his September 2, 2005 Order, Lurgi never contended that the financial prejudice to Hake of an open-ended adjournment was not real. Petr. Exh. 2, Arbitration Order No. 6 at p. 7.[3] Moreover, Hake's representations to the Arbitrator in this regard were 100% true. Carwile Decl., ¶¶6-8.

The Arbitrator then noted that Mr. Hilliard was not the only attorney on Lurgi's arbitration team. As Judge von Kann set forth in his opinion, "Mr. Schrama, a senior associate who has been on the case from the beginning and was expected to examine some witnesses at the hearing, is still available to do so. Mr. Azzinari, a law firm partner who has some arbitration and litigation experience, filed Lurgi's Answer and Counterclaim in this matter, and participated in the mediation, is, so far as the record shows, also available to participate in the hearing." Petr. Exh. 2, Arbitration Order No. 6 at p. 7.

---

[3] Nor did Lurgi raise any such contention at any subsequent time prior to the close of hearings.

Judge von Kann's Order No. 6 further noted that he had viewed the Wormser Kiely firm's website at that time. As of September 1, 2005, Mr. Azzinari's website stated that he was experienced in "commercial litigation and international arbitration, <u>having conducted or assisted in trials and proceedings</u> before the federal and state courts in New York, the International Court of Arbitration and the American Arbitration Association." Preziosi Decl., Exh. 17, Azzinari Firm Biography, viewed on 9/1/2005 (emphasis added). Glenn Azzinari never pretended then, nor at any time during the arbitration, that he was "not a litigator" or that "this was not his case." Lurgi's statement in its reply/opposition brief that Mr. Azzinari is not a litigator, or in the alternative that he was not familiar with the case, is truly specious and was certainly never demonstrated to the Arbitrator.

Taking into account all of the foregoing circumstances, Judge von Kann adjourned the first hearing date to September 19, 2005, and arranged for a 5-day recess after the first two days of hearings.[4] Judge von Kann further noted that "Lurgi is represented in this matter by two law firms that have a combined total of approximately 127 lawyers, 64 of whom are apparently partners . . . . There is no evidence before me that one or more of these lawyers cannot take over for Mr. Hilliard and get up to speed in the two and one-half weeks that remain before the hearing begins. Moreover, the original hearing schedule (to which neither side objected) provided only three days off between the starting and ending dates of the hearing; under the new schedule, there will be eight days off between the starting and ending dates, including a block of five days after the first two days of hearings (in which Hake will be

---

[4] This, in fact, resulted in Lurgi's arbitration team having the benefit of a 5-day recess before having to cross-examine Hake's first witness. Direct examination of Mr. Kazokas continued late into the afternoon of September 20, 2005, at which time the proceedings recessed until September 26, 2005. This left counsel for Lurgi an additional five days to prepare for Mr. Kazokas' cross-examination when testimony resumed. <u>See</u> Preziosi Decl., Ex. 10.

presenting its case). These eight days will give any new counsel further time to become familiar with the evidence and consult with Messrs. Hilliard, Schrama and Azzinari." Petr. Exh. 2, Arbitration Order No. 6 at pp. 6-7.

When Mr. Hart took the place of Mr. Hilliard and wrote the Arbitrator on September 16, 2005 advising that Mr. Hembree had now suffered a "cardiac incident," he did not argue that Lurgi should not be made to start the hearings without Mr. Hembree. Nor did Lurgi then, or at any time thereafter, provide the Arbitrator with any medical documentation of Mr. Hembree's "cardiac incident" in early September or, for that matter, with any detail as to what that even meant.

When hearings commenced on September 19, 2005, Mr. Azzinari attended. Mr. Azzinari made no proffer why, given his prior involvement in the case, he was not able or available to conduct the hearings for Lurgi even though Judge von Kann had pointedly raised that question in Order No. 6 dated September 2, 2005. Petr. Exh. 2, Arbitration Order No. 6 at p. 7. Mr. Azzinari chose to remain silent and did not give the Arbitrator any answer to that question. Furthermore, it is inconceivable that the two large law firms representing Lurgi would have waited until the first week of September 2005, when Craig Hilliard took his leave of absence and Mr. Hembree supposedly fell ill, to start preparing outlines for cross-examination, or to start preparing its own witnesses to testify, as Lurgi's petition suggests. Lurgi's attempt to have this Court believe that Mr. Hart was stepping into a case where nobody had yet selected key arbitration exhibits for Lurgi from the project records, where nobody had yet prepared Lurgi's witnesses to testify in reference to those exhibits, where nobody had yet prepared outlines for direct examination, and where nobody had yet prepared outlines for cross-examination of the

-8-

other side's witnesses, defies the reality of how law firms prepare for trial or arbitration of significant commercial matters and is, to use Lurgi's own phrase, beyond cavil.

Fact testimony was presented in September 2005 without Lurgi ever contending that it was prejudiced by not having Mr. Hembree present to hear that testimony and to assist in formulating cross-examination. The record is barren of any indication to the contrary. Nor did Lurgi ever present any doctor's note or other medical record explaining where Mr. Hembree was or why he could not be present when hearings commenced on September 19, 2005. Lurgi now claims that Mr. Hembree was hospitalized on September 14 and was under doctor's orders to "avoid all stress" as of September 19 (Lurgi Reply Brief at 17.).[5] Yet Lurgi NEVER provided the Arbitrator with any doctor's note to that effect. More to the point, Lurgi NEVER claimed that it should not be made to start the hearings without having Mr. Hembree present. Preziosi Decl., Exh. 10, 9/19/05 Arbitration Tr. 18:24-19:18.

