IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ALLIED ENVIRONMENTAL SOLUTIONS,
INC., formerly known as
Lurgi Lentjes North America, Inc.,

                        **Petitioner,**

               v.                              Civil Action No. 06-0527-RMU

**FRANK W. HAKE, INC.,**

                        **Respondent.**

**LURGI'S SURREPLY MEMORANDUM
IN SUPPORT OF PETITION
TO VACATE ARBITRATION AWARD**

      Hake's Reply Memorandum is incorrectly styled. It is not a "reply" brief in support of Hake's cross-petition for confirmation of the JAMS arbitration award. Rather, it is a second opposition to the Petition to Vacate the Arbitration Award filed by Lurgi. Hake improperly raises new arguments and makes factual assertions not briefed in its initial opposition papers. This attempt to have a "second bite at the apple" by filing a supplemental opposition brief is wholly inappropriate — especially where Lurgi bears the burden of proving that the Arbitrator's misconduct warrants vacatur of the arbitration award pursuant to Md. Code Ann, Cts. & Jud. Proc. § 3-224(b)(4) and 9 U.S.C. § 10(a). Accordingly, Lurgi is entitled to respond substantively to all arguments and averments set forth in Hake's "Reply" Memorandum.

**ARGUMENT**

      A.    **More Than Sufficient Statutory Grounds Exist for Vacatur of This Award.**

      Hake argues for the first time in its Reply Memorandum that "precedent is non-existent" for applying the statutory grounds for vacatur enumerated in 9 U.S.C. § 10(a)(3) or Md. Code

1

Ann, Cts. & Jud. Proc. § 3-224(b)(4) to the facts and circumstances presented in this case. *See* Hake Reply Memo. at 2. Hake further asserts that the statutory grounds for vacatur of an arbitrator's award are inapplicable to this case because the Arbitrator offered Lurgi's substitute counsel and expert token continuances in order to prepare Lurgi's claims and defenses for the arbitration proceedings. Hake cites no authority for these arguments.

Rather, Hake cites several cases that stand for the (decidedly different) proposition that statutory grounds for vacatur are to be narrowly construed by a reviewing court.[1] *Id.* Any reasonable construction of the relevant statutes, case law, and the record in this case leads to the ineluctable conclusion that grounds for vacatur are established. The nominal continuances that the Arbitrator offered Lurgi's trial team (consisting of a new lead trial counsel and substitute expert) to "get up to speed"-- despite Lurgi's unprecedented showing of hardship after losing both counsel and its key expert witness/consultant in this "huge,"[2] complex, multi-million dollar arbitration--were manifestly unreasonable. Forcing Lurgi to proceed on such an accelerated basis, when no valid reason existed why a reasonable continuance could not be granted, constituted clear misconduct requiring vacatur of the award and a remand for further proceedings.

Lurgi agrees with Hake to the extent that this situation is unprecedented — neither party has found any reported decision that involved the loss to a party of **both** its trial counsel **and** its

---

[1] Of course, the next sentence in the cited *Marsh* decision clarifies that, "once a court obtains jurisdiction over an arbitration, it retains jurisdiction to correct or modify the award or to vacate the award." *See Marsh v. Loffler Housing Corp.*, 648 A.2d 1081, 1085 (Md.App. 1994). The plain language of these statutes provides that an arbitrator's failure to grant a postponement under circumstances reasonably calling for such postponement *requires* that a district court vacate the award.

[2] "The record in this case is huge, consisting of more than 4,000 pages of testimony and tens of thousands of pages of project records." *See* Arbitrator's Interim Award at 2, attached as Ex. 5 to Petition to Vacate Arbitration Award.

expert witness in an arbitration.  Here, Lurgi suffered a double blow by losing both its lead counsel and its key expert/consultant — doubly exacerbating the prejudice to Lurgi's case when the Arbitrator refused to grant Lurgi a reasonable continuance upon its showing of good cause. *See*  9 U.S.C. § 10(a)(3) or Md. Code Ann, Cts. & Jud. Proc. § 3-224(b)(4).

The prejudice suffered by Lurgi was exacerbated by the complexity, size, and duration of this case.  This arbitration did not involve a one or two day hearing, a modest number of documents, and claims of limited magnitude.  Instead, as recognized by the Arbitrator, "[t]he record in this case is huge, consisting of more than 4,000 pages of testimony and tens of thousands of pages of project records."  See Interim Award at 2.  The hearings themselves covered weeks, and the damages sought and awarded grew from the original $600,000 claim to an award of more than $12 million.

The prejudice suffered by parties in cases where reviewing courts have vacated awards after finding that an arbitrator failed to grant a reasonable continuance all pale in comparison to the prejudice Lurgi suffered here — especially given the size, complexity, and scope of the proceeding.  As outlined in Lurgi's moving papers, the Arbitrator gave the Lurgi's replacement trial counsel a mere handful of days to learn the entire case before convening the hearings, in a multi-million dollar dispute for which Hake's counsel and expert had been preparing for over 18 months.

      **B.**      **The Arbitrator's False Assumption That Craig Hilliard Would Be Available to Participate in This Arbitration Undermined the Arbitrator's Purported Justifications for Denying Lurgi's Request for a Meaningful Continuance.**

Key among the reasons the Arbitrator provided for granting Lurgi only a token continuance (thirteen days) after Lurgi's original trial counsel (Craig Hilliard) withdrew from the case due to medical reasons was because he assumed, without any basis whatsoever, that Mr.