On the afternoon of September 28, 2005, Mr. Hart presented the Arbitrator with a two-sentence handwritten note on a doctor's prescription pad that made no mention of any previous hospitalization or medical restrictions as of earlier in September, but that did state that Mr. Hembree would undergo an angiogram on October 5 and that the doctor would evaluate his condition and ability to work on October 10, 2005. Preziosi Decl., Exh. 10, 9/28/05 Arbitration Tr. 1420:27-1421:18. This was the first and only medical "record" of any kind ever provided to Judge von Kann during the hearings.

Based upon that development, the Arbitrator granted Lurgi a 43-day adjournment into November for Mr. Dellers -- one of Mr. Hembree's partners who had assisted with the

---

[5] If Mr. Hembree had in fact been hospitalized around the September 14 time period, Lurgi certainly would have offered some medical record to that effect. It never did, and never has.

preparation of Lurgi's expert report -- to prepare to give testimony. As noted by Judge von Kann, the 43-day adjournment also allowed sufficient time for Mr. Hembree to perhaps become available to testify. Preziosi Decl, Exh. 10, 9/29/05 Arbitration Tr 1554:1-20. (Parenthetically, Mr. Hembree's declaration, which Lurgi submitted with its petition, permits an inference that Mr. Hembree himself was cleared by his doctor and ready to resume with the case by November).

Lurgi never contended that this 43-day adjournment into November was not an adequate accommodation. Preziosi Decl., Exh. 10, 9/29/05 Arbitration Tr. In fact, the parties stipulated to this arrangement:

> ARBITER von KANN: . . .So those are the arrangements that I believe have been now agreed to by both sides, and I guess I would ask Mr. Preziosi, have I correctly stated the arrangements as you understand it and that Hake has agreed to?
>
> MR. PREZIOSI: Yes, Your Honor.
>
> ARBITER von KANN: Mr. Hart?
>
> MR. HART: Yes, Your Honor. That correctly reflects what we went through.
>
> ARBITER von KANN: Okay. So I think we're set. I think this is a good, fair arrangement. There were a lot of different things to balance in the process, took a little effort on everybody's part, and I appreciate people working on it, so that's where we'll cut it off for today. . . .
>
> [Preziosi Decl., Exh. 10, 9/29/05 Arbitration Tr.1557:9-24].

Yet, Lurgi now resorts to a gross mis-statement of the record by somehow stating in its reply brief that, "rather than suspending the hearings to accommodate Mr. Hembree and Lurgi . . . [Judge von Kann] insisted on pressing ahead." (Lurgi Reply Brief at 17). With all due respect, Lurgi's papers read as though they are referring to some other arbitration altogether.

-10-

Lurgi was never precluded from presenting any evidence during the hearings. Lurgi does not point to a single piece of evidence that Lurgi could not or did not present. The record is simply barren of any indication to the contrary.

### E. The Standard of Review Does Not Permit the Reviewing Court to Substitute its Judgment for that of the Arbitrator.

Arbitrators are to be "provided with broad discretion and great deference in their determinations of procedural adjournment requests." Bisnoff v. King, 154 F. Supp. 2d 630, 637 (S.D.N.Y. 2001) and a Court may not substitute its judgment for that of an arbitrator. OPEIU v. WMATA, 724 F.2d 133, 137 (D.C. Cir. 1983).

Based on an unadulterated review of the record, it is impossible to conclude that Judge von Kann did not have "at least a colorable justification" for his adjournment rulings. Bisnoff, 154 F. Supp. 2d at 637. Nor can it be said that Lurgi was deprived of a fair hearing. Lurgi does not point to a single piece of evidence that it alleges it could not or did not present.

Furthermore, Lurgi's claim that Hake has not addressed the caselaw cited in Lurgi's original brief (Lurgi Reply Brief at pp. 1, 3, 16) is false. As addressed by Hake in its prior brief, each of the decisions cited by Lurgi wherein an award was vacated involved an arbitration where the arbitrator failed to give any colorable basis for his rulings, or where the refusal to postpone resulted in the preclusion of pertinent evidence. No such fact pattern exists here.

Finally, Lurgi's assertion that Judge von Kann acted out of his own convenience and/or financial interest in ruling as he did on Lurgi's adjournment requests has no support whatsoever in the record. For all of the foregoing reasons, Lurgi has failed to prove arbitrator misconduct, and its petition to vacate the Award must be dismissed.

-12-

### F.     Hake's Cross-Petition to Confirm the Award Must Be Granted

Lurgi has failed to shoulder its burden of proving grounds for vacatur. Accordingly, Hake is entitled to confirmation of the Award. 9 U.S.C. §9.

## II.   CONCLUSION

For the foregoing reasons, Hake respectfully requests that the Award be confirmed and that Lurgi's petition be denied.

                Respectfully Submitted,

                /s/ Charles H. Carpenter
                Charles H. Carpenter (D.C. Bar No. 432004)
                PEPPER HAMILTON LLP
                Hamilton Square
                600 Fourteenth Street, N.W.
                Washington, D.C.  20005-1345
                Tel. (202) 220-1665

                /s/ Jonathan M. Preziosi
                Jonathan M. Preziosi
                Angelo A. Stio III
                Pepper Hamilton LLP
                300 Alexander Park
                Princeton, New Jersey  08543-5276
                Tel. (609) 951-4125

                Attorneys for Respondent Cross-Petitioner Frank W. Hake, Inc.

Dated:  May 30, 2006