3

Hilliard, who had shepherded the case throughout discovery and preparation for the hearing, would be available to "consult with other Lurgi counsel before and during the hearing, and perhaps even participate in the hearing in some fashion." *See* Reply Memo. at 6, quoting Order No. 6 at 6, attached as Ex. 2 to the Petition to Vacate the Arbitration Award. He also theorized that Lurgi's replacement counsel would have sufficient time "to become familiar with the evidence and consult with Messrs. **Hilliard**, Schrama, and Azzinari." *Id.* at 7. (Emphasis added.)

This assumption by the Arbitrator was completely erroneous; there is absolutely no basis in the record for the Arbitrator to have believed that Mr. Hilliard would have been able to assist in any way with the proceeding and/or impart to substitute counsel any of the vast knowledge he had accumulated in the months he had spent as lead counsel for Lurgi. In fact, as the record shows, Mr. Hilliard *never* appeared for any of the sixteen hearing days of this arbitration. Kevin Hart, the replacement counsel who was left with mere days to prepare Lurgi's case, declared under oath that Hilliard was completely unavailable to him throughout the arbitration proceedings and (more importantly) his preparation for the hearings. *See* Hart Decl. at ¶26, attached as Ex. 9 to Petition to Vacate Arbitration Award. This false assumption underscores that the Arbitrator did not adequately consider the prejudice Lurgi faced after losing Hilliard— much less the prejudice of subsequently losing the expert Hembree's services on the eve of the hearings—when issuing Order No. 6 and denying Lurgi's request for a meaningful continuance. This erroneous assumption belies Hake's contention that the Arbitrator's ruling was in any way "reasonable" under the circumstances.

    **C.**    **The Authority Cited in Hake's Reply Memorandum Is Factually Inapposite.**

Hake has not identified a single case in which a court declined to vacate an arbitration award when an arbitrator refused to continue proceedings after a party lost its lead counsel and

4

its key witness.  No such reported case exists, as presumably *no* arbitrator would deny a party a reasonable continuance under those circumstances.  Instead, Hake clings to narrow holdings of courts reviewing questions of arbitrator misconduct based on substantially different facts.  There is no case of this size, complexity, or duration where the Arbitrator's refusal to grant a reasonable continuance has been upheld by a court.

For example, Hake cites at length the holding in *Fairchild & Co., Inc. v. Richmond, Fredericksburg & Potomac RR Co.*, 516 F.Supp. 1305 (D.D.C. 1981).  In that case, the court declined to vacate an arbitration panel's award after the panel denied a request for a continuance following the withdrawal of plaintiff's counsel shortly before the proceedings began.  There are three key facts that distinguish *Fairchild* from this case, namely: 1) the entire *Fairchild* arbitration was conducted in only three days, while this case involved sixteen hearing days; 2) the record in *Fairchild* was not terribly complex, while this case does involve a complex, voluminous record (including hundreds of boxes of documents, thousands of exhibit pages, and a score of depositions); and 3) several different lawyers had served as lead counsel to *Fairchild* at various times in preparation for the arbitration, while Lurgi had relied <u>exclusively</u> on Hilliard.  *Id.* at 1314.

By citing *Fairchild* and numerous examples of other factually distinguishable cases in which courts did not find grounds for vacatur, Hake attempts to distract the Court from the relevant legal standards in the Federal Arbitration Act and the Maryland Uniform Arbitration Act.  These statutes provide that an arbitrator's failure to grant a postponement under circumstances reasonably calling for such postponement requires that the award be vacated.  *See* Md. Code Ann, Cts. & Jud. Proc. § 3-224(b)(4)  and 9 U.S.C. § 10(a)(3).  Such circumstances were undoubtedly met and exceeded in this case.

## CONCLUSION

It bears mention that the Arbitrator's award in this case exceeds $12 million.[3] The Arbitrator was fully aware of the magnitude of this dispute and of the financial repercussions the outcome would have on both parties. It stands to reason that an arbitrator in such a case should be even more sensitive to issues of due process and fairness precisely because the stakes are so high. Instead, the Arbitrator ignored Lurgi's legitimate concerns of prejudice and requests for a reasonable postponement. To the contrary, relying on Hake's false statements of imminent financial doom and based on his own personal schedule, the Arbitrator forced Lurgi to arbitrate under circumstances that violated basic principles of fairness and due process, in contravention of the requirements of the Federal Arbitration Act and the counterpart Maryland statute. His failures to grant Lurgi's requests for a reasonable continuance amounted to fundamental unfairness and misconduct sufficient to vacate the award pursuant to 9 U.S.C. § 10(a)(3) and Md. Code Ann., Cts. & Jud. Proc. § 3-224(b)(4).

Having bargained for an arbitration process that would be fair and just, the Arbitrator's decision to proceed with the hearings with only a token continuance deprived Lurgi of both. The prejudice resulting from the Arbitrator's decision was plain at the time, and prior to the hearing commencing, Lurgi expressly objected to the Arbitrator's order and proceeded with the hearings under protest.

For the foregoing reasons, as well as those set forth in Lurgi's Memorandum in Support of Its Petition to Vacate the Arbitration Award, Lurgi respectfully urges the Court to deny Hake's cross-petition to confirm the arbitration award, to vacate the award in its entirety, and to remand this matter for *de novo* hearings before a new JAMS arbitrator.

---

[3] By way of contrast, the *Marsh* case cited in Hake's brief involved a dispute of $3,000. *See Marsh,* 648 A.2d at 1084.

**Respectfully submitted,**

_____/s/_____
**James H. Hulme (D.D.C. Bar No. 323014)**
**Matthew M. Wright (D.D.C. Bar No. 474731)**
**ARENT FOX PLLC**
**1050 Connecticut Ave., NW, Suite 500**
**Washington, DC 20036-5339**
**Tel: 202-857-6144**

*Attorneys for Petitioner Allied Environmental Solutions, Inc., f/k/a/ Lurgi Lentjes North America, Inc.*